UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

*In re*                                                      Case No. M-

APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782
FOR THE TAKING OF DISCOVERY
FOR USE IN A FOREIGN PROCEEDING


-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE *EX PARTE* APPLICATION OF
DEBBIE GUSHLAK FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE
DISCOVERY OF MYRON GUSHLAK, YELENA FURMAN, DAVID LUBIN &
METROPOLITAN DETENTION CENTER WARDEN DUKE TERRELL**


April 4, 2011

Gerald B. Lefcourt, P.C.
Gerald B. Lefcourt
Sheryl E. Reich
148 East 78th Street
New York, NY 10075
Tel: (212) 737-0400
Fax: (212) 988-6192
lefcourt@lefcourtlaw.com

*Attorneys for Debbie Gushlak*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

*In re*                                                          Case No. M-

APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782
FOR THE TAKING OF DISCOVERY
FOR USE IN A FOREIGN PROCEEDING


-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE *EX PARTE* APPLICATION OF
DEBBIE GUSHLAK FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE
DISCOVERY OF MYRON GUSHLAK, YELENA FURMAN, DAVID LUBIN &
METROPOLITAN DETENTION CENTER WARDEN DUKE TERRELL**

This Memorandum of Law is submitted in support of an *ex parte* application of Debbie

Gushlak, a party to a foreign proceeding pending in the Grand Court of the Cayman Islands,

Grand Cayman, British Virgin Islands ("GCM Court").  Mrs. Gushlak seeks discovery of (i) her

husband, Myron Gushlak, currently in federal custody in Brooklyn, New York, pursuant to a

sentence of this Court to six years imprisonment; (ii) New York Notary Yelena Furman, who has

been involved actively in at least two reverse merger transactions through which Mr. Gushlak

came to control shares of public companies, none of which has been disclosed, and who is the

ongoing conduit of instructions of Mr. Gushlak to bankers, nominees and others worldwide in an

effort to continue to hide assets from the GCM Court; (iii) David Lubin, who was instrumental in

at least two reverse mergers and who has moved millions of dollars in marital assets out of the

control of Mrs. Gushlak at the instructions of Mr. Gushlak and to the detriment of Mrs. Gushlak;

and (iv) Duke Terrell, Warden of Metropolitan Detention Center, who is in possession of

recordings of telephone conversations and e-mails in which Mr. Gushlak participated.  Each of

these persons, as more fully described below, is in possession of material information and/or documents needed in a foreign proceeding.

## Background

Debbie Gushlak is a citizen of Canada and a lawful permanent resident of Grand Caymans, British Virgin Islands.  She and her husband, Myron Gushlak, are engaged in a divorce action pending in the Cayman Islands.  *Gushlak v. Gushlak*, Cause No. Fam. 0024 of 2010 (Grand Court of the Cayman Islands) ("GCM Court").

In an Order dated October 7, 2010, annexed as Reich Decl. Exhibit "A", affirmed as modified on October 28, 2010 (Reich Decl. Exhibit "B"), the GCM Court determined on a provisional basis that the marital estate included numerous entities and accounts that are nominally owned by and controlled by persons other than Mr. or Mrs. Gushlak.  *See* Reich Decl. Exhibit "A" at Schedules 3 ("Bank Accounts") and 4 (Companies, Partnerships and Entities"). At the same time, the GCM Court issued a freeze order, pursuant to which Mr. Gushlak, by himself or through agents, in any way "dispose of or deal with or diminish the value of any of his assets. . . whether in his own name or not and whether solely or jointly owned. . . whether they are in or outside the Cayman Islands. . .".  Reich Decl. Exhibit "A" at page 2, Item #1.

Mrs. Gushlak is engaged in the process worldwide of seeking to bring further information about those, and any other, relevant assets, to the GCM Court.  There is evidence to believe that Mr. Gushlak has secreted from Mrs. Gushlak significant assets that have not yet been identified to the GCM Court.  The discovery sought by this application is to assist in the identification of those assets so that the GCM Court can determine whether they are marital assets and if so, their proper allocation between the parties to that action.

By the October 7, 2010, Order, Mr. Gushlak was required to provide information relating to these assets. *See* Reich Decl. Exhibit "A" at page 2, Item #2. He has failed to do so and an application to hold him in contempt is pending. Even a finding of contempt, however, will not result in production of the information. That is particularly so because, since he is incarcerated in the United States, there is little the GCM Court can do to compel him to comply. Moreover, without real knowledge of the secreted assets, any disposition the GCM court may impose would be academic. We seek hereby to find the assets.

**The Assets**

The worldwide search for the assets covered by the October 7, 2010, order is ongoing. The assets may roughly be divided into two classes: assets purportedly transferred into The Crossroads Trust, a so called discretionary Liechtenstein trust; and assets as to which no transfer was ever made. The assets, of both categories, include the following:

- ***Crossroads Trust.*** The assets that Mr. Gushlak caused to be transferred into the Crossroads Trust, a Liechtenstein trust, are legally controlled by Trustco, a Liechtenstein entity that serves as trustee under the direction of Mag. *iur* Dr. Frank Zindel. An action has been filed in Liechtenstein seeking disclosure from Trustco of, *inter alia*, the assets in the Trust, how they came to be there, and what transfers out of the trust have been made and to where. *Gushlak v. TrustCo Trust Reg as Trustee of the Crossroads Trust*, Case No. 6 CG.2011.55 (Princely Court of Vaduz), filed March 11, 2011.[1] The assets purportedly in the Trust are the stock of East West Holdings, Inc., a BVI entity; and Bluewater Partners, S.A. ("Bluewater Partners"), Camal Group, S.A. ("Camal"); Lakki Enterprises, S.A. ("Lakki"); Ronsone Development, S.A. ("Ronsone"); and Halcyon,

---

[1] A copy of the complaint, in which Mrs. Gushlak seeks to enforce her statutory right to an accounting, is annexed to the Reich Decl. as Exhibit "C". No translation of the document has been made.

S.A., all of which are Panamanian entities.[2]  The Crossroads Trust also purportedly has

the right to receive some $44.6 million on deposit at Bank Sal Oppenheim in Zurich,

Switzerland, and under the control of Swiss money managers EH&P, more fully

described below.  Those monies have been frozen by the Swiss government at the request

of the German government and, according to the Crossroads Trustee, have never been

transferred into the Crossroads Trust.  *See* e-mail from Frank Zindel to Sheryl E. Reich,

dated January 19, 2011, annexed as Reich Decl. Exhibit "D" (". . . the trust has a claim

with regard to assets which were assigned to the trust by Myron Gushlak. The relevant

assets are currently held by EH&P Investments AG, Zürich. Whilst Myron Gushlak

instructed EH&P Investments AG irrevocably to transfer these assets to the trust, EH&P

Investments AG was not yet able to do so because the assets were and still are blocked by

the Swiss authorities due to an ongoing investigation in Germany. If the freeze of the

assets or part of them was to be lifted some day the trust will enforce its entitlement with

regard to these assets. The valuation of these assets as per 31.12.2010 is USD 8.4 million

plus CAD 32.4 million plus CHF 3.1 million.")

- ***Assets Not Even Purportedly in the Crossroads Trust.***  There is considerable evidence,
  as more fully described below, that there are assets undisclosed but controlled by Mr.
  Gushlak that have never been transferred into the Crossroads Trust, even nominally.  As
  to those, Mrs. Gushlak has only limited knowledge.  This Application seeks to take
  discovery principally to obtain information about assets that have not even purportedly
  been transferred into the Crossroads Trust.  The assets that we believe exist, are in Mr.

---

[2] No inference would be warranted that any of the purported transfers of assets into the Crossroads Trust was valid.  For example, the shares of Bluewater Partners, S.A., a Panamanian entity, and East West Holdings, a Grand Cayman entity, were both purportedly transferred to the Crossroads Trust itself.  The laws of Panama, Grand Cayman, and Liechtenstein all prohibit share ownership by a trust.

4

Gushlak's control, and are presumptively marital, include shares of Helix Wind, Inc. ("Helix Wind"), a California based Nevada company that Mr. Gushlak brought public in 2008 by way of a reverse merger with Clearview Acquisitions, Corp. ("Clearview Acquisitions"); shares of Swissinso Holdings, a company headquartered in Lausanne, Switzerland, that Mr. Gushlak brought public in 2009 by way of a reverse merger with Pashiminadepot.com, a Florida public shell; the assets of IAB; assets held or controlled by EH&P, a Swiss money management firm located in Zurich, Switzerland, the shares of which were purportedly transferred to Westpoint Trust, a trust that has never been disclosed by Mr. Gushlak; stock and other assets held or controlled by Albury Investments, a Hong Kong company that owns the sole voting shares of Swissinso Holdings; Westpoint Trust, as to which nothing is known other than it purports to be the owner of IAB; shares in Quest Minerals, Stargold Mines, Inc., and Star Energy Corp.; as well as all bank accounts and other assets, entities and interests listed on Schedules 3 and 4 of the October 7, 2010, Order of the GCM Court.  Reich Decl. Exhibit "A".

## Helix Wind Corp.

Myron Gushlak, principally through a Panamanian entity named Bluewater Partners was employed as a stock promoter and financier with a reported annual income from Bluewater Partners alone of $10 million.  *See* Atlantis Casino Confidential Credit Application of Myron Gushlak, dated June 4, 2008, annexed as Reich Decl. Exhibit "E".  As a financier, he specifically focused on the provision of capital to start-up entities.  *See* Bluewater Partners Company Profile, annexed as Reich Decl. Exhibit "F".  In at least two deals as to which we have some information, Mr. Gushlak appears to have made millions of dollars, in either cash or stock allocations, for which virtually no account or a false account has been given.

Helix Wind is a Nevada corporation with headquarters in California. It is, according to its marketing materials (*see, e.g.*, http://www.helixwind.com/en/product.php), in the business of wind turbines and other renewable energy sources. The company became a public company, with shares trading in the United States and on the Frankfurt exchange, though a reverse merger with a public shell company, Clearview Acquisitions. Through that merger, Mr. Gushlak, and persons and entities he controlled, acquired over 16 million free trading shares of Helix Wind. Many of those shares are unaccounted for. For the reasons set forth below, we believe that the persons from whom discovery is sought possess material information as to the whereabouts of these assets.

As is usual with transactions in which Mr. Gushlak is involved, it takes considerable effort to trace the sequence of events. Documents show, however, the following: In or around December 2006, a Nevada company named Terrapin Enterprises, Inc., a Nevada corporation, merged with another Nevada entity named Black Sea Oil ("BSO"). Beginning in the first quarter of 2007, Mr. Gushlak, through Bluewater Partners;[3] Camal (another Panamanian entity owned by the Gushlaks); and the Gushlaks personally, through monies transferred from their joint account at Royal Bank of Canada, began loaning money to BSO, in exchange for which BSO issued promissory notes. There appears to be no correspondence between who or what entity loaned the money and who or what entity was issued a note.

At the same time, Mr. Gushlak, through three other Panamanian entities he controlled -- IAB, Lakki and Ronsone -- acquired shares of BSO. It is not known how these entities came to acquire the shares.

---

[3] The stock of Bluewater Partners, S.A., has been said by Mr. Gushlak at various times exclusively by Mrs. Gushlak, by the Gushlaks jointly, and/or by Mrs. Gushlak and Eugene Hoffman, a nominee of Mr. Gushlak who was later put on the board of what became Helix Wind, and finally by Crossroads Trust.

In November 2008, BSO changed its name to Clearview Acquisitions. *See* Amended and Restated Articles of Incorporation of Black Sea Oil, Inc., dated September 29, 2008, annexed as Reich Decl. Exhibit "G". In January 2009, Clearview and Helix Wind merged, pursuant to which Helix Wind became a public company. *See* SEC Form 14F, dated February 13, 2009, annexed as Reich Decl. Exhibit "H". On April 16, 2009, Clearview changed its name to "Helix Wind". *See* Certificate of Amendment, annexed as Reich Decl. Exhibit "I".

In March 2009, Helix Wind purported to settle its debt to the various Gushlak entities by the issuance of 11 million shares of stock to them. Instead of the stock being issued to the Gushlaks directly or to the entities that transferred the funds, Mr. Gushlak had the stock issued to nominees: of the 11 million shares issued to satisfy the notes, 3 million shares were issued to Bluewater Partners; 2.5 million shares were issued to IAB; 3 million shares were issued to David Lillico, a handyman who has performed repairs at the Gushlaks' Cayman Island home; and 2.5 million shares were issued to CAT Brokerage AG, an unknown entity but one associated with Bluewater Partners. *See* excerpts of SEC Form 10-Q, dated May 20, 2009, "Notes to Condensed Consolidated Financial Statement (unaudited) of Helix Wind Corp.", at Note 10: Legal Matters, annexed as Reich Decl. Exhibit "J"(defining "Bluewater" as consisting of Bluewater Partners, IAB; David Lillico; and CAT Brokerage AG).

When the dust settled, it appears that Mr. Gushlak had in his possession or control 16,564,392 shares of Helix Wind stock: 11 million given to the Bluewater entities to satisfy the loans; plus 50,000 shares bought by IAB in 2007;[4] plus 3,201,500 shares owned by Ronsone.[5] In addition, we suspect that Mr. Gushlak secretly owns an additional 2,312,892 in the name of Quercus Trust, an entity listed on Schedule 4 to the October 7, 2010, GCM Court Order.

---

[4] It is not clear what the exchange was between Helix Wind shares and shares of predecessor entities.
[5] *See* note 3.

In a financial disclosure made by Mr. Gushlak in August 2009, Mr. Gushlak disclosed Bluewater Partners' ownership of 2.98 million Helix Wind shares and Camal Group's ownership of 1.8 million Helix Wind shares.[6]  Reich Decl. Exhibit "K" unnumbered page 5, Note # 3. However, no reference has ever been made by him to the shares owned by IAB, Ronsone, CAT, Lillico or any other person or entity.  In July 2009, IAB filed an SEC form 13D acknowledging its receipt of the 2.5 million shares in the settlement.  Reich Decl. Exhibit "L".

When public trading of Helix Wind stock began in June 2009, it was trading at over $2.00 per share.  In July 2009, it was trading at over $3.00 per share, and in October 2009, it reached over $3.25 per share.  In February 2010, it was trading at $2.00 per share, from which it declined precipitously and now has virtually no value.  *See* Big Charts stock chart for HLXW, annexed as Reich Decl. Exhibit "M".

In the period when Helix Wind had significant value, and Mr. Gushlak was in control of in excess of 16 million free trading shares of Helix Wind, telephone records reveal that Mr. Gushlak was in extraordinarily frequent contract with securities traders in British Columbia, Canada, often four, five and six times a day, every day.  *See* telephone records of Myron Gushlak, especially for the months June 2009 through January 2010, marked to show relevant calls.  Reich Decl. Exhibit "N".  We believe that shares of Helix Wind were traded through Gow and others and that Mr. Gushlak reaped significant trading profits therefrom.  Those monies have yet to be to the GCM Court disclosed or accounted for in any manner.

---

[6]  It is also not discernable how Camal Group came to own its shares or how the 2.5 million shares to Bluewater Partners became 2.98 million.  According to an August 2009 financial disclosure form filed by Mr. Gushlak, the sole Helix Wind shares he had any connection to were the 2.98 million shares owned by Bluewater.

**Swissinso Holdings**

In the period between May and October 2009, Bluewater Partners executed on behalf of Swiss-Indo Trade & Investments, S.A., a reverse merger with a public shell named Pashimindepot.com, a Florida company. Whether through an entity named Albury Investments Ltd., a Hong Kong company, or through a person or entity as yet unknown, Bluewater Partners obtained a seat on the board of the new public company, Swissinso Holdings; shares in the company; and seemingly sole voting authority. Yet no ownership or control of Swissinso Holdings has been disclosed. From the period the shares began trading, in October 2009, the share price rose from $1.57 per share to over $2.16 per share by late November 2009. *See* Yahoo Finance chart of historical prices of SWHN, annexed as Reich Decl. Exhibit "O".

**IAB Island Ventures, S.A.**

IAB is a Panamanian corporation formed at the behest of Mr. Gushlak by a Panamanian attorney and registered agent named Margot Hutchinson. From its formation in October 2003 until she purportedly resigned in June 2009,[7] the public activities of IAB were purportedly controlled by Mrs. Hutchinson. That included the filing of minutes of the company pursuant to Panama law and various filings with the United States Securities & Exchange Commission ("SEC"). What monies or other assets Mr. Gushlak chose to allocate to IAB, or the reasons for doing so, are entirely unknown. However, at various times, IAB had significant assets. For example, an account statement rendered to IAB as of January 14, 2008, annexed to the Reich Decl. as Exhibit "Q", shows assets in the form of stock and stable currencies (U.S. dollars, Canadian dollars and Euros) of nearly $20 million, held by Swiss money manager EH&P. A filing in Panama made in July 2009, however, discloses what purports to be a transfer of the

---

[7] *See* Minutes of an Extraordinary Meeting of Shareholders of IAB purportedly held on June 10, 2009 (Spanish original and English translation), annexed as Reich Decl. Exhibit "P".

shares of IAB to the trustee of Westpoint Trust, never identified by Mr. Gushlak in any disclosures. *See* Minutes of Extraordinary Meeting of Shareholders of IAB, *supra*, Reich Decl. Exhibit "P" at 3. Other than the name of the trustee, Hauenstein Treuhand GmbH, located in Zug, Switzerland, no information is known about the Westpoint Trust.

Aside from the highly liquid currencies, as of January 14, 2008, IAB also came to own shares of stock in entities in which Mr. Gushlak was involved, including 50,000 shares of BSO (which became Helix Wind), one million shares of Quest Minerals, over half a million shares of Stargold Mines, Inc., and shares in Star Energy Corp. As noted above, IAB has acknowledged in an SEC filing that it owns or owned 2.5 million shares of Helix Wind, as reflected in the SEC Form 13D filed July 9, 2009. *Supra*, Reich Decl. Exhibit "L".

It is not known what disposition, if any, was made of those shares. However, there is considerable evidence that Yelena Furman has knowledge as to the activities of IAB, as discussed in the next section.

**Yelena Furman**

Yelena Furman is a 30 year old woman who resides in Brooklyn, New York. She is a New York Notary Public qualified in Kings County, New York. *See* extract of Department of State Notary Registry, annexed as Reich Decl. Exhibit "R". Ms Furman is also the owner of an entity named RevSolutions, which acted as a paid consultant to Bluewater Partners. *See* Helix Wind Confidentiality Agreement, as of January 1, 2009, at pg. 2, annexed as Reich Decl. Exhibit "S". Ms. Furman has also been the New York agent for Bluewater Partners. *See* Bluewater Partners Website, "Contact Us", annexed as Reich Decl. Exhibit "T". Ms. Furman is also Mr. Gushlak's mistress.

Documentary evidence discloses Ms. Furman's involvement not only with Bluewater Partners as a paid consultant and spokesperson, but with IAB's acquisition and possible disposition of its 2.5 million shares of Helix Wind stock, as discussed below.

On or about May 4, 2009, IAB purported to open an account with Edgar, the Electronic Data-Gathering, Analysis, and Retrieval system that performs automated collection, validation, indexing, acceptance, and forwarding of submissions by companies and others that and who are required by law to file forms with the SEC. To do so, someone filled out an application to open an account. As set forth on the form, the filing requires that the person filing the application on behalf of the entity sign the application before a notary and then submit it to the SEC. The document was purportedly signed by IAB Registered Agent Margot Hutchinson and notarized by Ms. Furman, a New York notary. Evidence will show that Ms. Hutchinson was not in New York to sign the document before Ms. Furman and Ms. Furman did not meet Ms. Hutchinson in Panama, either. The "notarized" document is annexed to Reich Decl. as Exhibit "U".

However, of more current import is that Ms. Furman is in regular telephone contact with the bankers at EH&P which, as more fully set out below, puts her in position to have material information as to the Gushlak current assets.

EH&P Investments A.G., Zurich ("EH&P"), according to its website, is an "experienced, established and independent Swiss asset management company who [sic] endeavors to product [sic] first class financial services for its clients". *See* print out of EH&P website, annexed as Reich Decl. Exhibit "V". EH&P has a long association with the Gushlaks and, first through chairman Erwin Haas and more recently through managing partner Marco Bianchi, has provided the couple with money management services.

11

The monies under the control of EH&P appear to be of three types: assets owned by the various entities purportedly owned by the Crossroads Trust; some $44.6 million on deposit at Bank Sal Oppenheim in Zurich, Switzerland, which assets are frozen at the request of the German government (*see* Reich Decl. Exhibit "D", *supra*); and other assets as to which there has been no disclosure by Mr. Gushlak to the GCM Court.

If, of the Gushlaks' assets, EH&P manages only assets in the Crossroads Trust, there can be no reason for any ongoing, let alone frequent, contact. That is particularly so because, by his written acknowledgement, the Crossroads' Trustee considers himself bound by the GCM Court freeze order and has asserted that there will be no distributions of assets. *See* e-mail from Frank Zindel to Sheryl E. Reich, dated December 21, 2010, annexed as Reich Decl. Exhibit "W". Given that, there is nothing to discuss. The other non-trust assets in the control of EH&P, namely, the frozen assets on account at Bank Zel Oppenheim are not going anywhere. So, there again, there can be no explanation for frequent contact. Given that no other Gushlak assets have been disclosed that are in the control of EH&P, Ms. Furman's frequent contacts with EH&P would be explored at a deposition and by a subpoena for documents.

**David Lubin**

David Lubin also has had considerable involvement with Bluewater Partners, Helix Wind, Swissinso Holdings, IAB, and possibly other entities. Over the years, Mr. Lubin has provided Mr. Gushlak with several services. For example, he has identified public shell companies into which Mr. Gushlak has arranged reverse mergers, including Clearview Acquisitions (for Helix Wind) and Pashiminadepot.com for Swissinso Holdings. Mr. Lubin, a lawyer as well as a deal maker with an office on Long Island, is also listed as the contact person for IAB in the fraudulent filing IAB made with the SEC. *See* Reich Decl. Exhibit "U", *supra*.

12

On February 22, 2007, some $5 million was transferred to Mr. Lubin's escrow account by Mr. Gushlak, which followed a transfer of $1 million on July 12, 2006, also to his escrow account. The disposition of those monies is unknown. A request to Mr. Lubin to disclose the whereabouts of these monies was ignored. *See* letter from Sheryl E. Reich, Esq., to David Lubin, dated December 13, 2010, annexed to the Reich Decl. as Exhibit "X".

Mr. Lubin also appears to have involved himself more deeply in the Mr. Gushlak's machinations. The several transactions that led to the distribution of 11 million shares of Helix Wind were dependent upon obtaining the approval of a New York State Supreme Court justice. Despite the fact that Mr. Lubin and Mr. Gushlak had an ongoing relationship, Mr. Lubin appeared in that action as counsel on the *other side* of the litigation. Specifically, Mr. Lubin represented defendant Helix Wind in a suit brought by Mr. Gushlak to collect the monies owed the various Bluewater entities. *See* Order and Judgment, dated April 26, 2009, in *Bluewater Partners, S.A, et al v. Clearview Acquisitions, Inc.*, Index No. 116892/08 (Supreme Ct. N.Y. County), annexed as Reich Decl. Exhibit "Y"; extract from New York's e-courts Supreme Court data base, reflecting David Lubin's status as counsel, annexed to Reich Decl. as Exhibit "Z". Upon application, the approval of Hon. Marilyn Diamond, J.S.C., was obtained, allowing the distribution of Helix Wind shares as detailed *supra*.

If Mrs. Gushlak were authorized to take the deposition of Mr. Lubin and obtain documents from him, she intends to question him concerning the various movements of monies to determine the character of those assets and where those assets are today. Mrs. Gushlak believes Mr. Lubin also has substantive knowledge of various transactions that have resulted in the acquisition of assets that should be placed before the GCM Court by Mr. Gushlak, but were not.

**Warden Terrell**

Mr. Gushlak appears not only to have telephone privileges while incarcerated at MDC, but access to e-mail, as well.  We seek to obtain from the warden Mr. Gushlak's telephone recordings and e-mails.[8]  As detailed in the legal argument below (*infra* at 21-22) Mr. Gushlak has no right of privacy with respect to these communications, and we believe they will lead to the discovery of undisclosed assets as well as contempt of the GCM's freeze order.

**Other Assets**

In addition to the transactions noted above, the witnesses would be questioned, and documents would be sought, concerning Quest Minerals, Stargold Mines, Inc., Star Energy Corp., Westpoint Trust, as well as any other entity or shares of an entity in which Mr. Gushlak has a direct or indirect ownership interest, including those listed on Schedules 3 and 4 of the October 7, 2010, GCM Court's Order.  Additional questioning and document requests would seek information concerning accounts worldwide in the control or held for the benefit of Mr. Gushlak.

**ARGUMENT**

**MRS. GUSHLAK HAS MET BOTH THE STATUTORY
AND DISCRETIONALY CRITERIA FOR GRANTING THE
REQUESTED DISCOVERY UNDER 28 U.S.C. § 1782**

Title 28 U.S.C. § 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . The order may be made . . .

---

[8] No deposition of the warden is sought, only documents.

upon the application of any interested person. . .

Section 1782 authorizes a district court "upon the application of any interested person", to order discovery of a "person [who] resides or is found" in the district for use in a proceeding "in a foreign or international tribunal". 28 U.S.C. § 1782(a). Once the statutory requirements are met, "a district court is free to grant discovery in its discretion". *Schmitz v. Bernstein, Liebhard & Lifshitz, LLP,* 376 F.3d 79, 83-84 (2d Cir. 2004).

In exercising its discretion, the district court must consider the "twin aims" of § 1782, that is, "providing efficient means of assistance to participants in international litigation in our federal courts" and second, "encouraging foreign countries by example to provide similar means of assistance to our courts". *Id.* at 84 (citations omitted); *In re Ishihara Chemical Co.,* 251 F.3d 120, 124 (2d Cir. 2001); *Euromepa S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998).

The Second Circuit has counseled that a district court ought to exercise its discretion in favor of allowing discovery. Indeed, the Court has cautioned that it is far better to provide assistance than not. *Schmitz, supra,* 376 F.3d at 83, 85 (recommending that if the district court has any misgiving it could issue a closely tailored discovery order rather than denying the application in its entirety).

In guiding district courts on how best to exercise their discretion in this area, the Supreme Court has identified four factors to be considered in deciding whether to grant a § 1782 application:

> (1) whether the person from whom discovery is sought is a participant in the foreign case;

> (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United

States;

> (3) whether the discovery request is an attempt to avoid foreign evidence-gathering restrictions; and

> (4) whether the discovery request is 'unduly intrusive or burdensome.

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) (discussing discretionary factors); *In re Application of Chevron Corp., et al*, 10 MC 00002 (LAK), 2010 U.S. Dist. LEXIS 117679 (S.D.N.Y. Nov. 4, 2010) at *47 & n.119 , *aff'd Donziger v. Chevron Corp.,* 2010 U.S. App. LEXIS 25546 (2d Cir. December 15, 2010).

The circumstances Mrs. Gushlak finds herself in are precisely the context in which a court ought to exercise its discretion and allow the discovery authorized by the statute. The instant application satisfies both the statutory requirements and fulfills the discretionary factors and should be granted in its entirety. We take each in turn.

**A.      The Application Meets Each Of**
**The Statutory Requirements Of 18 U.S.C. § 1782**

A district court is authorized to grant an application under § 1782 where: (i) the persons from whom discovery is sought reside or are found in the district in which the application is made; (ii) the discovery is sought for use in a foreign proceeding; and (iii) the applicant is an interested person in the foreign proceeding. *See Schmitz*, 376 F.3d at 83; *In re Ishihara Chemical Co., supra,* 251 F.3d at 124. Those statutory requirements are indisputably met here.

First, each of the individuals from whom discovery is sought resides in this district: Mr. Gushlak currently is incarcerated at the Metropolitan Detention Center (MDC), an administrative federal prison facility located in Brooklyn, Kings County; [9] Ms. Furman resides in Brooklyn, New York and is a licensed New York State Notary Public qualified in Kings County; David

---

[9] *See*
http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&FirstName=Myron&Middle=&LastName=Gushlak&Race=U&Sex=U&Age=&x=0&y=0.

Lubin is the principal of David Lubin & Associates, PLLC, located in Rockville Centre, Nassau County, New York; and Warden Terrell is employed by the Federal Bureau of Prisons as Warden of MDC located in this District.  Thus, all either reside in or are "found" in the Eastern District of New York.

Second, the discovery Mrs. Gushlak seeks is for use in the divorce action now pending in the GCM Court.  It is expected that the information obtained will assist in identifying and bringing before the GCM Court assets Mr. Gushlak has secreted in an effort to deprive Mrs. Gushlak of her interests therein, as well as in determining the full extent of the marital estate and the manner in which it should be distributed.  Further, the discovery relates directly to the evidence in the GCM Court with respect to whether Mr. Gushlak should be held in contempt for failing to comply with the GCM Court's October 7, 2010, Order requiring him to provide information as to his assets.  This is exactly the type of discovery contemplated in § 1782.

Third, as a party in the GCM Court proceeding, Mrs. Gushlak is an "interested person" within the meaning of § 1782.  *See In re Application of Bank of Cyprus PCL*, No. 10 Misc. 23, 2011 U.S. Dist. LEXIS 6082 at *6 (S.D.N.Y. January 21, 2011) ("Bank of Cyprus, as a litigant in the Cyprus proceedings, is an interested person within the meaning of § 1782.")

Thus, this application clearly meets the statutory requirements of § 1782.

**B.    The *Intel* Discretionary Factors
        Also Weigh In Favor Of Granting The Application**

Having demonstrated that this application meets the requirements of the statute, consideration must be given to the four discretionary factors set forth by the Supreme Court in *Intel*: "(1) whether the person from whom discovery is sought is a participant in the foreign case; (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the discovery request is an attempt to

avoid foreign evidence-gathering restrictions; and (4) whether the discovery request is 'unduly intrusive or burdensome'". *Id.* at 264-65. The *Intel* factors, too, favor granting this application.

First, Ms. Furman, Mr. Terrell and Mr. Lubin are not parties to the GCM Court divorce action. Nor is any of them subject to its jurisdiction. Thus, were this application denied, Mrs. Gushlak would have no means available to her to obtain this highly relevant information. And indeed, Mr. Gushlak would once again benefit from his complex web of fraud and deceit. As for Mr. Gushlak, although he is a party to the action in the GCM Court, and therefore technically subject to the court's jurisdiction, his incarceration in the United States makes that hollow. Indeed, any discovery order issued by the GCM Court could not, as a practical matter, be enforced. And a motion for contempt or to compel in the GCM Court will not provide an adequate remedy. Thus, while he technically is before the GCM Court, for discovery purposes, that is true in name only. No penalties that could or would be imposed on him could put Mrs. Gushlak in a better position than actually getting the information she seeks concerning the whereabouts of all assets.

Moreover, as the *Intel* court makes clear, that the subject of a §1782 request is a party to the foreign proceeding does not work a disqualification of the application. Such discovery is frequently allowed. [10]

---

[10] To the extent this Court finds that Mr. Gushlak's status as a party to the matrimonial action in the GCM Court weighs against granting the instant application, such a determination is not dispositive. First, none of the other individuals from whom discovery is sought is a party to the GCM Court action.

But more to the point, this is just one of a number of factors that the Court should consider in determining whether to exercise its discretion and grant the application. Indeed, there are a number of instances where § 1782 applications have been granted even though the party from whom discovery is sought has been deemed a party to the foreign proceeding. *See e.g.*, *Marubeni America Corp. v. LBA Y.K.*, 335 Fed. Appx. 95, 2009 U.S. App. LEXIS 12953 at *8 (2d Cir. 2009) (unpublished) (affirming production order of district court pursuant to § 1782 for discovery to be used in a suit between the same parties in Japan); *U.S. Philips Corp. v. Iwasaki Electric Co. Ltd.*, 142 Fed. Appx 516, 2005 U.S. App. LEXIS 16705 (2d Cir. 2005) (unpublished) (affirming production order of district court pursuant to § 1782 even though the party from whom discovery was sought was a party to the foreign action and subject to the jurisdiction of

Accordingly, as to each of the individuals from whom discovery is sought, the first *Intel* factor weighs in favor of granting the application.

Second, the discovery is sought for use in the Gushlaks' divorce action in the GCM Court. Specifically, it is necessary to insure compliance with the GCM Court's October 7, 2010, Order requiring disclosure of information as to assets the GCM Court believes are marital in nature; that the GCM Court has before it all relevant assets; and that there is a fair and equitable distribution of the marital estate upon dissolution of the Gushlaks' marriage and in accordance with the law. Given the GCM Court's October 7, 2010, Order; Mr. Gushlak's refusal to comply therewith, and his incarceration in this district, beyond the reach of the GCM Court, there can be no doubt that the GCM Court would welcome receipt of the discovery sought hereby. Accordingly, the second *Intel* factor, too, weighs in favor of granting this application.

Third, this Application is not an attempt to avoid foreign evidence-gathering restrictions. As a preliminary matter, the Supreme Court has made clear that this factor does *not* turn on whether the evidence sought could be discovered in the foreign tribunal. *Intel*, 542 U.S. at 523 ("We now hold that § 1782(a) does not impose . . . a [foreign-discoverability] requirement".). Rather, this factor inquires only into whether the discovery is being sought in bad faith.

No such claim could be made here. It is Mr. Gushlak, Mr. Lubin, and Ms. Furman who have acted, and continue to act in bad faith. Mr. Gushlak submitted himself to the jurisdiction of the GCM Court and continues to litigate there through counsel. Yet despite this, he has thwarted lawful orders of and has attempted to deceive the GCM Court as to the full extent of the assets.

---

the foreign tribunal); *Minatec Finance S.A.R.L. v. SI Group Inc.*, 08-CV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. August 18, 2008) (ordering discovery pursuant to § 1782 even though the court found that the first *Intel* factor did not weigh in favor of granting the application); *In re Servico Pan Americano De Proteccion, C.A.*, 354 F. Supp. 2d 269 (S.D.N.Y. 2004) (granting application for discovery pursuant to § 1782 even though the party from whom discovery was sought was subject to the jurisdiction of the foreign tribunal) .

Denying the application here would make him immune to discovery in any jurisdiction.  That should not be permitted.

As for Ms. Furman, Mr. Lubin and Warden Terrell, each has information which is highly relevant to the GCM Court proceedings.  Indeed, it is information essential to establishing the full extent of the marital assets to be considered and distributed by the GCM Court; assets the evidence provides reason to believe were systematically secreted by Mr. Gushlak with the assistance of Ms. Furman and Mr. Lubin both prior to and following his incarceration.  This information is being sought in good faith to assist the GCM Court in determining whether Mr. Gushlak acted in defiance of lawful court orders and the full extent of the marital estate.  Further, there is no prohibition on obtaining such evidence in the GCM Court.

Nor has the GCM Court refused to order such disclosure.  On the contrary, the GCM Court's October 7, 2010, Order evidences that the discovery sought hereby is exactly the type of disclosure that the GCM Court wants.  Accordingly, the third *Intel* factor also weighs in favor of granting the application.

Fourth, Mrs. Gushlak's application is not unduly intrusive or burdensome.  Ms. Furman's and Messrs. Gushlak's, Terrell's, and Lubin's evidence is directly relevant to the GCM Court action. The document requests to Ms. Furman and Mr. Lubin are tailored to discover each of their knowledge of and the true nature of the assets believed to have been secreted by Mr. Gushlak, as will be the deposition questions.  Furthermore, as noted, Mr. Gushlak is a willing participant in the matrimonial action, but has actively tried to thwart the GCM Court's attempt to ascertain the full extent of assets he maintains or controls.  The evidence all points to a conclusion that Mr. Gushlak is engaged in an ongoing scheme to secret the assets at issue from

20

both the GCM Court and Mrs. Gushlak, and that he has used Ms. Furman and Mr. Lubin to do so.

Likewise, Ms. Furman and Mr. Lubin have willingly and eagerly injected themselves into this controversy. Each has assisted Mr. Gushlak in secreting the subject assets and thwarting Mrs. Gushlak's and the GCM Court's attempts at full disclosure. Specifically, Ms. Furman was involved actively in at least two reverse mergers through which Mr. Gushlak came to control shares that he failed to disclose to the GCM Court, and she is an ongoing conduit of instructions from Mr. Gushlak to bankers, nominees and others worldwide to continue to secret assets from the GCM Court and Mrs. Gushlak. Mr. Lubin, too, was instrumental in at least two reverse mergers and moved millions of dollars of marital assets at the behest of Mr. Gushlak and to the detriment of Mrs. Gushlak. There can be no doubt that each is aware that the information he or she maintains is vital to a fair and final resolution of the GCM Court action. Indeed, counsel for Mrs. Gushlak attempted to reach out to Mr. Lubin to obtain the information without resort to legal proceedings, but Mr. Lubin has refused even to respond.

As for Mr. Terrell, the discovery sought from him is limited in scope and breadth and is relevant to a full and fair determination in the divorce action. Certainly, Mr. Gushlak has no general right of privacy with respect to the communications sought. *See, e.g., United States v. Amen*, 831 F.2d 373, 379-380 (2d Cir.1987) (inmates have no reasonable expectation of privacy in their calls to non-attorneys on institutional telephones), *cert. denied sub nom. Abbamonte v. United States*, 485 U.S. 1021 (1988); *United States v. Willoughby*, 860 F.2d 15 (2d Cir. 1988)**,** *cert. denied*, 488 U.S. 1033 (1989) (same); *United States v. Hearst*, 563 F.2d 1331, 1346 (9th Cir. 1977), *cert. denied,* 435 U.S. 1000 (1978) (same). Nor has any right to privacy with respect

to written communications to non-attorneys been recognized.  The proposed subpoena carves out any material that may be subject to privilege.

The communications between Mr. Gushlak and bankers, money managers, trustees, stock traders, Ms. Furman, and anyone else through whom he transacts the business of moving money and other assets around will identify the assets Mr. Gushlak is hiding from the GCM Court.

Accordingly, the fourth and final *Intel* factor, too, weighs in favor of granting this application.

**CONCLUSION**

This Application meets both the statutory elements and each of the discretionary factors of §1782.  For these reasons, Mrs. Gushlak respectfully requests that this Court grant her Application for an order granting leave to serve the named witness with the respective subpoenas attached to the Reich Decl. as Exhibits "AA" through "DD".  Alternatively, Mrs. Gushlak respectfully requests that the Court set a briefing and hearing schedule ordering the witnesses and any party in interest to show cause why the subpoenas should not issue forthwith.

April 4, 2011
New York, N.Y.

Respectfully submitted,

GERALD B. LEFCOURT, P.C.

By _____
        Sheryl E. Reich (SER 7943)

148 East 78th Street
New York, N.Y. 10075
(212) 737-0400 (tel)
(212) 988-6192 (fax)
Reich@Lefcourtlaw.com
*Attorneys for Debbie Gushlak*

23