UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

*In re:*

APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782
FOR THE TAKING OF DISCOVERY
FOR USE IN A FOREIGN PROCEEDING

No. 11-MC-218
(Garaufis, J.)

-------------------------------------------------------x


# WARDEN TERRELL'S OPPOSITION TO PETITIONER'S
# APPLICATION FOR LEAVE TO SERVE A SUBPOENA *DUCES TECUM*


LORETTA E. LYNCH
United States Attorney
*Counsel for Warden Terrell*
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

June 29, 2011


LAYALIZA K. SOLOVEICHIK
Assistant United States Attorney
    (Of Counsel)

**PRELIMINARY STATEMENT**

Duke Terrell, Warden of the Metropolitan Detention Center ("MDC"), located in Brooklyn, New York, by his attorney Loretta E. Lynch, United States Attorney for the Eastern District of New York, Layaliza K. Soloveichik, Assistant U.S. Attorney, of counsel, respectfully submits this memorandum of law in opposition to petitioner Debbie Gushlak's application for leave to serve a subpoena *duces tecum*.

By way of background, petitioner and her husband, Myron Gushlak, are involved in a divorce proceeding pending in the Cayman Islands. *See* D.E. 1 (Application) at 1[1]; D.E. 2 (Mem. Supp.) at 1. On April 4, 2011, petitioner filed an *ex parte* application under 28 U.S.C. § 1782, seeking permission to subpoena her husband, Yelena Furman, and David Lubin, for testimony in connection with the Cayman Islands proceeding. Petitioner's husband, who was convicted of securities fraud and money laundering, has been incarcerated at MDC since November 18, 2010. *See* D.E. 15 (Order) at 1; Declaration of Walter Obando, dated June 29, 2011 ("Obando Decl.") ¶ 19. Because Mr. Gushlak has been housed at MDC, petitioner also seeks permission to subpoena Warden Terrell for the production of the following documents: (1) e-mails that Mr. Gushlak sent or received, including attachments to such e-mails, (2) recordings of telephone conversations in which Mr. Gushlak participated, and (3) the log of Mr. Gushlak's telephone calls. *See* D.E. 3 (Reich Decl.) at Ex. DD, Schedule A.[2]

---

[1] All references to "D.E." herein refer to docket entries in the action styled *In Re Application of Debbie Gushlak Pursuant to 28 U.S.C. § 1782 for the Taking of Discovery for Use in a Foreign Proceeding*, No.11-MC-218 (E.D.N.Y.) (Garaufis, J.).

[2] Although petitioner checked the box for "testimony" rather than "production" on the proposed subpoena to be served on Warden Terrell, this appears to have been a clerical error. *See* D.E. 3 (Reich Decl.) at Ex. DD. As an initial matter, Schedule A to that proposed subpoena does not identify topics for testimony but rather identifies "[t]he documents hereby sought." *See id* at Schedule A. Moreover, petitioner's memorandum accompanying her *ex parte* application explicitly states at page 14 note 8, "No deposition of the warden is sought, only documents." *See* D.E. 2 (Mem. Supp.) at 14 & n.8.

1

The Court should not grant petitioner's application as to Warden Terrell for two reasons. First, the Court lacks subject matter jurisdiction under 28 U.S.C. § 1782 to entertain such an application where, as here, the petitioner seeks to subpoena the sovereign's documents. Second, the documents petitioner seeks are protected from disclosure by the Privacy Act, 5 U.S.C. § 552a, and Warden Terrell does not have the consent of the affected individuals to produce the documents, nor does he have sufficient contact information to enable him to seek such consent. Accordingly, the Court must deny petitioner's application for leave to serve Warden Terrell with the proposed subpoena *duces tecum*.

## ARGUMENT

### I. THE COURT HAS NO JURISDICTION UNDER 28 U.S.C. § 1782 TO GRANT PETITIONER LEAVE TO SERVE A SUBPOENA ON WARDEN TERRELL

The Court should deny petitioner leave to serve a subpoena on Warden Terrell because the Court lacks subject matter jurisdiction under 28 U.S.C. § 1782 to hear such a petition.

Section 1782 provides a mechanism for persons involved in foreign proceedings to enlist federal courts in the process of acquiring document and testimony for use in those proceedings. The statue states, in relevant part:

> The district court of the district in which a person resides or may be found may order him to give his testimony or statement or produce a document or other thing for use in a proceeding in a foreign or international tribunal.

28 U.S.C. § 1782(a) (emphasis added).

In a matter of first impression, in *Al Fayed v. Cent. Intelligence Agency*, 229 F.3d 272 (D.C. Cir. 2000), the Court of Appeals for the District of Columbia considered whether the term "person" that appears in § 1782 includes the federal government and organs thereof. *See Al Fayed*, 229 F.3d at 274. In that case, the district court had initially granted a petitioner's

2

application, pursuant to § 1782, to issue a subpoena against the CIA, but later granted the CIA's motion to quash that subpoena. *See id.* at 273. The district court reasoned that it had lacked subject matter jurisdiction to issue the subpoena in the first place, because the term "person" in § 1782 excludes the sovereign. *See id.* at 274.

The D.C. Circuit agreed. The court of appeals reasoned that, pursuant to the "'longstanding interpretative presumption,'" the word "person" in a statute "'does not include the sovereign'" absent affirmative evidence to the contrary. *Id.* at 274 (quoting *Vermont Agency of Nat. Rsrcs. v. United States*, 529 U.S. 1858, 1866 (2000)). The court further reasoned that § 1782 fails to afford such affirmative evidence, since the statute fails to explicitly include the sovereign, and there are no grounds for overcoming the interpretive presumption. *See id.* at 274-76. Accordingly, the D.C. Circuit affirmed the district court's order quashing the subpoena against the CIA for lack of subject matter jurisdiction. *See id.* at 273, 277; *see also McKevitt v. Mueller*, 689 F. Supp. 2d 661, 668 n.1 (S.D.N.Y. 2010) (holding that § 1782 did not impose any duty on the FBI to produce documents because "[t]he Government is not a 'person' under § 1782 and therefore cannot be compelled to provide documents for use in foreign litigation").

Here, as in *Al Fayed*, the entity from whom petitioner seeks documents under § 1782 is, in essence, an organ of the federal government. Petitioner names Warden Terrell as a source from whom she intends to seek documents, not because of his unique knowledge, but rather solely because, in his official capacity, he has access to Federal Bureau of Prisons ("BOP") documents. As such, he is simply a handy stand-in or for the BOP, much as the head of any federal agency may be said to represent that agency.

Therefore, here, as in *Al Fayed,* § 1782 provides no jurisdictional basis for issuing a subpoena against Warden Terrell. Accordingly, petitioner's application as to Warden Terrell should be denied for lack of subject matter jurisdiction.

## II.
## PRODUCTION OF THE REQUESTED DOCUMENTS
## WOULD VIOLATE THE PRIVACY ACT

Assuming *arguendo* that the Court were to conclude that § 1782 does apply to Warden Terrell, even though he is a federal employee – such that the Court has jurisdiction to entertain petitioner's application – that application should still be denied because petitioner seeks documents that are protected by the Privacy Act.

A.  **BOP *Touhy* Regulations Bar Production That Would Violate A Statute**

Where a BOP employee – such as Warden Terrell – who is not a party to the underlying litigation, is faced with discovery requests, his compliance is governed by 28 C.F.R. §§ 16.21 *et seq.* ("BOP *Touhy* regulations").

The statutory authority for the BOP *Touhy* regulations is found at 5 U.S.C. § 301, which authorizes the head of every Executive Branch agency to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property." *See also United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).

Courts have recognized that the *Touhy* regulations serve the legitimate purpose of "conserv[ing] governmental resources where the United States is not a party to a suit and . . . minimiz[ing] governmental involvement in controversial matters unrelated to official business." *Boron Oil Co. v. Downie*, 873 F.2d 67, 73 (4th Cir. 1989). Such regulations also serve to "centraliz[e] determinations [within the agency] as to whether subpoenas . . . will be willingly obeyed or challenged," thereby avoiding "the possibilities of harm from unrestricted disclosure in court." *Touhy*, 340 U.S. at 468.

The validity of *Touhy* regulations has consistently been upheld by the U.S. Supreme Court and by courts in numerous jurisdictions. *See Touhy*, 340 U.S. at 468; *Abdou v. Gurrieri*,

4

No. 05-CV-3946 (JG), 2006 WL 2729247, at *1 n.1 (E.D.N.Y. Sept. 25, 2006). In fact, *Touhy* regulations are to be accorded the full force and effect of federal law. *See Touhy*, 340 U.S. at 468.

Pursuant to the BOP *Touhy* regulations, BOP employees may not disclose "any information . . . contained in the files of the Department" unless prior approval has been obtained from the proper BOP official. 28 C.F.R. § 16.22(a). That approval will not be granted if, *inter alia*, "[d]isclosure would violate a statute." 28 C.F.R. § 16.26(b)(1).

**B. Warden Terrell Would Violate The Privacy Act Were He To Produce The Requested Documents**

    **1. The Legal Standard For Disclosure Under The Privacy Act**

The Privacy Act provides, in relevant part, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the records pertains." 5 U.S.C. § 552a(b).

A "record" is defined by the Privacy Act as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4). The Second Circuit construes the term "record" liberally. After examining how other Circuits have defined "record," the Second Circuit adopted the Third Circuit's test and held that "record" has "'a broad meaning encompassing,' at the very least, any personal information 'about an individual that is linked to that individual through an identifying particular.'" *Bechhoefer v. U.S. Dep't of Justice*, 209 F.3d 57, 62 (2d Cir. 2000) (quoting *Quinn v. Stone*, 978 F.2d 131, 133 (3d Cir. 1992)).

5

Protected records may be disclosed if the individual to whom the records pertain provides written consent. *See* 5 U.S.C. § 552a(b); *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994); *Abramsky v. U.S. Consumer Prods. Safety Comm'n*, 478 F. Supp. 1040, 1041 (S.D.N.Y. 1979) (concluding that, because individual to whom records pertained did not provide written consent, federal agency was precluded from disclosing information).

Even without such consent, production may be made if a court orders the disclosure. *See* 5 U.S.C. § 552a(b)(11); 28 C.F.R. § 16.50; *Moore v. U.S. Postal Serv.*, 609 F. Supp. 681, 682 (E.D.N.Y. 1985) (concluding that, although agency was prohibited by Privacy Act from disclosing documents to wife in connection with her divorce proceeding, agency's compliance with court order compelling disclosure did not violate the Privacy Act). However, in such a situation, BOP regulations require BOP to make reasonable efforts to notify each individual whose records have been disclosed: BOP must mail, to the individual's last known address, a copy of the order and a description of the disclosed information. *See* 28 C.F.R. § 16.50.

**2. Production Of Mr. Gushlak's E-mails Would Violate The Privacy Act**

Here, disclosure of the 9,086 pages of e-mails that Mr. Gushlak has sent or received since arriving at MDC in November 2010 would violate the Privacy Act. *See* Obando Decl. ¶ 21.

E-mails are records within the meaning of the Privacy Act. Not only do they often refer to "personal information," such as finances, relationships, employment, and health, but also they reveal "identifying particulars," including the correspondents' names, e-mail addresses, and information regarding the date and time of the communication. *See* Obando Decl. ¶ 10. Indeed, courts have found inmate e-mail to constitute records within the meaning of the Privacy Act. *See Rivera v. Potter*, 400 F. Supp. 2d 404, 409 (D. P.R. 2005) (finding that e-mails constitute records within the meaning of the Privacy Act); *see also Yonemoto v. Dep't of Veterans Affairs*, No. 06-CV-378, 2009 WL 5033597, at *8 (D. Haw. 2009); *cf. Fed. Labor Relations Auth.*, 510 U.S. at

6

494 (finding that employees' names and addresses constituted records).

Further, Mr. Gushlak's correspondents have not consented to the disclosure of these records. Although by using MDC's e-mail system, TRULINCS, Mr. Gushlak has been placed on notice that he "ha[s] no expectation of privacy as to any communication," and that "by using this computer [he] consent[ed] to monitoring and information retrieval for law enforcement and other purposes," Mr. Gushlak's 30 correspondents are on no such notice and have provided no such consent. *See* Obando Decl. ¶ 6-8, 21. Those correspondents have been advised only that they may block the inmate's e-mails if they are unwilling to have their e-mail correspondence with the inmate monitored by BOP; they are not apprised that their e-mails are subject to production to non-BOP employees. *See id.* ¶ 8, 21. In sum, BOP has no written consent from these 30 correspondents as to disclosing to petitioner their e-mail correspondence with Mr. Gushlak. *See id.* ¶ 21.

For these reasons, producing Mr. Gushlak's emails would violate the Privacy Act protections afforded his correspondents, unless the Court were to order production, pursuant to § 552a(b)(11).[3]

### 3. Production Of The Recordings Of Mr. Gushlak's Telephonic Conversations Would Violate The Privacy Act

Production of the recordings of Mr. Gushlak's 227 telephone conversations since arriving at MDC on November 18, 2010 would likewise violate the Privacy Act. *See* Obando Decl. ¶ 19, 22. The 227 calls in question were made to 10 different telephone numbers; MDC does not know the names or addresses of those Mr. Gushlak telephoned, but is aware of such information as the telephone numbers themselves, the date, time, and duration of the calls, and the

---

[3] Were the Court to order such production, Warden Terrell would still be required to notify Mr. Gushlak's 30 e-mail correspondents in writing of that order and describe the information disclosed. *See* 16 C.F.R. § 16.50. However, although MDC does have the e-mail addresses for all the correspondents, MDC is aware of street addresses for only 16 of them. *See* Obando Decl. ¶ 21.

7

relationship the inmate claims between himself and the people associated with the 10 telephone numbers. *See id.* ¶ 19,13-16.

Telephone conversations are records within the meaning of the Privacy Act, because they often contain the requisite "personal information" about an inmate's life, finances, health, and employment and contain "identifying particulars" such as names and other biographical data. *See Bechhoefer*, 209 F.3d at 62 (finding that letter containing individual's name, address, telephone and fax numbers, employment information, and association membership constituted a "record"); *Quinn*, 978 F.2d at 133 (finding that rosters and time sheets containing out-of-date home address and telephone numbers were records covered by Privacy Act); *see also Butler v. Fed. Bureau of Prisons*, No. 05-CV-643 (JDB), 2005 WL 3274573, at *4 (D.D.C. Sept. 7, 2005) ("An individual who was a party to a telephone conversation has a privacy interest in a recording of that conversation.").

Neither Mr. Gushlak, nor the individuals associated with the 10 numbers that he has telephoned, have consented to the release of such records. Inmates are aware that their telephone calls from MDC housing unit phone banks (as opposed to the calls placed to counsel, under MDC staff supervision, in MDC staff offices) are subject to monitoring. *See* Obando Decl. ¶ 12, 17. However, MDC lacks written consent from Mr. Gushlak to produce such records to non-BOP employees. *See id.* ¶ 17, 22; *see also Butler*, 2005 WL 3274573, at *4 (noting that, even if recipient of inmate's telephone call was aware of potential monitoring, the fact would not negate her privacy interest in the call, in the context of the Freedom of Information Act). BOP likewise lacks written consent from the individuals associated with the 10 telephone numbers at issue; those individuals were not even on notice that the calls were subject to monitoring. *See id.* ¶ 22.

Therefore, producing the telephone conversation recordings would violate the Privacy Act protections afforded Mr. Gushlak and the other party or parties to each of his telephonic

8

conversations, unless the Court were to order production, pursuant to § 552a(b)(11).[4]  *See Antonelli v. Federal Bureau of Prisons*, 591 F. Supp. 2d 15, 27 (D.D.C. 2008) (noting that, absent written consent by the inmate's interlocutor, telephone recordings would not be produced).

### 4. Production Of The Log Of Mr. Gushlak's Telephone Calls Would Violate The Privacy Act

Finally, disclosure of the log of Mr. Gushlak's 227 telephone calls at MDC would also violate the Privacy Act.  *See* Obando Decl. ¶ 22.

The call log is a record within the meaning of the Privacy Act.  The log displays information such as the telephone number the inmate has called, the city and state with which the number is associated, and the date, time, and duration of the call.  *See id.*  Further, the call logs offer revealing information about the telephone habits of the individuals Mr. Gushlak has been calling.  A third party could relatively easily use this information to attempt to ascertain the identities of the people who Mr. Gushlak called while at MDC.  Therefore, the call log contains both "personal information" and information that can be used as an "identifying particular."  In sum, this document is a record, and protected from disclosure by the Privacy Act.  *See Bechhoefer*, 209 F.3d at 62; *Fed. Labor Relations Auth.*, 510 U.S. at 494 (finding that employees' names and addresses constituted records); *Sullivan v. U.S. Postal Serv.*, 944 F. Supp. 191, 196 (W.D.N.Y. 1996) (noting that disclosure of individual's name and of the fact that individual had applied for a job were sufficient to constitute a record).

Moreover, neither Mr. Gushlak, nor the people to whom he placed calls, have provided

---

[4] Were the Court to order production pursuant to § 552a(b)(11), Warden Terrell would still be required to notify, in writing, the 10 individuals who Mr. Gushlak has telephoned.  *See* 28 C.F.R. ¶ 16.50.  However, MDC does not know the names or addresses of such individuals.  *See* Obando Decl. ¶ 22.

9

written consent to release the call log information. *See* Obando Decl. ¶ 22. Therefore, pursuant to the Privacy Act, the call log may not be produced.

* * * *

In sum, all three categories of documents that petitioner seeks are protected from disclosure under the Privacy Act. Therefore, the BOP *Touhy* regulations, which bar from disclosure any document that violates a statute, would bar production of all three categories of documents: the e-mails Mr. Gushlak has sent and received, the recordings of Mr. Gushlak's telephone calls from the MDC housing unit phone bank, and the log of Mr. Gushlak's telephone calls.

## CONCLUSION

For the foregoing reasons, Warden Terrell respectfully requests that the Court: (i) deny petitioner's application for leave to serve a subpoena *duces tecum* on Warden Terrell, and (2) grant such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
       June 29, 2011

                                LORETTA E. LYNCH
                                United States Attorney
                                *Counsel for Warden Duke Terrell*
                                Eastern District of New York
                                271 Cadman Plaza East, 7th Floor
                                Brooklyn, New York 11201

                        By:    /s/ Layaliza K. Soloveichik
                                LAYALIZA K. SOLOVEICHIK
                                Assistant United States Attorney
                                (718) 254-6298
                                layaliza.soloveichik@usdoj.gov

TO:    Sheryl E. Reich, Esq.
          148 East 78th Street
          New York, New York 10075

          Alan S. Futerfas, Esq.

Law Offices of Alan S. Futerfas, Esq.
565 Fifth Avenue, 7th Floor
New York, New York 10017

Anastasios Tonorezos, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, New York 10017