UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

*In re*

11 Misc. 218 (NGG)

APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782
FOR THE TAKING OF DISCOVERY
FOR USE IN A FOREIGN PROCEEDING

-------------------------------------------------------X

### REPLY MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF DEBBIE GUSHLAK FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY OF MYRON GUSHLAK, YELENA FURMAN, DAVID LUBIN & METROPOLITAN DETENTION CENTER WARDEN DUKE TERRELL

July 8, 2011

Gerald B. Lefcourt, P.C.
Gerald B. Lefcourt
Sheryl E. Reich
148 East 78th Street
New York, N.Y. 10075
Tel: (212) 737-0400
Fax: (212) 988-6192
lefcourt@lefcourtlaw.com

*Attorneys for Debbie Gushlak*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................iii

POINT ONE

THE APPLICATION FOR DISCOVERY FROM MISS FURMAN AND MR. LUBIN
WEIGHS OVERWHELMINGLY IN FAVOR OF GRANTING THE REQUESTS ....................4

   A. The Mandatory 28 U.S.C. §1782 Pre-Requisites Are Met..................................................4

   B. Each of the Discretionary Factors Weighs in Favor of Granting the Application..............5

      1. Is The Putative Witness a Participant in the Foreign Proceeding? ...............................5

         a. The Law Does Not Require that the Applicant First Try and Fail to Obtain
           the Evidence in the Foreign Jurisdiction .................................................................6

         b. Neither Mr. Lubin nor Miss Furman Is Available to the Cayman Court ...............8

      2. Is the Foreign Court Receptive to the Discovery?.........................................................9

      3. Does the Requested Discovery Circumvent Foreign Proof-Gathering Restrictions?..12

      4. Is the Discovery Unduly Burdensome?.......................................................................14

   C. The Remaining Objections of Miss Furman and Mr. Lubin ...........................................16

      1. Miss Furman's Objection on Burdensomeness Grounds ...........................................16

      2. Mr. Lubin's Remaining Objections.............................................................................17

POINT TWO

A SUBPOENA REQUIRING PRODUCTION OF DOCUMENTS BY WARDEN
TERRELL SHOULD ISSUE .........................................................................................................21

   A. The Privacy Act is No Bar to Compliance with a Court Ordered Subpoena .................21

      1. Are There Any Residual Privacy Concerns?...............................................................23

         a. Recorded Telephone Conversations .......................................................................23

         b. Retained E-Mail Message To and From Mr. Gushlak............................................25

B. This Court Has the Authority to Issue the Subpoena .......................................................26

   1. It is Entirely Inconsistent for Congress to Have Asserted the Goals of §1782 and
      Not Have Intended to Include Federal Agencies as Subject to Disclosure .................27

   2. Discovery Ordered Pursuant to §1782 is Discovery Under the Federal Rules. ..........28

   3. Federal Agencies Previously Failed to Assert a Claim of Sovereign Immunity to
      §1782 Discovery and Thereby Have Waived Any Right to Do So.............................29

CONCLUSION ...........................................................................................................................30

## TABLE OF AUTHORITIES

### CASES

Advanced Micro Devices, Inc. v. Intel Corp.,
 2004 U.S. Dist. LEXIS 21437 (N.D. Cal. Oct. 4, 2004) ..............................................14

Ahmad Hamad Algosaibi & Brothers Co. v. Standard Chartered International
 (USA) Ltd.,
 2011 U.S. Dist. LEXIS 53905 (S.D.N.Y. May 20, 2011) ...........................................11

Al Fayed v. Central Intelligence Agency,
 229 F.3d 272 (D.C. Cir. 2000).....................................................................................28

In re Application of Asher B. Edelman,
 295 F.3d 171 (2d Cir. 2002) ..................................................................................3, 8, 9

In re Application of Bank of Cyprus Public Co. Ltd.,
 2011 U.S. Dist. LEXIS 6082 (S.D.N.Y. Jan. 21, 2011) ...............................................3

In re Application of Chevron Corp.,
 2010 U.S. Dist. LEXIS 117679 (S.D.N.Y. Nov. 10, 2010)...........................................5

In re Application of Microsoft Corp.,
 428 F. Supp. 2d 188 (S.D.N.Y. 2006) ...................................................5, 10, 12, 13, 15

In re Application of Servicio Pan Americano de Proteccion, C.A.,
 354 F. Supp. 2d 269 (S.D.N.Y. 2004) .........................................................................11

In re Application of Temporary Services Insurance Ltd.,
 2009 U.S. Dist. LEXIS 77189 (W.D.N.Y. Aug. 28, 2009).........................................11

Application of Yukos Hydrocarbons Investments Ltd.,
 2009 U.S. Dist. LEXIS 121268 (N.D.N.Y. Dec. 30, 2009) ........................................29

Chevron Corp. v. Stratus Consulting, Inc.,
 2010 U.S. Dist. LEXIS 55049 (D. Colo. May 25, 2010) ............................................29

Corbett v. eHome Credit Corp.,
 No. 10-CV-26, 2010 WL 3023870 (E.D.N.Y. Aug. 2, 2010) .....................................16

In re Cty. of Erie,
 473 F.3d 413 (2d Cir. 2007) ........................................................................................20

In re Esses,
    101 F.3d 873 (2d Cir. 1996) .......................................................................................11

Euromepa S.A. v. R. Esmerian, Inc.,
    51 F.3d 1095 (2d Cir. 1995) ...........................................................................2, 7, 11, 12

Fazzini v. U.S. Department of Justice,
    1990 U.S. Dist. LEXIS 17225 (N.D. Ill. Dec. 11, 1990)..............................................31

Fisher v. United States,
    425 U.S. 391 (1976) ...................................................................................................20

In re Gemeinshcaftspraxis Dr. Medical Schottdorf,
    2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Dec. 29, 2006)............................................12

In re Godfrey,
    2009 U.S. Dist. LEXIS 127279 (N.D. Tex. Mar. 24, 2009).........................................29

In re Horowitz,
    482 F.2d 72 (2d Cir. 1973) .........................................................................................20

In re IKB Deutsche Industriebank AG,
    2009 U.S. App. LEXIS 12953 (2d Cir. June 17, 2009).................................................7

In re Imanagement, Ltd.,
    2005 U.S. Dist. LEXIS 17025 (E.D.N.Y. Aug. 16, 2005) ...........................................11

Intel Corp. v. Advanced Micro Devices,
    542 U.S. 241 (2004) ............................................................................2, 5, 10, 13, 15, 28

In re Inversionesy Gasolinera Petroleos Valenzuela,
    2011 U.S. Dist. LEXIS 5201 (S.D. Fla. Jan. 19, 2011)...............................................29

In re Kevork,
    788 F.2d 566 (9th Cir. 1986) .......................................................................................30

Libaire v. Kaplan,
    760 F. Supp. 2d 288, 2011 U.S. Dist. LEXIS 4980 (E.D.N.Y. Jan. 19,
    2011)..........................................................................................................................16

Mangino v. Department of the Army,
    1994 U.S. Dist. LEXIS 12313 (D. Kan. Aug. 24, 1994).............................................23

In re Matter of the Application of Oxus Gold PLC for Assistance Before a
    Foreign Tribunal,
    2006 U.S. Dist. LEXIS 74118 (D.N.J. Oct. 10, 2006) ................................................17

Moore v. U.S. Postal Serv.,
  609 F. Supp. 681, 1985 U.S. Dist. LEXIS 19885 (E.D.N.Y. 1985)............................23

In re Oxus Gold PLC,
  2007 U.S. Dist. LEXIS 24061 (D.N.J. Apr. 2, 2007)...........................................17, 18

In re Republic of Ecuador,
  2010 U.S. Dist. LEXIS 132045 (N.D. Cal. Dec. 1, 2010)..........................................29

Schmitz v. Bernstein Liebhard & Lifshitz, LLP,
  376 F.3d 79 (2d Cir. 2004) ........................................................................................11

Trilegiant Corp. v. Sitel Corp.,
  2011 U.S. Dist. LEXIS 71815 (S.D.N.Y. July 1, 2011)..............................................15

In re United Co. Rusal, PLC v. Trafigura,
  2011 U.S. Dist. LEXIS 26897 (D. Conn. Mar. 16, 2011) ..........................................30

United States v. Aristizabal,
  1993 U.S. Dist. LEXIS 9165 (E.D.N.Y. June 21, 1993)..............................................25

United States v. Bonanno,
  487 F.2d 654 (2d Cir. 1973) .......................................................................................25

United States v. Cheely,
  814 F. Supp. 1430 (D. Alaska 1992) ...........................................................................24

United States v. Correa,
  220 F. Supp. 2d 61 (D. Mass. 2002)............................................................................24

United States v. Footman,
  215 F.3d 145 (1st Cir. 2000).......................................................................................24

United States v. Harrison,
  986 F. Supp. 280 (M.D. Pa. 1997)..............................................................................24

United States v. International Brotherhood of Teamsters,
  119 F.3d 210 (2d Cir. 1997) .......................................................................................20

United States v. Peoples,
  71 F. Supp. 2d 967 (W.D. Mo. 1999)..........................................................................24

United States v. Schwimmer,
  892 F.2d 237 (2d Cir. 1989) .......................................................................................20

United States v. Willoughby,
   860 F.2d 15 (2d Cir. 1988) ..................................................................................24, 25

University of Pa. v. E.E.O.C.,
   493 U.S. 182 (1990) ..................................................................................................20

Vt. Agency of Nat. Resources v. U. S. ex rel. Stevens,
   120 S. Ct. 1858 (2000)..............................................................................................30

Yousuf v. Samantar,
   451 F.3d 248 (D.C. Cir. 2006)..................................................................................29

## STATUTES

5 U.S.C. §552a(b)(11) ......................................................................................................23

5 U.S.C. §552a(e)(8)..........................................................................................................23

28 U.S.C. §1331 .................................................................................................................30

28 U.S.C. §1782 ................................................................................................1, 2, 4, 22, 27

Fed.R.Civ.P. Rule 26 ..................................................................................................15, 19

Fed. R. Civ. P. Rule 45 .....................................................................................................29

5 U.S.C. §552a(b)(11) ......................................................................................................23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

*In re*

11 Misc. 218 (NGG)

APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782
FOR THE TAKING OF DISCOVERY
FOR USE IN A FOREIGN PROCEEDING

-------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF DEBBIE GUSHLAK FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY OF MYRON GUSHLAK, YELENA FURMAN, DAVID LUBIN & METROPOLITAN DETENTION CENTER WARDEN DUKE TERRELL

This Reply is submitted in further support of the application of Debbie Gushlak pursuant

to 28 U.S.C. §1782 to take discovery in the Eastern District of New York in aid of a foreign

proceeding. Mrs. Gushlak is a party to a divorce action entitled *Gushlak v. Gushlak*, Cause No.

Fam. 0024 of 2010, a foreign proceeding pending in the Grand Court of the Cayman Islands,

Grand Cayman ("GCM Court" or "Cayman Proceeding").

As set forth in greater detail in the opening papers,[1] Mrs. Gushlak is attempting to locate

assets secreted around the world by her husband, Myron Gushlak. All of the specific assets as to

which Mrs. Gushlak seeks discovery have been identified by the GCM Court as presumptively

marital and therefore subject to allocation between the parties pursuant to GCM law.[2] However,

unless Mrs. Gushlak obtains sufficient information as to their current whereabouts, value and

---

[1] Mrs. Gushlak filed the Application on April 4, 2011, supported by the Declaration of Sheryl E. Reich, Esq., dated April 4, 2011 ("Reich Decl. (4/4/11)"), to which Exhibits "A" through "DD" were annexed, and a Memorandum of Law ("D. Gushlak Memo").

[2] As set forth in an Order dated October 7, 2010, affirmed as modified on October 28, 2010, the GCM Court determined on a provisional basis that the marital estate included numerous entities and accounts that are nominally owned by and controlled by persons other than Mr. or Mrs. Gushlak. *See* Reich Decl. (4/4/11) Ex. "A" at Schedules 3 ("Bank Accounts") and 4 ("Companies, Partnerships and Entities").

controlling persons, any allocation of them to her would be pyrrhic. Through discovery

proceedings authorized by 28 U.S.C. §1782, she seeks to learn the whereabouts of the assets.

The opposition to the Application mounted by Miss Furman and Mr. Lubin relies on an

entirely mistaken understanding of what a court is to consider in deciding whether to grant an

application, in particular, whether the Applicant has exhausted all remedies in the foreign

jurisdiction. Soldiering on, oblivious to the parameters established by the Supreme Court and

hued to by district courts considering such applications, the putative deposition witnesses seek to

assert barrier after barrier in a desperate effort to avoid providing evidence to Mrs. Gushlak for

use in the Cayman Proceeding which evidence will bring before the Cayman Court the assets

that Mr. Gushlak has so carefully hidden. Both Miss Furman and Mr. Lubin ask the Court to do

precisely that which the Supreme Court instructed district courts not to do: engage in

"speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-

consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly

promote the twin aims of the statute". *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-

1100 (2d Cir. 1995). The task before this Court is simple: is the witness found in the district; has

the foreign court expressed that it does not want the evidence gathered; and is the discovery

unduly burdensome. The answer to each counsels entirely in favor of granting the discovery.

**What Mrs. Gushlak Seeks to Accomplish by the Requested Discovery**

Title 28 U.S.C. §1782 authorizes a court "to order a person [who resides or is found in

the District] to give his testimony or . . . to produce a document . . . for use in a proceeding in a

foreign or international tribunal". The statute is intended to "provid[e] efficient assistance to

participants in international litigation and encourage foreign countries by example to provide

similar assistance to our courts". *Intel Corp. v. Advanced Micro Devices,* 542 U.S. 241, 252

2

(2004) (internal quotations and citations omitted); *In re Application of Asher B. Edelman*, 295 F.3d 171, 181 (2d Cir. 2002); *see also In re Application of Bank of Cyprus Public Co. Ltd.*, 2011 U.S. Dist. LEXIS 6082 at \*5-6 (S.D.N.Y. Jan. 21, 2011).

Through her application, Mrs. Gushlak seeks to take discovery of four persons residing in or found in the Eastern District of New York: (i) her husband, who is in the custody of the Bureau of Prisons and housed in a facility in the District; (ii) Brooklyn resident Yelena Furman who not only has written authority from Mr. Gushlak to act on all business matters, but, on the very day Mr. Gushlak was remanded by this Court to the custody of the Bureau of Prisons, Miss Furman was in the Cayman Islands moving boxes of documents and computers from the Gushlaks' apartment to a waiting private jet; (iii) David Lubin, who was instrumental in at least two reverse mergers and who has moved millions of dollars in marital assets out of the control of Mrs. Gushlak at the instructions of Mr. Gushlak; and (iv) Duke Terrell, Warden of Metropolitan Detention Center, from whom recordings of telephone conversations and e-mails in which Mr. Gushlak participated are sought. Each of these persons is in possession of material information and/or documents needed in the foreign proceeding.

This Reply addresses the arguments made in (1) the still unfiled and belatedly served opposition of Yelena Furman, consisting of a declaration of James Kennedy, dated June 24, 2011 ("Kennedy Decl."), a declaration of Alan S. Futerfas, dated June 27, 2011, a declaration of Yelena Furman, dated June 27, 2011 ("Furman Decl."), and a Memorandum of Law ("Y. Furman Memo");[3] (2) the opposition of David Lubin, submitted by affidavit of Thomas Hyland,

---

[3] Predictably, on the evening before this Reply was due, and ten days after the last extension ran out for Miss Furman to file her opposition papers (after having had nearly two months to submit them), counsel was served with a second Declaration of Mr. Kennedy. The document is not addressed here.

3

Esq., dated June 24, 2011; and (3) the opposition of Warden Terrell, dated June 29, 2011.[4]

Submitted herewith is a Declaration of William Helfrecht, Esq., dated July 8, 2011 ("Helfrecht Decl."), who represents Mrs. Gushlak in the Cayman Proceeding and is familiar both with the foreign proceeding and the practices of Cayman courts, as well as a Declaration of Sheryl E. Reich, Esq., dated July 8, 2011 (Reich Decl. (7/8/11)"), appended to which are additional exhibits "EE" through "GG".

**POINT ONE**

**THE APPLICATION FOR DISCOVERY FROM MISS FURMAN AND MR. LUBIN WEIGHS OVERWHELMINGLY IN FAVOR OF GRANTING THE REQUESTS**

**A. The Mandatory 28 U.S.C. §1782 Pre-Requisites Are Met**

As this Court recognized in the June 23 Order, an applicant to take discovery pursuant to 28 U.S.C. §1782 "must first meet three requirements: that the respondent resides in or is found in the district of the district court to which the application is made.  Second, the discovery must be 'for use' in a proceeding before a foreign tribunal.  Third, the application must be made by a foreign or international tribunal or any interested person".  June 23 Order at 2.  This Court found that with respect to Mr. Gushlak, the mandatory requirements were met.  *Id.*  None of the three remaining putative witnesses claims that the Application is wanting with respect to any of these three factors, nor can he or she: each witness is found or resides in the Eastern District of New York; the requested discovery is for use in a foreign proceeding, as the Court has already found; and also as the Court has already found, Mrs. Gushlak is an "interested person" for purposes of the statute.

---

[4] By Order dated June 23, 2011 ("June 23 Order"), this Court granted the application to allow service of the subpoena on Mr. Gushlak and he was promptly served.  The Court invited him to challenge the discovery by moving to quash the subpoena (June 23 Order at 3 n. 2), but Mr. Gushlak has declined to do so and his deposition is scheduled for September 15, 2011, with documents to be produced by August 30, 2011.

4

## B. Each of the Discretionary Factors Weighs in Favor of Granting the Application

As this Court recognized, once a court determines that the mandatory factors are

established, a court may then consider several discretionary factors set forth in *Intel,* 542 U.S. at

264-66, to determine whether to exercise its discretion to grant an application:

- First, whether the person from whom discovery is sought is a participant in the foreign proceeding, since the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.

- Second, the court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Specifically, the court may consider if the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States". *Id.* at 264-65.

- Third, the court may reject requests that are "unduly intrusive or burdensome".

*In re Application of Microsoft Corp.,* 428 F. Supp.2d 188, 192-93 (S.D.N.Y. 2006); *In re*

*Application of Chevron Corp.*, 2010 U.S. Dist. LEXIS 117679 at *49-53 (S.D.N.Y. Nov. 10,

2010). Each of these factors weighs strongly in favor of allowing service of the remaining

subpoenas.

### 1. *Is The Putative Witness a Participant in the Foreign Proceeding?*

The first discretionary factor requires a district court to evaluate whether the documents or

testimony sought by the application are within the foreign tribunal's jurisdictional reach, and

thus accessible absent resort to §1782. *Microsoft*, 428 F. Supp.2d at 192-93; *see also Intel,* 542

U.S. at 264-65.

5

a. The Law Does Not Require that the Applicant
First Try and Fail to Obtain the Evidence in the Foreign Jurisdiction

The putative witnesses argue that Mrs. Gushlak has failed to demonstrate that the

evidence sought here could not be obtained in Cayman. Specifically, it is alleged that she "fails

to cite any order or directive by any Cayman Islands judge stating that the Cayman discovery

process is anyway [sic] inadequate to determine the marital issues before it or that Mr. Gushlak's

disclosures have been insufficient" (Hyland Decl. ¶14). But this assertion entirely misreads the

law: there is no requirement of exhaustion of remedies in the foreign jurisdiction before

discovery under §1782 will be granted. *Euromepa, supra*, 51 F.3d at 1098 (". . .relying on the

plain language of the statute, [the Second Circuit] has . . . refused to engraft a 'quasi-exhaustion

requirement' onto section 1782 that would force litigants to seek 'information through the

foreign or international tribunal' before requesting discovery from the district court"). Indeed,

*Intel*, authorizes the granting of 1782 applications even where the foreign proceeding is merely

"within reasonable contemplation, but need not be 'pending' or 'imminent'. 542 U.S. at 259; *In*

*re IKB Deutsche Industriebank AG*, 2010 U.S. Dist. LEXIS 35924 at *8 (N.D. Ill. Apr. 8, 2010)

("Supreme Court in *Intel* found that Section 1782 does not impose an exhaustion requirement");

*Marubeni Am. Corp. v. LBA Y.K,* 335 Fed. Appx. 95 at *3; 2009 U.S. App. LEXIS 12953 at *8

(2d Cir. June 17, 2009) (affirming grant of discovery even though "the foreign court theoretically

could order the parties to produce the requested evidence").[5]

*Intel* confirms that it is a relevant inquiry to ask why discovery is sought in the United

States from a party to the foreign proceeding. The circumstances here certainly justify discovery

---

[5] Indeed, it is in light of this law – that no exhaustion is needed – that the argument of Miss Furman that there is no
"case or controversy" until there is a demonstration that Mrs. Gushlak has exhausted her options in the Cayman
Proceeding (Y. Furman Memo at 15-17) is particularly irrelevant. Nevertheless, the Helfrecht Decl. details that
there has been no lack of trying to get discovery from Mr. Gushlak, who has to date all but ignored four separate
orders to disclose his finances. *See* Helfrecht Decl. ¶'s 11 – 16.

6

against Mr. Gushlak in the United States, where he is confined. But the inquiry has no bearing on seeking discovery from witnesses located in the United States who are not parties to the proceeding. And Intel makes it clear that the Court is not to wade into determining whether the foreign court could get access to the nonparty witnesses in these circumstances.

The Second Circuit's decision in *In re Edelman, supra,* 295 F.3d 171 certainly shows how broadly the courts are to interpret 1782. There, the Second Circuit reviewed a district court decision quashing a subpoena served on a French resident who happened to be visiting an art gallery in New York. The underlying litigation was pending in France and the witness was a French citizen residing in France. On appeal, the Second Circuit vacated the order to quash and remanded it for a determination of whether requiring the French resident to travel back to New York for a deposition in order to gather evidence for use in a French proceeding was burdensome. In so ruling, the Court had no hesitation in finding that a subpoena issued under §1782 could be served on a casual visitor to New York[6] even though, quite clearly, in that instance the putative witness, as a citizen and resident of France, was more than "available" to the French court where the litigation was pending:

> [W]e hold that if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is "found" in that district. As a matter of law, a person who lives and works in a foreign country is not necessarily beyond the reach of § 1782(a).

295 F.3d at 180. Clearly, under the law, a district court is not to be concerned with whether a foreign court could get the witnesses and documents in that jurisdiction. But here, there is not even any evidence that it could, since neither Miss Furman or Mr. Lubin is subject to the Cayman Court.

---

[6] There, the Applicant had asked the district court and was given the right to issue subpoenas to unnamed witnesses. The Applicant then simply waited for the witness to happen into New York, where he was "tagged". 295 F.3d at 174.

7

b. Neither Mr. Lubin nor Miss Furman Is Available to the Cayman Court

Even if it were dispositive on this factor, neither Mr. Lubin nor Miss Furman explains

how their own testimony or documents can be obtained by the GCM Court. Mr. Lubin has no

known ties to the Cayman Islands and asserts none. Miss Furman, however, argues that there is

no need to issue a subpoena to her in New York because all the discovery sought here from her is

equally obtainable in the Cayman Proceeding. Supporting that claim is her sworn assertion that

she spends "considerable" time in Cayman (Furman Decl. ¶1) and that she has "made herself

available to the Grand Court" (*id.* ¶3).

Miss Furman, a Brooklyn resident who asserts no residency rights in the Cayman Islands

or any business ties thereto, is rather vague as to how much of her time, historically, she has

spent in Cayman. But we do not have to guess. As detailed in the Reich Decl. (7/8/11) at ¶8, in

the 225 days from November 18, 2010, when Mr. Gushlak was remanded through June 30, 2011,

she spent fewer than 40 days on the island, or approximately 16% of her time. That means she

has spent 84 % of her time is spent in New York – where she lives and works when not on

vacation in Cayman. Moreover, nowhere does she claim to be a regular or predictable visitor to

Cayman, or even that she has any intention ever to travel there in the future.

Moreover, her assertion that she has "made herself available" to the GCM Court is,

frankly, a bit of an inside joke. The only way in which she has been "available" is when she was

hauled into court to answer an *ex parte* order barring her from the removal of documents and

other evidence – an order that was affirmed after she appeared:

> On the day that Mr. Gushlak was sentenced by this Court and
> remanded, November 18, 2010, Miss Furman traveled by Mr.
> Gushlak's private jet to Cayman. Once in Cayman, she was
> spotted removing boxes of documents, computers and other
> electronic equipment from the Gushlaks' condominium apartment.
> Immediate application was made to prevent her from doing so and

8

> by initial order entered ex parte on November 20, 2010, and then, after a hearing, a second order entered on November 23, 2010, Miss Furman was barred from removing anything from the unit except her "personal effects".

Reich Decl. (7/8/11) ¶5(a).  The restraining orders are appended to the Reich Decl. (7/8/11) as Exhibits "EE" and "FF".  That is how she has made herself available.

In sum, both legally and factually this factor weighs in favor of granting Mrs. Gushlak the discovery since it is beyond the reach of the foreign jurisdiction.

## 2.  *Is the Foreign Court Receptive to the Discovery?*

The second discretionary factor requires district courts to inquire into the nature of foreign proceedings and the "receptiveness" of the foreign tribunal to assistance from a United States court. *Microsoft*, 428 F. Supp.2d at 194 (*citing Intel*, 542 U.S. at 264).

It has often been said in this context that United States courts have neither the competency nor the time to understand a foreign legal system fully or how such a system might respond to §1782 assistance from a United States court.  For this reason, district courts have been instructed to tread lightly and to heed only clear statements by foreign tribunals.  As the Second Circuit counsels:

> We think that it is unwise -- as well as in tension with the aims of section 1782 -- for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law .... [W]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges.  Such a costly, time-consuming, and inherently unreliable method of deciding section

9

1782 requests cannot possibly promote the twin aims of the statute.

*Euromepa S.A. v. R. Esmerian, Inc., supra*, 51 F.3d at 1099-1100.[7] Instead, courts have determined that the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from the existence of treaties that facilitate cooperation between the U.S. federal judiciary and the foreign jurisdiction. *See In re Application of Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp.2d 269, 274 (S.D.N.Y. 2004). United States courts routinely grant §1782 requests to obtain discovery for use in proceedings in Cayman. *See, e.g., Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Intl. (USA) Ltd.*, 2011 U.S. Dist. LEXIS 53905 (S.D.N.Y. May 20, 2011); *In re Application of Temporary Services Ins. Ltd.*, 2009 U.S. Dist LEXIS 77189 (W.D.N.Y. Aug. 28, 2009). Indeed, as Cayman attorney William Helfrecht attests, the United States and Cayman each regularly grant applications to take discovery in their own jurisdictions in aid of litigation pending in the other. Helfrecht Decl. ¶'s 7 - 9.

Miss Furman seeks to place the burden on Mrs. Gushlak to obtain a "ruling from the Grand Court regarding whether this discovery is relevant, admissible and requested". Y. Furman Memo at 2. But the law does not place that burden on the applicant. Instead, to weigh against an applicant, courts must find "authoritative proof that the foreign jurisdiction would reject the § 1782 assistance". *Euromepa*, 51 F.3d at 1100. For that reason, this factor has weighed against an application only where for example, the foreign tribunal or government has written to the district court hearing the application and expressly stated that it did not want the American court's help. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that the German Ministry of Justice and the local German prosecutor explicitly asked the

---

[7] The Second Circuit goes much further than the Supreme Court in admonishing courts from engaging in "speculative forays" into another country's laws and statutes, deemed "legal territories unfamiliar to federal judges". *In re Esses,*101 F.3d 873, 876 (2d Cir. 1996); *In re Imanagement, Ltd.,* 2005 U.S. Dist. LEXIS 17025 at *5 (E.D.N.Y. Aug. 16, 2005) (rejecting a "speculative foray into unfamiliar legal territory").

10

district court judge to deny the discovery request); *Microsoft*, 428 F. Supp.2d at 194 (noting explicit opposition to Microsoft's discovery request by the EU Commission); *Euromepa,* 51 F.3d at 1100 (". . .a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782").

Put starkly, the law requires that unless a putative witness presents evidence that the foreign court **rejects** §1782 type assistance, this factor cannot weigh against requiring the disclosure. Instead, "the Second Circuit has instructed that district courts generally should err on the side of permitting the requested discovery." *In re Gemeinshcaftspraxis Dr. Med. Schottdorf,* 2006 U.S. Dist. LEXIS 94161 at *6 (S.D.N.Y. Dec. 29, 2006) (*citing Euromepa,* 51 F.3d at 1101).

Mr. Lubin asserts that the discovery sought "**could** also be contrary to any discovery rulings set forth by the court that has jurisdiction over the dispute" (Hyland Decl. ¶11) (emphasis added). Not only do he and Miss Furman fail to point to any order or ruling that it would contradict – the minimum required by the law of this Circuit for weighing this factor against an Applicant – but neither asserts any factual or legal basis to find that the Cayman Court would not entirely welcome the evidence sought to be obtained through this Application.

Notwithstanding that Mrs. Gushlak has no burden to meet since the witnesses have not made any showing as required, Mr. Helfrecht asserts from his experience in just such matters that the Cayman courts in general (Helfrecht Decl. ¶'s 7 – 9), and this Cayman Court in particular (*id.* ¶22) would welcome the assistance. Indeed, the Cayman Court has itself called for information of this kind. That is, it has already determined that evidence concerning the assets listed on Schedule "A" to the proposed subpoena is relevant to the proceeding. *See* Order

11

October 7, 2010 (Reich Decl. (4/4/11) Exhibit "A"), at Schedules 3 and 4. Thus, not only have the putative witnesses failed to meet their burden of demonstrating that the foreign jurisdiction does not want the evidence, but Mrs. Gushlak has demonstrated that the foreign court clearly would want it. Thus, this factor, too, weighs entirely in favor of granting the Application.

### 3. *Does the Requested Discovery Circumvent Foreign Proof-Gathering Restrictions?*

Either as a separate factor or as an aspect of the question of whether the foreign court will be receptive to receipt of the requested discovery, a court is permitted to consider whether the application is an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States". *Microsoft,* 428 F. Supp.2d at 192-93 (*citing Intel*, 542 U.S. at 264-65).

Not surprisingly, Mr. Lubin and Miss Furman both make boilerplate assertions that the Application fails in this regard, *e.g.*, "[t]he Application seeks to circumvent the rules and procedures of a pending litigation in a foreign tribunal" (Hyland Decl. ¶3), pointing to no rule or procedure which this Application seeks to circumvent. This effort is to no avail.

To avoid that fatal defect, Miss Furman instead claims that Mrs. Gushlak is attempting to escape her own discovery failings by improperly seeking to move the situs of discovery to the Eastern District of New York. Y. Furman Memo at 22.

It cannot be that either putative witness is arguing that the Application should be denied because Mrs. Gushlak is seeking discovery in this Court that would not be permitted in Cayman – though it seems like they are. The Supreme Court settled that question in *Intel* (542 U.S. at 252): "We now hold that § 1782(a) does not impose . . . a foreign-discoverability requirement".

Thus, we are simply led back to the question of whether the "the foreign court has explicitly rejected a request for the same discovery", since only then should a court deem this

factor to weigh against requiring disclosure. *See, e.g., Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 U.S. Dist. LEXIS 21437 at *6 (N.D. Cal. Oct. 4, 2004) ( on remand from the Supreme Court, the district court denied Advanced Micro Devices' ("AMD") discovery request because, in part, the European Commission proceeding had expressly denied AMD's discovery request. Thus, AMD's 1782(a) application sought discovery that the EC had already denied).

What the witnesses appear to be arguing is that Mrs. Gushlak is in default of her own discovery obligations in the GCM Proceeding and therefore she would not be able to ask that court (out of shame? legally?) for further disclosure. Y. Furman Memo at 24. But no evidence of any of these steps has been adduced. Remarkably absent from the affidavit of Mr. Gushlak's Cayman counsel is any assertion of the existence of any **order** in which Mrs. Gushlak has been found to be in violation of a disclosure obligation. None. *See* Helfrecht Decl. at ¶'s 17 - 18.[8] Thus, even if the argument could, with the right facts, weigh against granting the application here, the facts here do not support the argument.[9]

Nor does the argument that Mrs. Gushlak seeks to make the Eastern District the *situs* of discovery in the foreign proceeding. What is said of Mrs. Gushlak's application is equally true of every other §1782 application. Mrs. Gushlak has not chosen the Eastern District of New York, the witnesses have. This is where they reside and thus this is where, by federal law, Mrs. Gushlak is entitled to seek discovery from them.

---

[8] Indeed, Miss Furman's papers are remarkably devoid of proof of any of the allegations made – even if those claims had any relevance to the issues to be decided here. Miss Furman repeatedly confuses complaints made to the police with factual findings. So, even if it were relevant whether Mrs. Gushlak complained to the police that her husband was threatening her, for example, we see no *finding* that her complaint was false. Similarly, though we see a complaint to the police by Miss Furman that Mrs. Gushlak called to say she would make Miss Furman's life "hard", there are no such findings. By contrast, there are court findings that Miss Furman was endeavoring to spirit away documents. *See* Reich Decl. (7/8/11) at ¶5(a) and Exhibits "EE" and "FF".

[9] The entirely out of time second Kennedy Decl. implies that had the presiding judge at the June 30th conference not had other pressing matters, Mr. Gushlak's counsel would have raised the full litany of Mrs. Gushlak's (imagined) misconduct. Under Cayman procedure, all the time on the world would not have permitted the airing of any such claims because no summons had been listed.

**4. *Is the Discovery Unduly Burdensome?***

The final discretionary factor asks courts to be "mindful of overly intrusive or burdensome discovery requests". *Microsoft,* 428 F. Supp.2d at 192-93 (*citing Intel,* 542 U.S. at 264-65).

Both Miss Furman and Mr. Lubin assert that the discovery sought is "irrelevant" (*e.g.,* the subpoena calls for "information that is irrelevant to the divorce action" (Hyland Decl. ¶24)). Both entirely misconceive the applicable standards and burdens.

The scope of discovery under 1782 is supplied by Fed.R.Civ.P. Rule 26, which permits a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." For discovery purposes, "relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) ("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept"); *see also Trilegiant Corp. v. Sitel Corp.*, 2011 U.S. Dist. LEXIS 71815 (S.D.N.Y. July 1, 2011).

The Application certainly provides evidence of the involvement of both Miss Furman and Mr. Lubin in the financial shenanigans of Mr. Gushlak, including Miss Furman's recent efforts to remove documents from Cayman (Reich Decl. (7/8/11) ¶5(a) and Exhibits "EE" and "FF") and Mr. Lubin not only transferring millions of dollars in marital assets through his escrow fund, but also being named as a contact person through a fraudulent SEC filing. Reich Decl. (4/4/11) Exhibit "U". Thus, the Application has more than met its burden of demonstrating that Mrs. Gushlak seeks relevant evidence.[10]

---

[10] Lest there be any doubt whatsoever that the purpose of seeking discovery from Miss Furman is to obtain relevant evidence in the foreign proceeding and not to harass her, the Reich Decl. (7/8/11) at ¶'s 4 - 6 provides additional detail as to the good faith basis to believe that Miss Furman is in possession of such evidence.

14

Both Miss Furman and Mr. Lubin next assert that the discovery would be "burdensome". But if a party from whom discovery is requested objects to its production, that party bears the burden of showing with specificity why a particular discovery request is improper. *Libaire v. Kaplan*, 760 F.Supp.2d 288, 2011 U.S. Dist. LEXIS 4980 at \*4 (E.D.N.Y. Jan. 19, 2011) (once party issuing the subpoena has demonstrated relevance of the requested documents, "party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome"); *Corbett v. eHome Credit Corp.*, No. 10–CV–26, 2010 WL 3023870, at \*3 (E.D.N.Y. Aug. 2, 2010) (same).

Neither is able to support the boilerplate assertions of burden.

Here, the scope of the disclosure sought from Mr. Lubin and Miss Furman is based entirely on the list of assets identified by the Cayman Court as presumptively marital. Schedule "A" to the subpoenas tracks the accounts, entities and other assets as to which the GCM Court ordered disclosure. Those are the presumptive marital assets as of the date of the GCM Order. If the list is long, its length is a function of the many different accounts into which Mr. Gushlak has stashed assets and the very many layers of entities he has used to do so. Given that it tracks the presumptive marital assets, the requests are clearly relevant and not *unduly* burdensome. Should Mrs. Gushlak be restricted to every third marital asset, or those accounts starting with letters in the first third of the alphabet, A through G only? A catch-all provision is also necessary because it is highly likely that we do not in fact know where all the assets are hidden or the entities being used to hide them.

Moreover, given that the foreign court has already determined that this information is relevant to the proceeding, this Court is hardly in a position to countermand the determination of relevance made by the foreign court. Certainly, neither Mr. Lubin nor Miss Furman has

provided any argument that should even give this Court pause. If they have the documents, they should produce them. If they do not have the documents, then it is no burden.[11]

## C. The Remaining Objections of Miss Furman and Mr. Lubin

As to their remaining objections, together, Miss Furman and Mr. Lubin cycle through every possible objection to a subpoena they can find. Each bears little relation to the facts presented here and all should be rejected. They are addressed in turn.

### 1. Miss Furman's Objection on Burdensomeness Grounds

Miss Furman argues that it is burdensome for her to be deposed in New York, where she lives and works, and instead discovery from her should take place in Cayman, where she does not live, does not work, and to which historically she has traveled when she chooses on no particular schedule and to which she has no obligation ever to return. Being deposed where she lives and works cannot possibly be a burden.

In that regard, we ask the Court to consider *In re Matter of the Application of Oxus Gold PLC for Assistance Before A Foreign Tribunal*, Misc. 06-82, 2006 U.S. Dist. LEXIS 74118 (D.N.J. Oct. 10, 2006), *aff'd In re Oxus Gold PLC,* 2007 U.S. Dist. LEXIS 24061 at *12-13 (D.N.J. Apr. 2, 2007). There, a court was asked to quash a subpoena served on a witness pursuant to §1782 in aid of a proceeding in Kyrgyzstan. As the court noted, the putative witness

> . . .currently lives in Moscow, Russia with his Russian wife. He is employed in Moscow and regularly conducts business there. However, Respondent leases a residential apartment in New Jersey, is registered to vote in New Jersey, maintains regular doctor appointments with his physician here, and travels to New

---

[11] It is, of course, entirely routine for counsel representing a non-party witness with a limited understanding of the litigation to expect to meet and confer with counsel for the party seeking discovery in order to identify actual, as compared to, hypothetical issues. Only if, after such a meeting, the attorneys determine that the concerns cannot be accommodated is court action appropriate. That we are in the context of a §1782 proceeding warrants no exception. Certainly, none of these objections, boilerplate as they appear to be, would warrant this court declining to exercise its discretion and allowing the subpoena to be served.

16

> Jersey at least two months every year to vacation and visit his
> family.

Notwithstanding the evident burden of having to travel from Moscow to New Jersey in order to

be deposed, the Magistrate Judge recommended, and the District Court affirmed, the

determination that Respondent had "enough contacts with New Jersey to be considered a

resident" (*id.*) and that considerations under §1782 weighed in favor of allowing the discovery.

It is difficult to imagine finding that imposing upon Miss Furman the task of traveling from

Brooklyn to Manhattan for a deposition could warrant rejection of the Application in light of

what other courts have determined is not unreasonable.

## 2. Mr. Lubin's Remaining Objections

**Objection:** "All the information Ms. Gushlak seeks from Mr. Lubin, to wit, information

relating to Mr. Gushlak's assets, are attainable from Mr. Gushlak himself" (Hyland Decl. ¶10);

"Any information Mr. Lubin can provide is cumulative and repetitive of what Mr. Gushlak has

already provided or can potentially provide in the future" (Hyland Decl. ¶11).

Clearly, there is no basis to assert that Mr. Lubin's knowledge of accounts and

transactions, which will be obtained through deposition, is identical to that of Mr. Gushlak's. No

litigant is bound by only one witness's recollection of events. Nor, given that Mr. Gushlak is a

convicted cheat, should this Court determine that it is unduly burdensome to seek the testimony

of others, which evidence may challenge Mr. Gushlak's recollection. Finally, there is no factual

basis to assert that Mr. Gushlak either has, or will, produce documents duplicative of what has

been produced by Mr. Gushlak, particularly since Mr. Gushlak has not produced any documents.

**Objection**: "Mrs. Gushlak should obtain the information from the website maintained by

the SEC" (Hyland Decl. ¶11); the subpoena requires Mr. Lubin "to produce extraordinary

amounts of public information" (Hyland Decl. ¶19).

17

The subpoena does not require Mr. Lubin to do internet searches for documents. He is required solely to produce the responsive materials in his possession, custody or control.

We are, however, very interested to learn that that there are "masses" of such material. As described in the opening documents, we know only of two public companies with which Mr. Lubin and Mr. Gushlak were involved and they are described in the Application. Given the reference to the masses of materials relating to public companies that Mr. Lubin claims would be responsive to the subpoena, clearly there are many transactions of which we are unaware – exactly what the discovery is intended to determine.

**Objection:** The subpoena seeks document that are "confidential and privileged" (Hyland Decl. ¶19); disclosure of the documents would "violate the attorney client privilege" (Hyland Decl. ¶20); ". . . the subpoena would improperly require disclosure of privileged and other protected material regarding Mr. Lubin" (Hyland Decl. ¶'s 23-25).

That a subpoena may by its terms call for documents that are privileged is not a remarkable development and is certainly not a basis to quash a subpoena. Under Fed. R. Civ. P. Rule 45(d)(2), a witness who contends that a privilege prohibits production of materials called for in a subpoena (or allows nonproduction) is required to assert the privilege with respect to each such document and to provide a log. *See also* Local Civil Rule 26.2, addressing assertions of privilege. Certainly, a blanket assertion that the subpoena "may" call for privileged materials is entirely inadequate.

In that regard, the assertion of a privilege here will require careful analysis. First, in connection with one of the two public company matters, namely, Helix Wind, Mr. Lubin was counsel to the party being sued by Mr. Gushlak in connection with the issuance of stock. *See* D. Gushlak Memo at 13; Reich Decl. (4/4/11) Exhibit "Z". It is difficult to imagine how a privilege

18

could possibly obtain. Second, to the extent Mr. Lubin was counsel to one or more Gushlak entities, he may very well have been counsel to one or more entities owned at the time by Mrs. Gushlak and *not* by Mr. Gushlak. Thus, a blanket assertion of privilege would be particularly ill-suited to these facts.

Finally, as we informed Mr. Lubin in our letter requesting that he voluntarily provide this information, the movement of marital assets through his escrow account to parts unknown is not a protected attorney client communication or work product. As has been noted, "grand as the privilege stands in our legal lexicon, it is nonetheless narrowly defined by both scholars and the courts". *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 189 (1990); *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (the privilege is narrowly construed and "appl[ies] only where necessary to achieve its purpose") (*citing Fisher v. United States*, 425 U.S. 391 (1976)); *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)(the privilege is often "[n]arrowly defined, riddled with exceptions, and subject to continuing criticism").

The attorney-client privilege does not give broad, unfettered latitude to every communication with a lawyer, but is to be narrowly construed to meet this narrowest of missions. *Fisher v. United States*, 425 U.S. at 403: ". . . since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose"; *see also In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) (*quoting* 8 *Wigmore* §2292 at 70 for the proposition that the privilege ought to be "strictly confined within the narrowest possible limits consistent with the logic of its principle"); *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997).

Unless a document reflects either a communication seeking advice or an attorney providing advice, the privilege will not stand. Here, at best, facts, information, and business

19

records, many of which were prepared as a part of or required for business transactions, are likely devoid of any confidential communication and thus are not protected by the attorney-client privilege.

For these reasons, a blanket assertion of privilege, certainly here, cannot be a basis either to deny the application to serve the subpoena or a request to quash it.

**Objection:** Repeated reference is also made to the documents being "confidential". (Hyland Decl. ¶'s 18, 24). Here again, while the parties can agree, or a court can certainly impose measures intended to protect "confidential" information (whatever that could be here), no case is cited that holds that a subpoena which by its terms sweeps in "confidential matter" is an independent basis to quash that subpoena. Should Mr. Lubin actually articulate a specific concern, it could be addressed either by agreement of counsel or the Court.

More to the point, it is very difficult to imagine what dealings there would be between Mr. Lubin and Mr. Gushlak that would be "confidential" such that a court would wish to protect them. While we have little doubt that Mr. Gushlak wants to keep his financial dealings "confidential", particularly from his wife who is seeking her share of marital assets, that is not a right to confidentiality that this Court is likely to wish to protect.

**Objection.** The subpoena "does not indicate the place and time for the proposed deposition" and therefore is facially invalid (Hyland Decl. ¶21).

The subpoena has not yet been served. Without knowing the time of consideration and decision of the Application, there was little point to identifying a time, place or date for a deposition. We can state that the place will be in the City of New York at a time and date that will be convenient within the limits allowed by the Court should it grant the Application.

20

## POINT TWO

### A SUBPOENA REQUIRING PRODUCTION OF DOCUMENTS
### BY WARDEN TERRELL SHOULD ISSUE

Finally, Mrs. Gushlak asks to serve a subpoena on Duke Terrell, Warden of the

Metropolitan Detention Center, a facility operated by the Bureau of Prisons where Mr. Gushlak

has been housed since he was remanded on November 18, 2010. The subpoena seeks "e-mails

that Mr. Gushlak sent or received, including attachment to such e-mails; recordings of telephone

conversations in which Mr. Gushlak participated; and the log of Mr. Gushlak's telephone calls".

*See* Proposed Subpoena to Warden Duke Terrell, annexed to Reich Decl. (4/4/11) as Exhibit

"DD".

The Bureau of Prisons (on his behalf) asserts two objections to the production of these

materials: that the Bureau of Prisons is prohibited from producing the material without either

first complying with the provisions of the Federal Privacy Act ("FPA") or being ordered to make

the production (in which case there is a statutory exception to most of the FPA provisions), and

second, as a federal agency, the Bureau of Prisons is immune to a subpoena under 28 U.S.C.

§1782. We address each in turn.

### A. The Privacy Act is No Bar to Compliance with a Court Ordered Subpoena

The Privacy Act need detain us only briefly. As the Bureau of Prisons concedes, the

provisions of the Act apply solely to voluntary production. Terrell Memo at 6. If this Court

were to **order** the Bureau of Prisons to comply with the subpoena, the FPA restrictions would

not obtain. *Id.*

That concession is made, as it must, based upon both the statutory exception to the FPA

set forth in 5 U.S.C. §552a(b)(11), as well as on the authority of Judge Wexler's decision in

*Moore v. U.S. Postal Serv.*, 609 F. Supp. 681, 1985 U.S. Dist. LEXIS 19885 (E.D.N.Y. 1985).

21

Title 5 U.S.C. §552a(b)(11) provides a broad exception to the nondisclosure provisions of the FPA when the disclosure is made "pursuant to the order of a court of competent jurisdiction". In light of that provision, the *Moore* case, decided by Judge Wexler, determined that a subpoena for records "SO ORDERED" by a New York judge freed the government agency from the FPA restrictions. More generally, *Moore* held that a court ordered subpoena specifically fell within the exemptions of §552a(b)(11). 1985 U.S. Dist. LEXIS 19885 at *2.

One constraint on the Bureau of Prisons, as Judge Wexler recognized in *Moore*, is that under 5 U.S.C. §552a(e)(8), the agency must "make reasonable efforts to serve notice on an individual when any record of such individual is made available to any person under compulsory legal process when such process becomes a matter of public record". Given that the government already possesses the e-mail addresses of those persons with whom Mr. Gushlak corresponds, actual notice to them is easily accomplished. As to notice of the telephone participants, those names, too, are available, since, as Bureau of Prisons Special Investigative Services Technician Walter Obando details in his declaration (at ¶14), an inmate is required to identify those persons to whom he wishes to place calls. And, of course, that provides the Bureau of Prisons with a way to contact each such person.

If the Bureau of Prisons considers itself obliged to make that disclosure, then it should do so. However, as *Moore* and other courts have made clear, nothing requires that the notice be provided **in advance of the production**. *See, e.g., Mangino v. Dep't of the Army*, 1994 U.S. Dist. LEXIS 12313, 33-34 (D. Kan. Aug. 24, 1994) (5 U.S.C. § 552a(e)(8) does not speak of advance notice of release, but simply requires an agency to notify an individual of the fact that his records are being or **have been released**) (emphasis added).

Certainly, the Bureau of Prisons could have been notifying persons whose e-mail addresses it possesses that the matter was afoot as early as May 12, 2011, when it received the proposed subpoena and the Application.[12] The Bureau of Prisons' notice obligation should not delay the production.

### 1. *Are There Any Residual Privacy Concerns?*

We address now whether there may be any residual privacy concerns, even absent the FPA. We assert there are none.[13]

#### a. Recorded Telephone Conversations

A convicted defendant serving a sentence in federal custody has no reasonable or objective right of privacy in his telephone conversations. Indeed, the cases are uniform that neither an inmate nor a person who knowingly receives a call from the inmate has a reasonable expectation of privacy in telephone calls between them. *United States v. Willoughby*, 860 F.2d 15, 21-22 (2d Cir. 1988); *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000); *United States v. Correa*, 220 F. Supp. 2d 61, 63 n.2 (D. Mass. 2002); *United States v. Peoples*, 71 F. Supp.2d 967, 977 n.14 (W.D. Mo. 1999); *United States v. Harrison*, 986 F. Supp. 280, 281 (M.D. Pa. 1997); *United States v. Cheely*, 814 F. Supp. 1430, 1439 (D. Alaska 1992); *United States v. Harrison*, 986 F. Supp 280, 283 (M.D. Pa. 1997) (". . . the primary question, then, is whether society would consider it reasonable for [a person speaking to a prisoner] to have an expectation of privacy in telephone calls from a prison. We conclude that it would not"). Given that every call from an inmate is pre-announced as coming from a person at a correctional

---

[12] In his declaration in opposition to the Application, Mr. Obando asserts that the Bureau of Prisons retains e-mails and recorded telephone conversations for 180 days. Decl. ¶18. He is silent as to whether, having been put on notice by receipt of the Application by service of the papers on May 12, 2011, he took steps to prevent the destruction of the documents subject to the proposed subpoena. It is particularly relevant because May 12, 2011, was within 180 days of Mr. Gushlak's first day of incarceration, which began November 18, 2010.

[13] Though we would of course be prepared to enter into an agreement not to use any discovery so obtained for any purpose other than the litigation.

facility, it is not plausible, or possible, that the persons with whom Mr. Gushlak has engaged in conversations were not aware that Mr. Gushlak was an inmate. Certainly, Miss Furman, Mr. Lubin, Swiss bankers, the Trustee in Liechtenstein and others all knew him to be in prison. Certainly, anyone acting in his stead because he was himself unable to transact business knew him to be in prison. Thus, none has any objective right of privacy in those conversations.

Moreover, by initiating conversations, Mr. Gushlak knew that the conversations would be recorded and subject to disclosure, yet he proceeded to place the calls, anyway. As such, he consented to the taping. *See United States v. Willoughby, supra*, 860 F.2d at 20 (prisoner's signature just below a line on a form that states "I understand that telephone calls I make from institution telephones may be monitored and recorded" is an express consent to the taping of calls); Obando Decl. ¶17. And under New York law, Mr. Gushlak's consent to the taping defeats any claim by a third party that he did not consent. *United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir. 1973); *see also United States v. Aristizabal*, 1993 U.S. Dist. LEXIS 9165 at *20 (E.D.N.Y. June 21, 1993).

Finally, the Bureau of Prisons itself has demonstrated that it has little regard for any privacy rights inmates and third parties may enjoy. That is amply illustrated by the seemingly inescapable case against former Managing Director of the International Monetary Fund Dominque Strauss-Kahn. Can there be a person living today who does not know the details of the recorded conversations had between the complaining witness in *People v. Strauss-Kahn* and a man incarcerated in a federal immigration detention facility? Has the Bureau of Prisons taken into consideration that the complaining witness never agreed to have the content of her conversation published in, *inter alia*, both the *New York Times*[14] and the *Wall Street Journal*

---

[14] "Strauss-Kahn Won't Plead Guilty to Any Charges, His Lawyers Say", *New York Times*, July 7, 2011, at A19, discussing the content of what appear to be multiple recorded telephone conversations.

24

before itself leaking, or allowing the details to be leaked, to the world press?[15]  Clearly, not only

is there no residual right of privacy to be recognized in these recorded conversations, but the

Bureau of Prisons itself obviously holds these recorded conversations as fair game for the public.

As such, a litigant with a demonstrated interest in them should be able to obtain them by Court

order were they are relevant to a pending litigation.

 b.  Retained E-Mail Messages to and From Mr. Gushlak

 As Mr. Obando concedes, no e-mail can be sent by a federal inmate to anyone who has

not in advance agreed to participate in electronic exchanges under pre-set conditions.  Obando

Decl. ¶8.  Attached as Reich Decl. (7/8/11) as Exhibit "GG" is an e-mail sent by the Bureau of

Prisons in an unrelated matter.  (The name of the prisoner and the identification code have been

redacted, but the English text is unaltered.)  It confirms that, in order to send an e-mail to or

receive an e-mail from an inmate, the non-prisoner must know that the Bureau of Prisons will be

reading those e-mails.  That is so because the non-prisoner agrees to engage in that

correspondence in the context of a notice that reads: "By approving electronic correspondence

with federal prisoners, you consent to have the Bureau of Prisons staff monitor the context of all

electronic messages exchanged."  Ex. "GG".

 The Bureau of Prisons in its opposition argues that a meaningful distinction is to be made

between a person consenting to the Bureau of Prisons reading one's e-mails and understanding

that those e-mails may be disclosed in civil litigation.  We disagree.  No meaningful distinction

can be discerned between knowing that the e-mails could be used in a criminal case but drawing

---

[15] "Late last week, prosecutors received a partial transcript of a tape-recorded conversation she'd had with the man incarcerated in a federal immigration detention center, law-enforcement officials say. . . During the call, the man asked her if she was OK. The woman said she stood to make a lot of money from the attack because Mr. Strauss-Kahn was wealthy.  Prosecutors need to further investigate the recorded call, which has not yet been fully transcribed, one law enforcement official said".  "Strauss-Kahn Case Headed to Dismissal", *Wall Street Journal*, July 5, 2011, found at http://online.wsj.com/article/SB10001424052702304760604576425973330277408.html

the line at a civil case. We submit that the question is whether someone who agrees to receive and send e-mails to an incarcerated individual despite knowing that that the Bureau of Prisons will be reading them can possibly have any objective (or indeed, subjective) expectation of privacy. It is not possible that he does.

Additionally, Mr. Gushlak chose, knowingly, to correspond by e-mail using Bureau of Prison equipment and subject to Bureau of Prison monitoring. As with the one-sided consent to the recording of a telephone conversation, no one participating in an e-mail exchange can reasonably expect that the correspondent will not disclose that message to others, willingly or unwillingly.

Moreover, in neither instance is the correspondent – by telephone or by e-mail – intending to correspond with the government agency, nor has the government agency required these third parties to participate in these conversations. Thus, this is a particularly inappropriate instance for the invocation of privacy protections afforded to those who provide information to the federal government.[16]

For these reasons, neither the FPA nor a residual right of privacy bar the production of the materials requested from the warden.

**B. This Court Has the Authority to Issue the Subpoena**

More troubling is the Bureau of Prisons' assertion that this Court lacks subject matter jurisdiction under 28 U.S.C. §1782 to issue a subpoena to a federal agency.

In *Al Fayed v. Cent. Intelligence Agency*, 229 F.3d 272 (D.C. Cir. 2000), a case decided over ten years ago, the D.C. Circuit Court affirmed a district court decision of first impression. Hearing a challenge to a subpoena served on the Central Intelligence Agency for documents

---

[16] Approximately 100 cases were reviewed in search of a court to which application was made for such disclosure of this material in a civil case by a nonparticipant to the conversations. Thus, any fear of "opening the floodgates" by granting this discovery would be unwarranted.

pursuant to a §1782 Application, the district court considered whether the sovereign had waived

immunity for purposes of 28 U.S.C. §1782.  Specifically, it questioned whether the United

States, including its agencies, was a "person" within the meaning of §1782's authorization to

allow discovery of any "person" residing in or found in the district in which the application is

made.  It held that, absent an express waiver of immunity, it had not, and on appeal the circuit

court affirmed the reasoning.

   For at least the following reasons, the *Al Fayed* [17]decision should not persuade this Court

not to exercise its jurisdiction here.

   1.  It is Entirely Inconsistent for Congress to Have Asserted the Goals of §1782
       and Not Have Intended to Include Federal Agencies as Subject to Disclosure.

   The goals asserted by Congress which it sought to accomplish though the adoption of 28

U.S.C. §1782 are "to provid[e] efficient assistance to participants in international litigation and

encourage foreign countries by example to provide similar assistance to our courts." *Intel Corp.*

*v. Advanced Micro Devices, supra*, 542 U.S. at 252.  It would be ironic indeed if the United

States were found to have left to private litigants the task of pursuing these goals but has, without

ever expressing any intent to do so, exempted itself from carrying its load.

   Indeed, it is particularly troubling here, where the disclosures sought were neither created

by nor required by any federal agency.  Instead, the agency is a passive holder of the needed

discovery.  Production would have no impact whatever on the internal thoughts, practices,

procedures, intentions or aims of any federal agency.  Thus, whatever goals are sought to be

---

[17] There is another reason, as well.  Al Fayed may be another example of the adage that hard cases make bad law.
Mohamed Al Fayed is the father of Dodi Fayed, who was killed along with Diana, Princess of Wales, after a high
speed chase in Paris.  The understandably stricken father sought to rummage through the files of the CIA in search
of evidence that there was more to his son's death than appeared.  That the CIA resisted that, and the D.C. Court was
sympathetic to that position, is understandable.  But it has nothing to do with Mrs. Gushlak's effort to obtain
evidence neither required nor created by the government.

accomplished by the withholding of consent to complying with the laws of the United States can hardly outweigh the unseemliness of doing so here.

    2.  Discovery Ordered Pursuant to §1782 is Discovery Under the Federal Rules.

For *Al Fayed* to have any continuing vitality, distinction must be made between discovery ordered under §1782, to which *Al Fayed* holds the federal government to be exempt, and discovery under the Federal Rules, as to which the federal government is not immune.   That is so because subsequent to *Al Fayed*, the D.C. Circuit court decided *Yousuf v. Samantar*, 451 F.3d 248, 254 (D.C. Cir. 2006), in which it held that the "sovereign" was a person for purposes of Fed. R. Civ. P. Rule 45.  But no distinction is warranted.

    Courts around the country consistently refer to the discovery ordered under §1782 as being pursuant to Rule 45 subpoenas and governed by the Federal Rules. *See In re Inversionesy Gasolinera Petroleos Valenzuela*, 2011 U.S. Dist. LEXIS 5201, 17-18 (S.D. Fla. Jan. 19, 2011) (referring to its issuance of a Rule 45 subpoena); *Application of Yukos Hydrocarbons Invs. Ltd.*, 2009 U.S. Dist. LEXIS 121268 (N.D.N.Y. Dec. 30, 2009) (granting §1782 Application but quashing subpoena for failure of Rule 45 provision); *In re Republic of Ecuador*, 2010 U.S. Dist. LEXIS 132045, 25-26 (N.D. Cal. Dec. 1, 2010) (assuming the subpoena to be issued under authority of 1782 is pursuant to Rule 45); *Chevron Corp. v. Stratus Consulting, Inc.*, 2010 U.S. Dist. LEXIS 55049, 10-11 (D. Colo. May 25, 2010) (same); *In re Godfrey*, 2009 U.S. Dist. LEXIS 127279, 22-23 (N.D. Tex. Mar. 24, 2009) (same).  Clearly, while §1782 sets up a vehicle for a foreign litigant to take discovery here, the discovery itself is under the authority of the Federal Rules.

Further undermining the validity of the tenets upon which *Al Fayed* is built is *In re United Co. Rusal, PLC v. Trafigura*, 2011 U.S. Dist. LEXIS 26897 at *10 (D. Conn.  Mar. 16,

2011). There, the party from which discovery was sought in a §1782 proceeding questioned whether the federal court had subject matter jurisdiction to entertain the application.  The court determined that it did, arising under 28 U.S.C. §1331: "an application for discovery in aid of a foreign proceeding made pursuant to 28 U.S.C. § 1782 is a right to discovery that exists solely by operation of federal statute. Because the application arises under federal law, 28 U.S.C. §1331 explicitly vests the court with subject matter jurisdiction to consider the application."

Thus, whether the Court determines that a subpoena issued under §1782 is one that issues under the Federal Rules, as to which the sovereign has waived, or that the Court has authority to issue a subpoena in an action "arising under the laws of the United States" under §1331, we submit that the distinction made in *Al Fayed* is of no moment and this Court has authority to require production of the documents sought from the Warden.

3.  Federal Agencies Previously Failed to Assert a Claim of Sovereign Immunity to §1782 Discovery and Thereby Have Waived Any Right to Do So.

There are, as noted in *Al Fayed*, a range of grounds to overcome the presumption of sovereign immunity: "Our conventional reading of 'person' may therefore be disregarded if 'the purpose, the subject matter, the context, the legislative history, [or] the executive interpretation of the statute . . . indicate an intent, by the use of the term, to bring state or nation within the scope of the law'". *Vt. Agency of Nat. Resources v. U. S. ex rel. Stevens,* 120 S. Ct. 1858, 1867 (2000).

With the exception of the *Al Fayed* case, the government has signaled its interpretation of the statute, and its intent, by declining to assert its belatedly-discovered sovereign immunity from process under §1782.  In, for example, *In re Kevork*, 788 F.2d 566, 568 (9th Cir. 1986), the federal government claimed no immunity and the issuance of a subpoena to three FBI agents under § 1782 at the behest of the Ontario Supreme Court was affirmed.  Indeed, the government

29

seems not to be able to come up with a consistent position on such disclosure itself. *See Fazzini v. U.S. Dep't of Justice*, 1990 U.S. Dist. LEXIS 17225 at * 6-7 (N.D. Ill. Dec. 11, 1990) (government failed to justify withholding of recordings of plaintiff's prison conversations in civil action).

By its failure in the past to assert its argument of sovereign immunity, the government has waived it.

## CONCLUSION

This Application meets both the statutory elements and each of the discretionary factors of §1782. For these reasons, Mrs. Gushlak respectfully requests that this Court grant her Application for an order granting leave to serve Mr. Lubin, Miss Furman and Warden Terrell with the respective subpoenas attached to the Reich Decl. (4/4/11) as Exhibits "BB" through "DD", modified to reflect a date, time and place for each of the depositions.

July 8, 2011
New York, N.Y.

Respectfully submitted,

GERALD B. LEFCOURT, P.C.

By _____
Sheryl E. Reich (SER 7943)

148 East 78th Street
New York, N.Y. 10075
(212) 737-0400 (tel)
(212) 988-6192 (fax)
Reich@Lefcourtlaw.com
*Attorneys for Debbie Gushlak*