UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

*In re*

APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782
FOR THE TAKING OF DISCOVERY
FOR USE IN A FOREIGN PROCEEDING

-----------------------------------------------------X

11 Misc. 218 (NGG)


**MEMORANDUM OF LAW OF APPLICANT DEBBIE GUSHLAK IN OPPOSITION
TO THE MOTIONS OF NON-PUTATIVE WITNESS RYAN GUSHLAK
(i) TO INTERVENE IN THE APPLICATION TO TAKE DISCOVERY IN THE
EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1782;
(ii) TO QUASH OR TO MODIFY THE PROPOSED *SUBPOENA DUCES TECUM* TO
METROPOLITAN DETENTION CENTER WARDEN DUKE TERRELL; AND (iii)
TO FILE HIS MOTION PAPERS UNDER  SEAL**


July 18, 2011

Gerald B. Lefcourt, P.C.
Gerald B. Lefcourt
Sheryl E. Reich
148 East 78th Street
New York, N.Y. 10075
Tel: (212) 737-0400
Fax: (212) 988-6192
lefcourt@lefcourtlaw.com

*Attorneys for Debbie Gushlak*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

Introduction ...................................................................................................................2

Background ....................................................................................................................2

Argument .......................................................................................................................6

POINT ONE

RYAN GUSHLAK HAS NOT DEMONSTRATED ANY BASIS UPON WHICH HE IS
ENTITLED TO INTERVENE TO OPPOSE SERVICE OF THE SUBPOENAS ........................6

POINT TWO

RYAN GUSHLAK HAS FAILED TO DEMONSTRATE THAT HE IS ENTITLED TO
INTERVENE TO QUASH THE SUBPOENA TO THE WARDEN ..........................................11

Recorded Telephone Conversations ................................................................................11

E-Mail Correspondence ..................................................................................................12

POINT THREE

NOTWITHSTANDING THE LACK OF MERIT OF THE APPLICATION, A PROPOSAL
ADDRESSING THE REQUEST TO AVOID THE PROUCTION OF IRRELEVANT
COMMUNICATIONS .......................................................................................................14

The E-Mails ...................................................................................................................14

The Recorded Telephone Conversations ..........................................................................15

POINT FOUR

NEITHER RYAN GUSHLAK NOR ANY OF THE PUTATIVE WITNESSES HAS
DEMONSTRATED ANY BASIS FOR SEALING ANY PLEADINGS IN THIS MATTER ....15

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Angelo Holding Corp. v. United States,
321 F. App'x 28 (2d Cir. 2009) ........................................................................7

In re Application of Asher B. Edelman,
295 F.3d 171 (2d Cir. 2002)...........................................................................8

In re Application of Bank of Cyprus Public Co. Ltd.,
2011 U.S. Dist. LEXIS 6082 (S.D.N.Y. Jan. 21, 2011)..................................8

Commercial Union Ins. Co. v. Lines,
239 F. Supp.2d 351 (S.D.N.Y. 2002) ...........................................................18

Euromepa, S.A. v. Esmerian, Inc.,
51 F.3d 1095 (2d. Cir. 1995)..................................................................10, 16

Euromepa, S.A. v. R. Esmerian, Inc.,
154 F.3d 24 (2d Cir. 1998) ............................................................................9

Gambale v. Deutsche Bank,
377 F.3d 133 (2d Cir. 2004)..........................................................................17

General Media, Inc. v. Shooker,
U.S. Dist. LEXIS 10880 (S.D.N.Y. July 14, 1998) ......................................18

Hartford Courant Co. v. Pellegrino,
380 F.3d 83 (2d Cir. 2004)............................................................................17

Intel Corp. v. Advanced Micro Devices,
542 U.S. 241 (2004)........................................................................................8

Kiraly v. F.B.I.,
728 F.2d 273 (6th Cir. 1984) ..........................................................................7

Lugosch v. Pyramid Co. of Onondaga,
435 F.3d 110 (2d Cir. 2006)..........................................................................18

Malev Hungarian Airlines v. United Technologies International Inc.,
964 F.2d 97 (2d Cir. 1992)........................................................................9, 10

In re New York Times Co.,
828 F.2d 110 (2d Cir. 1987)..........................................................................17

Nixon v. Warner Comm'ns, Inc.,
435 U.S. 589 (1978)......................................................................................................17

United States v. Allen,
235 F.3d 482 (10th Cir. 2000) .......................................................................................7

United States v. Amodeo,
71 F.3d 1044 (2d Cir. 1995)....................................................................................17, 18

United States v. Aristizabal,
1993 U.S. Dist. LEXIS 9165 (E.D.N.Y. June 21, 1993) ..............................................12

United States v. Bonanno,
487 F.2d 654 (2d Cir. 1973)..........................................................................................12

United States v. Cheely,
814 F. Supp. 1430 (D. Alaska 1992) .............................................................................11

United States v. Correa,
220 F. Supp. 2d 61 (D. Mass. 2002) .............................................................................11

United States v. Footman,
215 F.3d 145 (1st Cir. 2000) .........................................................................................11

United States v. Harrison,
986 F. Supp. 280 (M.D. Pa. 1997) ................................................................................11

United States v. Peoples,
71 F. Supp. 2d 967 (W.D. Mo. 1999) ...........................................................................11

United States v. Pitney Bowes, Inc.,
25 F.3d 66 (1994)............................................................................................................6

United States v. Willoughby,
860 F.2d 15 (2d Cir. 1988).......................................................................................11, 12

Video Software Dealers Assoc. v. Orion Pictures, Corp.,
21 F.3d 24 (2d Cir. 1974) ..............................................................................................18

Wash. Electric Cooperative , Inc. v. Mass. Municipal Wholesale Electric Co.,
922 F.2d 92 (2d Cir. 1990)..............................................................................................7

**STATUTES & RULES**

28 U.S.C. §1782 ............................................................................................... 1, 8, 10, 16

28 U.S.C. §455(a) .......................................................................................................... 15

Fed.R.Civ.P. Rule 24(a)(2) ............................................................................................. 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

*In re*

                                    11 Misc. 218 (NGG)

APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782
FOR THE TAKING OF DISCOVERY
FOR USE IN A FOREIGN PROCEEDING

-------------------------------------------------------X

### MEMORANDUM OF LAW OF APPLICANT DEBBIE GUSHLAK IN OPPOSITION TO THE MOTIONS OF NON-PUTATIVE WITNESS RYAN GUSHLAK (i) TO INTERVENE IN THE APPLICATION TO TAKE DISCOVERY IN THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1782; (ii) TO QUASH OR TO MODIFY THE PROPOSED *SUBPOENA DUCES TECUM* TO METROPOLITAN DETENTION CENTER WARDEN DUKE TERRELL; AND (iii) TO FILE HIS MOTION PAPERS UNDER SEAL

This Memorandum is submitted by Applicant Debbie Gushlak in Opposition to the

Motions of Non-Putative Witness Ryan Gushlak (i) to intervene in the pending Application of

Mrs. Gushlak to take discovery in the Eastern District of New York pursuant to 28 U.S.C. §1782;

(ii) to quash the proposed subpoena to Metropolitan Detention Center Warden Duke Terrell or to

modify it in order to prohibit production of e-mails and telephone conversations in which Ryan

Gushlak is a participant; and (iii) to file his moving papers under seal.  For the reasons stated

below, none of the relief requested by Ryan Gushlak should be granted.  However, as previously

discussed and as more fully set out below, Mrs. Gushlak is prepared to narrow the subpoena to

address the emotional concerns of Ryan Gushlak.[1]  She wishes to cause no further anxiety to her

deeply troubled son.

---

[1] In a letter to this Court dated July 12, 2011[Dkt. #33], Mrs. Gushlak outlined the proposal for narrowing the production of e-mails that had already been discussed with the Bureau of Prisons.

**Introduction**

It is by now clear what the strategy is of Myron Gushlak, the plaintiff in the foreign proceeding against Mrs. Gushlak for which this discovery is sought: to distract this Court from the simple questions presented by Mrs. Gushlak's Application for discovery and instead have this Court conclude that Debbie Gushlak is a bad person and therefore unworthy of being given the opportunity to take the discovery that by statute passed by Congress and duly enacted into law she clearly should get.  None of the several sets of opposition papers submitted by the Myron Gushlak's proxies – Yelena Furman, David Lubin and now Ryan Gushlak – has cited any controlling law that would either warrant or, indeed, allow this Court to deny the Application on the grounds cited by them.  Each of the barriers that the Myron Gushlak stand-ins have dropped on the road to disclosure, including those identified by Ryan Gushlak, have been rejected by prior Second Circuit cases as a basis to deny an application.

**Background**

While in the moving papers Ryan Gushlak repeatedly asserts that he has had no involvement whatever in any of the marital property of the parties (*e.g.*, R. Gushlak Memo at 1), that is simply not so.  Quite aside from the fact that Ryan Gushlak, a twenty year old college student, has no independent means to support his extraordinarily expensive lifestyle,[2] there is every reason to believe that communications between Ryan and Myron Gushlak while Myron Gushlak has been in jail would contain the very evidence Mrs. Gushlak is seeking – where the assets are hidden and how Myron Gushlak directs their distribution.

We know that Myron Gushlak has been funneling money to Ryan Gushlak, whom Myron Gushlak is using as a shill to maintain his own control of the Ritz Carlton condo.  So, for

---

[2]  For example, Ryan Gushlak has exclusive use of the couple's condominium at the Ritz Carlton Hotel in Cayman ("Ritz Carlton condo"), to which he travels by Myron Gushlak's private jet.

example, at a time when Myron Gushlak was already in federal custody and liable for a $25 million fine, and he claimed to be so impecunious that he could neither pay the forfeiture due to the government nor make his mortgage or insurance payments on the marital home, Myron Gushlak managed to eke out the funds for a $50,000 sports car for Ryan for Christmas 2010, a car, that was wrecked the very same day it was acquired, in an accident that killed Ryan's 19 year old fellow college student.[3] Communications that reveal the source or sources of those funds and the means used to free them from wherever they were buried are entirely relevant to the proper inquiry being sought here.

We also know that Myron Gushlak is putting tremendous pressure on the Crossroads Trust trustee to keep the Ritz Carlton condo for the exclusive use of Ryan Gushlak, a full time student in Indiana who calls New York his permanent residence.  That is being done because, as Myron Gushlak believes, when he is released from prison *in one year,*[4] he will live in the Ritz Carlton condo and drive around the island in his illegally imported Bentley.[5] Exposure of this scheme is relevant to the allocation of marital property as well showing the Crossroads Trust to be a sham that is controlled by Myron Gushlak, not a nominal trustee.

Thus, it is simply not so that communications between Myron Gushlak and Ryan Gushlak are not likely to contain relevant information as to which disclosure is proper and has already been allowed against Myron Gushlak.

---

[3] Ryan's classmate, reportedly driving in excess of 100 miles per hour and with Ryan in the passenger seat, was killed when he lost control of the car.  *See* "Accident leaves one dead, one injured", *Noblesville [Indiana] Times*, December 30, 2010, at http://www.thenoblesvilletimes.com/main.asp?SectionID=1&SubSectionID=1&ArticleID=14957.

[4] We are not privy to the calculation that converts a six year sentence imposed by this Court, plus a New York State sentence of six to nine years, into one year in jail.  However, Mr. Gushlak's attorneys in Cayman have told that to the Cayman Immigration authorities, who have provisionally annulled the grant of permanent resident status enjoyed by Myron Gushlak.

[5] That dream may be interrupted.  In a hearing held July 15, 2011, the Cayman Court ordered the Bentley sold to pay the outstanding insurance bills on the couple's marital home.

As to the allegations that are intended to reflect poorly on Mrs. Gushlak's parenting skills, again, aimed at showing she is just a bad person, we are entirely loathe to enter into Myron Gushlak's game.  Neither Myron Gushlak's nor Debbie Gushlak's parenting skills are on trial – not here, not in Cayman, not in Liechtenstein.  Yet it is not until page nine of his 16 page memorandum of law that Ryan Gushlak takes a break from his rant against his mother to address the facts and law attendant to the motion he is making.  In another context we would dismiss the claims as coming from an out of control young person acting out against his mother, and seeking to do so as publicly as possible.  But the exploitation of Ryan Gushlak's fragile state by Myron Gushlak, a person well known to this Court as a ruthless user of anyone and everyone,[6] must be identified for what it is.  The Ryan Gushlak motion is about protecting Myron Gushlak, not Ryan Gushlak.

Given that, if we do not put forward the facts then, based on prior pleadings, we know that there will be an accusation that we have "conceded" them.  For that reason, and not because we believe they are relevant in the least to this matter, the recitation of events is made by a young man who so clearly seeks to rationalize his actions and to obtain the approval of this Court for his misconduct cannot stand.

So, here are the facts concerning what occurred in Florida: Mrs. Gushlak and her friend Jeffrey Sabo complained to American Express about unexplained charges of about $200,000.

---

[6] The trail of Myron Gushlak's carnage is long and scattered with many victims.  The latest involves Markus Frick, a German investment analyst-commentator, who was either tricked or corrupted by Myron Gushlak into an insider trading scheme that reportedly defrauded some 20,000 investors: "TV-Stockmarket Guru Gets Off with Probation" (Yahoo babelfish trans.), *Der Spiegel on line*, http://www.spiegel.de/wirtschaft/0,1518,756937,00.html.  At his sentencing in April 2011, Frick blamed Myron Gushlak and an associate, blame that the sentencing judge appears to believe was warranted.  *See* "Market Manipulation: Exchange Advisor Mark Frick receives suspended sentence", *Economics Newspaper on line*, http://economicsnewspaper.com/policy/german/market-manipulation-exchange-advisor-mark-frick-receives-suspended-sentence-2-14060.html.  (English translation poor but original German version unavailable.)

4

The charges were largely for weapons, ammunition, gold coins, hookers and music, none of which either Mr. Sabo or Mrs. Gushlak had ordered or received.

American Express initially removed the disputed charges and filed a police complaint in Florida.  However, the charges were soon reinstated when "Jeffrey Sabo" called to confirm them.  It was ultimately discovered that the charges, along with the fraudulent approval thereof, were made by Ryan Gushlak with no authorization to do so.  American Express continued to press the police investigation until the credit card charges were paid by Myron Gushlak, who did so in order to have Ryan Gushlak avoid the criminal prosecution.

With due respect, none of us is in a position to pass on the wisdom of a parent who determines that this time, an out of control child has simply gone too far.  Mrs. Gushlak declined entreaties either to drop the complaint to American Express, which would have required Mr. Sabo and Mrs. Gushlak to pay the bills, or to split the cost with Myron Gushlak.  Ryan Gushlak's suicide gesture, horrible as it was, came a day after Ryan was questioned by Florida police and appears to have been staged in an effort to persuade his mother to pay the bill.[7]  In the end, the criminal charges were dropped because American Express withdrew its complaint after the bill was paid, by Myron Gushlak.

These events are both entirely irrelevant to this proceeding and do not make Mrs. Gushlak out to be anything other than a mother at the end of her rope and Myron Gushlak a grasping stepfather trying to use these events to his advantage.  Mrs. Gushlak has not inserted the psychological weaknesses of her son into this proceeding, Myron Gushlak has.

Nor can we understand the relevance to any issue in this proceeding that the highly edited excerpts of a long telephone call between mother and son might have here.  First of all, the

---

[7] Contrary to the assertions made, which Ryan Gushlak may or may not actually believe, Mrs. Gushlak made every effort to contact her son in the hospital.  However, he left instructions that he did not wish to speak to her and, because he was already an adult, those instructions were honored.

premise of providing the information -- to show that, despite Ryan Gushlak's efforts to stay neutral, he was being pressured to take her side – is dubious.  One has to question the veracity of Ryan Gushlak's claim that he was desperate to stay neutral when at the same time ***he was recording all his calls with his mother and turning the tapes over to dad.***

In the end, of course, this divorce action has, like so many such cases, both revealed the schisms of a troubled family and so clearly exacerbated them.  It would appear that all parties could certainly, with hindsight, have approached it better.  But that is beyond the issues before this Court.  And while, as a matter of fact, we have no doubt if the Court were to hold a hearing that our version of events would be deemed accurate, resolution of these sharply different versions of events is simply not before the Court.

## Argument

### POINT ONE

### RYAN GUSHLAK HAS NOT DEMONSTRATED ANY BASIS UPON WHICH HE IS ENTITLED TO INTERVENE TO OPPOSE SERVICE OF THE SUBPOENAS

Ryan Gushlak's seeks to intervene generally in this proceeding in order to argue in opposition to the grant of the Application to allow service of the subpoenas on the remaining three witnesses.  He has not demonstrated any legal basis for being allowed to do so.

Under applicable law, ". . .intervention as of right under Rule 24(a)(2) is granted when an applicant (1) files a timely motion. (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) has an interest not adequately represented by the other parties". *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (1994).

6

The cases provide that ". . .in order for an 'interest' to be cognizable under Rule 24, it must be 'direct, substantial, and legally protectable'". *Angelo Holding Corp. v. United States*, 321 F. App'x 28, 30 (2d Cir. 2009) (*quoting Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).  Ryan Gushlak claims that his interest is his privacy and mental health (R. Gushlak Memo at 12) and that no other party to the action can assert those interests, which are personal to him (*citing United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (the "right of privacy is a persona right. . . that cannot be vicariously asserted"); *Kiraly v. F.B.I.*, 728 F.2d 273, 280-81 (6th Cir. 1984) ("Privacy rights are personal and may not be asserted by third parties").

But this quite misconceives the issues being addressed.  The question of whether to allow the subpoena to issue to the putative witnesses – Miss Furman, Mr. Lubin and the Warden – is an entirely different question from whether, once served, one or more of the subpoenas is subject to modification.

All three witnesses, and in particular, the Warden, have already asserted arguments as to why the subpoenas should not issue.  Those arguments, including the privacy interests of the persons who participated in the conversations that are in the possession of the Warden, have been made and Ryan Gushlak adds nothing.

Thus, while Ryan Gushlak may have some interest in the extent of production to be made with respect to telephone conversations and e-mails, he has no cognizable interest in the grant of the Application itself.  Moreover, he utterly fails, as in particular, Miss Furman has failed and Mr. Lubin has failed, to meet the burdens imposed on putative witnesses opposing an Application.

7

As detailed at greater lengthy in prior papers, we briefly summarize the legal standards below.

Title 28 U.S.C. §1782 authorizes a court "to order a person [who resides or is found in the District] to give his testimony or . . . to produce a document . . . for use in a proceeding in a foreign or international tribunal". The statute is intended to "provid[e] efficient assistance to participants in international litigation and encourage foreign countries by example to provide similar assistance to our courts". *Intel Corp. v. Advanced Micro Devices,* 542 U.S. 241, 252 (2004); *In re Application of Asher B. Edelman*, 295 F.3d 171, 181 (2d Cir. 2002); *see also In re Application of Bank of Cyprus Public Co. Ltd*., 2011 U.S. Dist. LEXIS 6082 at *5-6 (S.D.N.Y. Jan. 21, 2011).

Consideration of an application under 28 U.S.C. §1782 is a two step procedure. First, the court must determine whether, as a mtter of law, the Applicant has demonstrated that she meets the three statutory criteria for the grant of an application: is the putative witness found in the District in which the Application is made; is the Applicant seeking discovery for use in a foreign proceeding; and is the Applicant an interested person in the foreign proceeding. In connection with all three statutory criteria, no one, including proposed intervenor, has challenged, or could challenge, that Mrs. Gushlak meets these criteria.

Once a Court determines that the statutory criteria are met, the Applicant is presumptively entitled to the discovery. However, a second step allows the Court to determine whether there are factors present that would weigh against the Court exercising its discretion and nevertheless deny the Application.

The exercise of the Court's discretion must be undertaken in considering the purpose of the statute. As the Second Circuit said in *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28

8

(2d Cir. N.Y. 1998), "once a district court is satisfied that statutory requirements are met, the district court's discretion in deciding whether to grant the petition should be guided by the 'twin aims' of the statute, namely 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."

As has been said again and again, a district court is not free to exercise its discretion unfettered in this area.  It is required both to exercise its discretion within the four corners of the statute itself and also to do so consistent with the stated Congressional aims in enacting the statute.  Using those criteria, the decision whether to grant Mrs. Gushlak's Application is not close.

With that in mind, neither Ryan Gushlak, nor Miss Furman or Mr. Lubin, should get any mileage whatever out of arguing to this Court, as each of them has, barriers to the discovery that the Supreme Court and the Second Circuit have consistently and specifically ruled time and again are *not* bases for the denial of an Application and that any denial on such basis is an abuse of discretion that will be reversed.  These are summarized but discussed at greater length in Mrs. Gushlak's Reply Memo of Law to the Opposition of Miss Furman.

- The witnesses argue that the Application should not even be considered (the no case or controversy argument) because Mrs. Gushlak has failed to demonstrate that she has exhausted her discovery rights in Cayman.  That very argument was **rejected** by the Second Circuit in *Malev Hungarian Airlines v. United Technologies Intl. Inc.*, 964 F.2d 97, 100 (2d Cir. 1992): ("we find nothing in the text of the statute which would support an exhaustion requirement.")

9

- The witnesses argue that Mrs. Gushlak has not submitted a request from the Cayman Court asking for this evidence.  That very argument, too, has been squarely ***rejected*** by the Second Circuit in *Malev, supra*, at 101: "to the extent the district court rested its decision to deny discovery to *Malev* because a request for discovery from Pratt & Whitney had not first been made to the Hungarian court in Budapest, we conclude that the district court abused its discretion."

- The witnesses argue that Mrs. Gushlak has not shown that the Cayman Court would accept the evidence.  That very argument, too, has been ***rejected*** by the Second Circuit, which held i*n Euromepa, S.A. v.  Esmerian, Inc.,* 51 F.3d 1095, 1099 - 1100 (2d. Cir. 1995), that ". . .a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.  Absent such proof, a district court's ruling should be informed by section 1782's overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects."

Now comes Ryan Gushlak, who also argues that the Application should not be granted.  But he also has failed to show that he has any different or particular interest in the question of whether this Court should allow the Application to the extent of permitting all the subpoenas to be served.

10

**POINT TWO**

**RYAN GUSHLAK HAS FAILED TO DEMONSTRATE
THAT HE IS ENTITLED TO INTERVENE TO QUASH
THE SUBPOENA TO THE WARDEN**

Neither has Ryan Gushlak demonstrated why he has any right under Rule 24 to move to quash the subpoena to the Warden, either.

Ryan Gushlak premises his singular interest as his personal right of privacy, which, according to him, would be violated if e-mails and telephone calls in which he participated – all of which he claims are irrelevant to the goals of discovery –were produced in response to a subpoena.  But he has not demonstrated that he has any cognizable right of privacy to vindicate.

**Recorded Telephone Conversations**

As we pointed out previously, there is no recognized right of privacy in telephone conversations had between an inmate and a person who knowingly speaks to an inmate.  *United States v. Willoughby*, 860 F.2d 15, 19, 21-22 (2d Cir. 1988) (rejecting that inmates **or persons with whom they communicate by phone** have any residual Fourth Amendment interests to protect); *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000); *United States v. Correa*, 220 F. Supp. 2d 61, 63 n.2 (D. Mass. 2002); *United States v. Peoples*, 71 F. Supp.2d 967, 977 n.14 (W.D. Mo. 1999); *United States v. Harrison*, 986 F. Supp. 280, 281 (M.D. Pa. 1997); *United States v. Cheely*, 814 F. Supp. 1430, 1439 (D. Alaska 1992); *United States v. Harrison*, 986 F. Supp 280, 283 (M.D. Pa. 1997) (". . . the primary question, then, is whether society would consider it reasonable for [a person speaking to a prisoner] to have an expectation of privacy in telephone calls from a prison. We conclude that it would not").  As the Second Circuit determined in *Willoughby*, the mere publication of regulations by the Bureau of Prisons that phone calls with inmates will be recorded is sufficient to defeat any Fourth Amendment

11

claims (860 F.2d at 19).  Nor does Ryan Gushlak even claim, nor could he, that he did not know Myron Gushlak was in jail.  Thus, he has neither an objective nor a subjective expectation of privacy in those conversations that can be protected.

Moreover, as previously pointed out, by initiating conversations, Myron Gushlak knew that the conversations would be recorded and subject to disclosure, yet he proceeded to place the calls, anyway.  As such, he consented to the taping.  *See United States v. Willoughby, supra*, 860 F.2d at 20 (prisoner's signature just below a line on a form that states "I understand that telephone calls I make from institution telephones may be monitored and recorded" is an express consent to the taping of calls); Obando Decl. ¶17.  And under New York law, Mr. Gushlak's consent to the taping defeats any claim by a third party that he did not consent.  *United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir. 1973); *see also United States v. Aristizabal*, 1993 U.S. Dist. LEXIS 9165 at *20 (E.D.N.Y. June 21, 1993).

**E-Mail Correspondence**

In *Willoughby*, the Second Circuit also rejected the argument that Ryan Gushlak seeks to make here with respect to his written communications.  There simply is no cognizable right of privacy in the written communications with an inmate.  860 F.2d at 21.

As Bureau of Prisons' representative Mr. Obando confirms, no e-mail can be sent by a federal inmate to anyone who has not in advance agreed to participate in electronic exchanges under pre-set conditions.  Obando Decl. ¶8.  That is corroborated by Reich Decl. (7/8/11) Exhibit "GG", the form one is required to complete in order to correspond by e-mail with a federal inmate: "By approving electronic correspondence with federal prisoners, you consent to have the Bureau of Prisons staff monitor the content of all electronic messages exchanged."  Thus,

12

whatever Ryan Gushlak's irrational subjective view, the law cannot recognize any objective expectation of privacy in his e-mail communications with a federal prisoner.

Additionally, Myron Gushlak chose, knowingly, to correspond by e-mail using Bureau of Prison equipment and subject to Bureau of Prison monitoring.  As with the one-sided consent to the recording of a telephone conversation, no one participating in an e-mail exchange can reasonably expect that the correspondent will not disclose that message to others, willingly or unwillingly.

Moreover, in neither instance is the correspondent – by telephone or by e-mail – intending to correspond with the government agency, nor has the government agency required these third parties to participate in these conversations.  Thus, this is a particularly inappropriate instance for the invocation of privacy protections afforded to those who voluntarily put information in the hands of federal law enforcement officials.[8]

For these reasons, there is no right to be protected and therefore no basis upon which to allow Ryan Gushlak to intervene or to quash.

All that having been said, however, Ryan Gushlak asserts that if permitted access to e-mails and conversations that have nothing to do with the goals of the discovery but instead address Ryan's medical treatment and his relationship with Myron Gushlak, then Mrs. Gushlak will use that access to harm him emotionally.  Whether any such potential is real or a ruse, we believe this Court need not have to determine, because Mrs. Gushlak does not seek irrelevant e-mails or conversations, and makes the following proposal.

---

[8] Approximately 100 cases were reviewed in search of a court to which application was made for such disclosure of this material in a civil case by a nonparticipant to the conversations.  Thus, any fear of "opening the floodgates" by granting this discovery would be unwarranted.

13

**POINT THREE**

**NOTWITHSTANDING THE LACK OF MERIT OF THE APPLICATION,
A PROPOSAL ADDRESSING THE REQUEST TO
AVOID THE PRODUCTION OF IRRELEVANT COMMUNICATIONS**

Though, for the reasons set forth above, Ryan Gushlak neither has the right to intervene nor does he have any cognizable rights to be vindicated, we are, as we previously announced, already discussing ways to narrow the subpoena.  Mrs. Gushlak has no interest whatever in causing any additional anguish to her troubled son by the threat of access to irrelevant communications between her son and Myron Gushlak.

**The E-Mails**

Even in advance of Ryan Gushlak's motion we have had multiple conversations with the Bureau of Prisons concerning a means of narrowing the subpoena so that only relevant e-mails are produced. A means for addressing Ryan Gushlak's concerns with respect to the e-mails is easily accomplished.  That is so because the Bureau of Prisons has agreed to provide to Myron Gushlak a set of the e-mails he sent and received.  As such, the documents are in his control and he must produce them if responsible to the subpoena unless he moves to quash.  And therefore, to the extent they are responsive to the subpoena that has already been served on him, he is required to produce them.

We have not yet resolved whether they would be printed out or burned onto a DVD.  That is to be worked out between Myron Gushlak and the Bureau of Prisons, since the documents are his to request.  Once in the custody of Myron Gushlak's counsel, we are prepared to provide a list of search terms, consisting of the proper names listed on Schedule "A" to the subpoena issued to Myron Gushlak,[9] as well as an additional list of generic terms, such as "bank",

---

[9]    As previously pointed out, this list tracks the Cayman Court's October 7, 2010, list of presumptive marital assets.

14

"transfer", "agent", "account", etc.  E-mails that do not have these terms would be eliminated and the "responsive" ones would be searched for privilege.  Such procedure should amply protect Ryan with respect to his concerns.

**The Recorded Telephone Conversations**

As to the telephone conversations, the Bureau of Prisons is still considering a request to put the conversations into the control of Myron Gushlak.  If it agrees to do so, then they, too, must be produced by Myron Gushlak to the extent they are responsive to the subpoena.

However, if they are not provided to Myron Gushlak, and instead remain producible by the Bureau of Prisons, we suggest that further discussions be had with the Bureau of Prisons to determine a practical means of limiting the production, should the Court grant the request to serve a subpoena on the Bureau of Prisons.

**POINT FOUR**

**NEITHER RYAN GUSHLAK NOR ANY OF THE
PUTATIVE WITNESSES HAS DEMONSTRATED ANY BASIS FOR SEALING
ANY PLEADINGS IN THIS MATTER**

Ryan Gushlak asks this Court to seal from the public his motion to intervene.  The identical request was made by Miss Furman with respect to both her papers filed in opposition to the Application and her motion to recuse pursuant to 28 U.S.C. §455(a).  Ryan Gushlak's application should be denied, as should those of Miss Furman.

All the requests to file the documents under seal rely on the identical argument, made in a June 27, 2011, letter to the Court from Myron Gushlak's counsel, as follows:

> [T]he instant application requests assistance from this Court in obtaining discovery in connection with a divorce proceeding pending in the Cayman Islands Grand Court.  Various documents

15

> submitted in support of Ms. Gushlak's application are confidential pursuant to the Grand Court's rules, which we understand significantly restrict public disclosures of matrimonial proceedings. In responding to Ms. Gushlak's application, we are including documents that are also similarly confidential as per the Grand Court's rules. As such, we respectfully request that this action be placed under seal given that this proceeding is clearly ancillary to the Cayman Island Grand Court matrimonial action.

Letter from Alan S. Futerfas to Hon. Nicholas G. Garaufis, dated June 27, 2011, at 1-2.

In other words, this Court is asked to seal the entirety of the pleadings in this matter because it relates to a proceeding in the Caymans which, according to counsel, is in a class of cases as to which the public does not enjoy free access. No reference is made to the heavy burden a litigant seeking sealing must meet here and no discussion is had of how any of these parties might meet the standards. Nor is any justification provided as to why a court, in considering an application under 1782, is required to do so using the procedures of the foreign court. The request fails on all bases.

The premise of the request is that certain documents submitted here were also submitted in the Cayman Islands and as such, would not, in that form, be available to the public. Of course, appending a document to a non-public filing does not render the document secret. But more to the point, Ryan Gushlak and Miss Furman are asking this Court to apply the rules of the foreign court to vitiate the rules of this Court. There is no basis for doing so.

One of the tenets that a district court is to act within in deciding a 1782 application is that district courts are not to involve themselves in discerning and interpreting foreign laws. *Euromepa S.A. v. R. Esmerian, Inc., supra,* 51 F.3d at 1100 (2d Cir. 1995) (". . .in the exercise of its discretion, the district court should not attempt to conduct a detailed analysis of foreign law, but should focus primarily on fostering these twin aims"). Yet that is precisely what is being

asked of this Court: determine the nature of nonpublic filings in the Caymans and apply the rules here.

Doing so, of course, would be anathema to our system.  The existence of a common law right of public access to judicial documents is clear.  *See Nixon v. Warner Comm'ns, Inc.,* 435 U.S. 589, 597-98 (1978) (". . . the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Gambale v. Deutsche Bank,* 377 F.3d 133, 140 (2d. Cir. 2004) (public has a common law presumptive right of access to judicial documents).   It is also well established that the public has a "qualified *First Amendment* right to attend judicial proceedings and to access certain judicial documents." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).  Documents may be sealed only if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).  "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.*

The presumption of access is based on the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice. . . . Public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions. *United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir. 1995).

A framework for a court to utilize in determining when the public has a right of access to particular documents is discussed in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  There, the Second Circuit drew on the distinction between "judicial documents" and non-judicial documents.  Judicial documents are those "that are used in the performance of Article III functions and are "presumptively available to the public."  *Commercial Union Ins. Co. v. Lines*, 239 F. Supp. 2d 351, 358 (S.D.N.Y. 2002).  Those documents would include documents submitted to a court for the specific purpose of ruling on a matter of substance. Those certainly include the motions, memoranda and the documents submitted to the Court, all sides of which seek to have those used to justify the result he or she wants to obtain here.

Of course, the "weight of this presumption will vary according to the relative importance of that particular judicial document in the adjudication of the litigant's rights." *General Media, Inc. v. Shooker,* U.S. Dist. LEXIS 10880, at *37-38 (S.D.N.Y. July 14, 1998) (*citing United States v. Amodeo, supra,* 71 F.3d at 1049-50. "Once the weight of the presumption of access is ascertained, it is balanced against the competing considerations specific to the case at hand." *Id.* As a result, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" for the request.  *Video Software Dealers Assoc. v. Orion Pictures, Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

None of the movants seeking to seal documents has presented any "extraordinary circumstances" or "compelling need" with respect to any of the pleadings, arguments or exhibits. Yet movants want all documents served to date sealed, including the motion to recuse, solely because divorce proceedings in Cayman do not enjoy free public access.  This general argument cannot carry the heavy burden.

First, there has not even been a preliminary showing that the vast majority of the information, pleadings, letters, legal arguments, recorded conversations, and so on, has even been a part of the Cayman Proceeding.  The snippets of the telephone conversation between Ryan Gushlak and his mother have not been set before the Cayman court, though they have been submitted by the Crossroads Trustee to the Liechtenstein Court.

Second, the Court cannot rely on an assumption that, because divorce proceedings in Cayman are generally not public, that translates to a compelling need to keep the information sealed here, even were any of the information shown to be part of the Cayman proceeding. Certainly, with two exceptions, everything about the Cayman proceeding has been publicized or filed elsewhere, including the various disclosure orders.[10]

The inapplicability of sealing and the inadequacy of the various motions to do so here is best exemplified by the Furman recusal motion.  A recusal motion, and any decision thereunder, would appear to be precisely the sort of document that a court should be entirely loathe to seal. Hiding from the public both the accusations of bias and the reasoning of the Court in disposing of the motion are squarely in that class of filings in which the public has the most interest. Moreover, there is not even an attempt to link the motion to any actions to the Cayman Proceeding.  That there is an effort to seal that document is highly reflective of what this entire sealing effort is about – protecting Myron Gushlak.

---

[10]   The first, the preliminary disclosure of Myron Gushlak, has been submitted to the Court initially by Miss Furman (First Kennedy Decl. Exhibit 2).  Similarly, the letter of Mr. Gushlak's Cayman counsel to Mrs. Gushlak's Cayman counsel (First Kennedy Decl. Ex. 6) that recites Mrs. Gushlak's clothing expenditures in detail and was included herein solely for prurient value.  One does wonder how it is that these sealed documents came into the possession of Miss Furman, who is not a litigant in the Caymans.  In any event, both can easily be redacted.  Moreover, movant's cannot lard their moving papers with irrelevant nonjudicial documents – either in this proceeding or in Cayman -- and then use that event to justify keeping the public away from the proceedings.

The Court should deny each of the requests to file papers under seal, including the motion made by Ryan Gushlak.

## **CONCLUSION**

For all of the reasons stated above, the motion of Ryan Gushlak should be denied in all respects and the Court should allow the parties to work out the procedure suggested here.

July 18, 2011
New York, N.Y.

Respectfully submitted,

GERALD B. LEFCOURT, P.C.

By _____/s/_____
    Sheryl E. Reich (SER 7943)

148 East 78th Street
New York, N.Y. 10075
(212) 737-0400 (tel)
(212) 988-6192 (fax)
Reich@Lefcourtlaw.com
*Attorneys for Debbie Gushlak*