FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ AUG 17 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782 FOR THE
TAKING OF DISCOVERY FOR USE IN A
FOREIGN PROCEEDING
-----------------------------------------------------------X

MEMORANDUM & ORDER

11-MC-218 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

On April 4, 2011, Petitioner Debbie Gushlak ("Petitioner") petitioned the court for an order granting discovery, under 28 U.S.C. § 1782, in connection with divorce proceedings between Petitioner and Myron Gushlak currently taking place in the Cayman Islands. (Pet. (Docket Entry # 1).) Petitioner seeks discovery from Respondents Myron Gushlak, Yelena Furman ("Furman"), David Lubin ("Lubin"), and Warden Duke Terrell ("Warden Terrell"), the warden of the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (Id.)

On June 23, 2011, the court granted Petitioner's discovery request as to Myron Gushlak, and allowed Petitioner to serve a subpoena on him. (Docket Entry # 15.) Myron Gushlak moves to intervene and to quash Petitioner's subpoena as to Warden Terrell. (Gushlak Mot. (Docket Entry ## 41, 42).) Ryan Gushlak, the son of Petitioner and Myron Gushlak, also moves to intervene and quash the subpoena as to Warden Terrell.[1] Furman, Lubin, and Warden Terrell oppose Petitioner's application. (Lubin Opp'n Decl. (Docket Entry # 21); Terrell Opp'n Mem. (Docket Entry # 24).)[2] In addition, Furman moves the court to recuse itself.[3]

---

[1] Ryan's submissions have not been placed in the public record (i.e., the Electronic Case Filing system ("ECF")), pursuant to his request that they remain sealed.

[2] Furman moves for several of the submissions in the case to be placed under seal, arguing that the presumption of public access to court filings does not apply to divorce proceedings. (Docket Entry # 45.) Consistent with this view, she has not filed her opposition papers in the public record, but has mailed them to the court and to Petitioner. The court will address the sealing motion in a subsequent order.

[3] This motion was also not placed in the public record.

For the reasons stated below, Petitioner's applications as to Furman and Lubin are granted on condition that the proposed subpoenas be modified. Petitioner's application as to Warden Terrell is denied. Furman's motion for recusal and Myron Gushlak's and Ryan Gushlak's motions to intervene and quash are denied as well.

## I. BACKGROUND

Petitioner and Myron Gushlak are currently involved in divorce proceedings in the Grand Court of the Cayman Islands ("Grand Court"). (Pet. at 1.) In November 2010, Myron Gushlak was sentenced by this court to six years in prison upon his conviction for securities fraud. (See Sentencing Tr. at 116, United States v. Gushlak (Docket Entry # 32 of No. 03-CR-833 (NGG)).) Myron Gushlak currently is housed at the MDC. (Obando Decl. (Docket Entry # 25) ¶ 19.)

### A. The Proposed Subpoenas and Myron Gushlak's Alleged Hidden Assets

Petitioner requests that identical subpoenas be served on Furman and Lubin. (Proposed Subpoena (Docket Entry ## 3-2 at 84; 3-3 at 11, 27).) Petitioner seeks "[a]ll documents concerning any monies or assets owned, legally or beneficially, now or ever, controlled by, held for the benefit of, or in any way considered property of, directly or indirectly, Myron or Debbie Gushlak." (Id., Schedule "A," ¶ 1.) Petitioner also seeks "[a]ll documents received from, sent to, relating to, referring to, or concerning" several individuals. (Id. ¶ 2(a).) These individuals include Petitioner herself and Myron Gushlak, their sons Ryan and Eric, Respondents Furman and Lubin themselves, and several named individuals purportedly involved in the disposition of Myron Gushlak's assets. (Id.; see Pet'r Mem. (Docket Entry # 2) at 2-13.) Petitioner also seeks all documents "received from, sent to, relating to, referring to, or concerning" several companies, banks, money managers, trusts, and trustees, also purportedly involved in disposing of Myron Gushlak's assets. (Proposed Subpoena, Schedule "A," ¶ 2(b)-(d); see Pet'r Mem. at 2-13.)

Many of these companies and banks correspond to entities listed by the Grand Court in an October 2010 order, attached to the Petition. (Docket Entry # 3 at 5, Schedules 3 and 4.) The order enjoins Myron Gushlak from disposing of his assets, including accounts at several of the listed banks and "shares, assets and partnership interests" in several of the listed companies, "held by [Myron Gushlak], whether by himself, his servants or agents." (Id. ¶¶ 1(1)(ii)-(iii).) The order also requires Myron Gushlak to identify to the Grand Court all his assets, "whether solely or jointly owned." (Id. ¶ 2.) Petitioner states that the discovery she seeks is intended to aid the Grand Court in uncovering these assets. (Pet'r Mem. at 2.)

Petitioner alleges that Myron Gushlak has failed to comply with the Grand Court's order and has significant undisclosed assets. (Id. at 4-10.) She admits to having only "limited knowledge" of these assets. (Id. at 4.) However, she alleges that they include shares in companies named Helix Wind, Swissinso Holdings, and IAB; money made from selling a portion of those shares; and bank accounts and other assets held by various money managers and trusts. (Id. at 4-10.) Though Petitioner provides bits and pieces of documentary support, her allegation that Myron Gushlak has secreted assets is, on the whole, unsupported.

From Warden Terrell, Petitioner seeks recordings of telephone conversations Myron Gushlak had while housed at the MDC, a log of Myron Gushlak's telephone communications, and copies of all emails Myron Gushlak sent or received. (Docket Entry # 3-3 at 43.)

## B. Yelena Furman's Alleged Connections to the Hidden Assets

Furman is Myron Gushlak's girlfriend. (Furman Decl. ¶ 2.)[4] Petitioner asserts that Furman lives in Brooklyn, New York (Pet'r Mem. at 10), which Furman does not dispute. Petitioner submits a document showing that Furman acted as a consultant to a company called

---

[4] As noted above, Furman's submissions have not been filed on ECF.

3

Bluewater Partners, SA ("Bluewater"), of which Myron Gushlak was the managing director, and that Furman acted in this capacity in the context of Bluewater and Helix Wind signing a confidentiality agreement. (Docket Entry # 3-2 at 53.)[5] Petitioner also submits an application by IAB—a company allegedly formed "at the behest" of Myron Gushlak (Pet'r Mem. at 9)—to open an account with EDGAR, the Securities and Exchange Commission's online database. (Docket Entry # 3-2 at 58.) The application is notarized by Furman. (Id.) Without support, Petitioner alleges that Furman was involved in IAB's acquisition of Helix Wind stock. (Pet'r Mem. at 11.) Petitioner also alleges, without support, that Furman spoke with a Swiss money manager, EH&P, which held some of Myron Gushlak's undisclosed assets. (Id. at 11-12.)

Petitioner's counsel, Sheryl Reich, in a sworn declaration, also asserts a "good faith belief" that:

- On the day this court sentenced Myron Gushlak in his securities fraud case, Furman flew to the Cayman Islands and was seen removing boxes of documents and electronic equipment from the Gushlaks' condominium. (Second Reich Decl. (Docket Entry # 29) ¶ 5(a).) Upon application by Petitioner, the Grand Court issued an order—attached to Ms. Reich's declaration—prohibiting Furman from taking anything further from the condominium. (Id.; Docket Entry # 29-3.)

- After Myron Gushlak was remanded in the criminal case, Furman had frequent telephone conversations with a stock trader who was actively involved in trading shares of Helix Wind, as well as with EH&P. (Second Reich Decl. ¶¶ 5(a)-(b).)

- Furman "acts under guise of a power of attorney which document she asserts gives her full authority to act in all financial matters relating to Myron Gushlak." (Id. ¶ 5(d).)

---

[5] Again, Helix Wind is a company whose shares, Petitioner alleges, constitute a portion of Myron Gushlak's undisclosed assets.

Ms. Reich provides no documentary support for the last two claims.

### C. David Lubin's Alleged Connections to the Hidden Assets

Petitioner alleges that Lubin is an attorney working on Long Island, New York (Pet'r Mem. at 12), which Lubin does not dispute. Petitioner alleges that Lubin has advised Myron Gushlak on several business deals (which Lubin also does not dispute), including deals involving Helix Wind, Swissinso Holdings, and IAB. (Id. at 12-13.) In IAB's application for an EDGAR account, discussed above, the email address david@dlubinassociates.com—which Petitioner contends is Lubin's—is listed as an IAB contact. (Id. at 12; Docket Entry # 3-2 at 58.)

Petitioner also submits a copy of an April 2009 settlement agreement in a New York Supreme Court case involving promissory notes issued to Bluewater—of which, as noted above, Myron Gushlak was managing director—by Clearview Acquisitions ("Clearview"). (Settlement (Docket Entry # 3-2 at 76).) As per this settlement agreement, Clearview agreed to issue 11 million shares of common stock to Bluewater and its assignees, to satisfy the promissory notes. (Id.) According to Petitioner, Clearview merged with Helix Wind at around the time of the settlement. (Pet'r Mem. at 6-7.) The settlement agreement names Lubin as the attorney for Clearview—nominally Bluewater's, and thus Myron Gushlak's, adversary—despite Lubin's ongoing relationship with Myron Gushlak. (See Settlement, Affidavit of Service.)

Finally, Petitioner alleges, without providing documentary support, that in February 2007, Myron Gushlak transferred $5 million into an escrow account, maintained by Lubin, which already held $1 million of Myron Gushlak's money. (Pet'r Mem. at 13.)

## II. DISCUSSION

### A. Applicable Law

28 U.S.C. § 1782(a), in pertinent part, provides as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

To be entitled to foreign discovery under § 1782, the applicant must meet three "statutory" requirements. If those requirements are met, the reviewing court must exercise its discretion as to whether to order discovery, taking into account certain factors.

The statutory requirements are as follows: (1) the person from whom discovery is sought must reside or be "found" in the district, (2) the discovery must be "for use" in a proceeding before a foreign tribunal, and (3) the application must be made by an "interested person." In re Application of Microsoft Corp., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (citing Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)).

If those statutory requirements are met, the court may, but need not, order discovery. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004). In exercising its discretion, the court must consider the following "Intel factors": (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent relief under § 1782; (2) the "receptivity" of the foreign government or tribunal to the assistance of the district court, and, "specifically," whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or policies"; and (3) whether the subpoena is unduly intrusive or burdensome. Id. at 264-65; see also Microsoft, 428 F. Supp. 2d at 192-93.

Moreover, courts must exercise their discretion in light of the twin aims of § 1782: providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts. Microsoft, 428 F. Supp. 2d at 193 (citing Schmitz, 376 F.3d at 84).

In order to be entitled to discovery under § 1782, the applicant is not required to "exhaust" the discovery procedures available in the foreign court. See In re Application of Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997); In re Application of Euromepa S.A., 51 F.3d 1095, 1098 (2d Cir. 1995). Indeed, the applicant need not show that the material in question would even be discoverable in the foreign court. See Intel, 542 U.S. at 261-62; Euromepa, 51 F.3d at 1098. However, the court—as "one factor" to be taken into account in applying its discretion—may consider the foreign discoverability of the material. Euromepa, 51 F.3d at 1098. That is, foreign discoverability may be relevant in the court's application of the second Intel factor: the foreign court's "receptivity" to the material in question.

The Second Circuit has made clear that, in analyzing foreign discoverability, district courts should avoid undertaking "an extensive examination of foreign law" that would likely lead to a "superficial" ruling based on "a battle-by-affidavit of international legal experts." Euromepa, 51 F.3d at 1099. Thus, courts should only find that the requested material would not be discoverable in the foreign proceeding if the *opponent* of the § 1782 application presents "authoritative proof," in the form of "judicial, executive or legislative declarations" from the forum country "that specifically address the use of evidence gathered under foreign procedures." Id. at 1100. Indeed, courts should err on the side of ordering discovery, since foreign courts can easily disregard material they do not wish to consider. See id. at 1101. Though the court in Euromepa was discussing "discoverability" in the foreign tribunal, the same analysis applies to the foreign tribunal's "receptivity" to § 1782 discovery under Intel. See In re Application of OOO Promnefstroy, Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) ("[C]ourts must look for 'authoritative proof' that the foreign jurisdiction would reject the § 1782 assistance.") (citing Euromepa, 51 F.3d at 1100); In re Application of

Gemeinschaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (the Second Circuit "has instructed this Court to consider 'only authoritative proof'" in considering receptivity) (citing Euromepa, 51 F.3d at 1099-1100).

### B. Applications as to Yelena Furman and David Lubin

It is undisputed that the "statutory" requirements of § 1782 are met as to both Furman and Lubin. Neither of them dispute Petitioner's assertions that they reside in the Eastern District of New York, that the requested discovery is sought "for use" in a foreign proceeding, or that Petitioner is an "interested person" in that proceeding.

The discretionary Intel factors weigh in favor of ordering discovery. First, since Furman and Lubin reside in New York, and since any documents in their possession are likely located in New York, they are presumably not within the Grand Court's jurisdictional reach. Furman asserts that she spends "considerable time in Grand Cayman." (Furman Decl. ¶ 2; Second Furman Decl. ¶ 5.) She also states that she has "already made [her]self available to the Grand Court," and that, if the Grand Court orders her to provide discovery, she "will respond to any such order." (Furman Decl. ¶ 3; Second Furman Decl. ¶ 6.) According to Petitioner, Furman only made herself "available" to the Grand Court on one occasion: when, as noted above, the Grand Court issued an order prohibiting her from taking property from the Gushlaks' condominium. (Pet'r Reply Mem. (Docket Entry # 31) at 8-9.) Furman does not deny that it was only in connection with this incident that she appeared before the Grand Court. It is not clear whether this appearance would place Furman—apparently not a resident of the Cayman Islands—within the Grand Court's jurisdictional reach for the purposes of ordering discovery. Thus, the first Intel factor weighs in favor of granting the requested discovery.

8

Second, Respondents have not presented the court with any authoritative proof that the Grand Court would not be receptive to the discovery requested, or that the Cayman Islands have any proof-gathering restrictions or other policies that Petitioner is attempting to circumvent. Furman and Lubin argue that the Grand Court is able to adjudicate Petitioner's discovery requests and that it is therefore the appropriate forum for the instant discovery dispute. (See Furman Opp'n Mem. at 20-23; Furman Sur-Reply Mem. at 14-16; Hyland Decl. ¶ 14.) Furman stresses that the Grand Court has in fact scheduled a discovery conference. (Furman Sur-Reply Mem. at 12.) However, the possibility that the Grand Court will rule on discovery requests similar to the ones at issue here does not weigh against granting Petitioner's application. Again, a § 1782 applicant need not exhaust foreign discovery remedies. See Euromepa, 51 F.3d at 1098. Requiring Petitioner to wait for the outcome of the Grand Court's discovery proceedings would amount to enforcing such an "exhaustion" requirement.[6] Thus, Intel's receptivity factor weighs in favor of ordering discovery. See Euromepa, 51 F.3d at 1101 (rejecting the district court's conclusion that § 1782 discovery would offend French sovereignty where "no authoritative declarations by French judicial, executive or legislative bodies objecting to foreign discovery assistance appear in the record"); compare Schmitz, 376 F.3d at 84 (finding that Germany was unreceptive to § 1782 discovery where the German Ministry of Justice and the Bonn Public Prosecutor specifically requested that the application be denied).[7]

---

[6] Microsoft and Promnefstroy, in which the district courts denied § 1782 requests, and upon which Furman relies (see Furman Opp'n Mem. at 22), are both distinguishable. In Microsoft, the foreign tribunal wrote a letter specifically opposing the applicant's discovery request. Microsoft, 428 F. Supp. 2d at 194. In Promnefstroy, the record was "replete with instances" in which—unlike in the instant case—the foreign tribunal had *already* "rejected [the applicant's] attempts to procure the same information it [sought] through its § 1782 application." Promnefstroy, 2009 WL 3335608, at *8.

[7] Even if the Grand Court had already denied discovery requests similar to the ones made here, this would not necessarily require the court to deny Petitioner's application. See Intel, 542 U.S. at 262 ("A foreign tribunal's reluctance to order production of materials present in the United States . . . may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a).").

9

The final Intel factor—whether the proposed subpoenas are unduly burdensome—raises closer questions. Section 1782(a) mandates that discovery under the statute be produced "in accordance with the Federal Rules of Civil Procedure." Accordingly, the court is guided by Rules 26 and 45, which govern third-party discovery. See Warnke v. CVS Corp., 265 F.R.D. 64, 66 (E.D.N.Y. 2010) ("A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement.") (internal quotation marks omitted).

Under Rule 26(b)(1), parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," to the extent the request is "reasonably calculated to lead to the discovery of admissible evidence." This standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Indeed, a discovery request is "reasonably calculated" to lead to relevant matter if there is "*any possibility* that the information sought may be relevant to the subject matter of the action." Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991) (internal quotation marks omitted) (emphasis in original).

As noted above, and as Respondents argue (see Hyland Decl. (Docket Entry # 21) ¶¶ 12, 13; Furman Opp'n Mem. at 17-18), many of Petitioner's allegations with regard to Myron Gushlak's purportedly secreted assets, and the knowledge Furman and Lubin might have of such assets, are not supported by any documentary submissions. However, the allegations are plausible enough, and sufficiently supported, for the court to conclude that the proposed subpoenas are "reasonably calculated" to uncover material that would "bear on" the Cayman Islands divorce action. Therefore, Petitioner has met the relevance requirement.[8]

---

[8] Furman alleges that Petitioner's subpoenas are a pretext designed to continue a campaign of harassment against Furman. (Furman Opp'n Mem. at 24.) While a § 1782 application brought as a vehicle for

Under Rule 45(c)(3)(A)(iv), a court must "quash or modify" any subpoena that subjects the recipient to "undue burden." "Whether a subpoena imposes upon a witness an 'undue burden' depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Nova Biomedical Corp. v. i-STAT Corp., 182 F.R.D. 419, 422-23 (S.D.N.Y. 1998) (internal quotation marks omitted).

Petitioner's proposed subpoenas are overbroad and, as currently formulated, would subject Furman and Lubin to undue burden. Petitioner requests from both Furman and Lubin "all documents" concerning Myron Gushlak, without any time limitation. (Proposed Subpoena, Schedule "A," ¶ 2(a).) Furman is Myron Gushlak's girlfriend and many responsive documents in her possession could well be private and completely unrelated to Myron Gushlak's assets. The same is true with respect to Petitioner's request, from Furman, of documents relating to Myron Gushlak's family members. (Id.) Similarly, Lubin has apparently acted as Myron Gushlak's lawyer and business advisor, and many responsive documents in his possession could be unconnected to Myron Gushlak's assets. See Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (rejecting subpoena to third-party financial advisor where request "effectively encompass[ed] documents relating to every transaction undertaken by [the third party for the defendant] during the last ten years," and therefore sought "material with little apparent or likely relevance"). It is also obviously unreasonable for Petitioner to seek from Furman and Lubin "all documents" in their possession concerning themselves. (Proposed Subpoena, Schedule "A," ¶ 2(a).)

---

harassment should be denied, see Intel, 542 U.S. at 266, Euromepa, 51 F.3d at 1101 n.6, Furman's account of prior incidents is insufficient to convince the court that the instant application is pretextual.

11

In order to remedy these deficiencies, Petitioner must submit new subpoenas. See Intel, 542 U.S. at 265 ("Unduly intrusive or burdensome requests may be rejected or trimmed."). These subpoenas may seek material regarding the same individuals and entities named in the current subpoenas, except that Petitioner shall limit her requests to documents bearing on assets Myron Gushlak owns or controls, or has owned or controlled.[9] To the extent responsive documents invade any privilege, Respondents shall submit a privilege log.

### C. Application as to Warden Duke Terrell

Petitioner's application as to Warden Terrell is effectively an application directed at the United States government, given that Warden Terrell is an official of the United States Bureau of Prisons. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984) ("[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.") (internal quotation marks omitted); De Gortari v. U.S. Dep't of Treasury, No. 00-5246, 2001 WL 476187, at *1 (D.C. Cir. Apr. 30, 2001) (noting, in § 1782 case, that a "complaint seeking to compel action by a federal official in his or her official capacity is actually a complaint against the United States"). Petitioner's application as to Warden Terrell fails because, as Warden Terrell argues (Terrell Opp'n Mem. at 2-3), the government is not a "person" under § 1782.

Only "persons" are subject to subpoena under the statute. See 28 U.S.C. § 1782(a) ("The district court of the district in which a *person* resides or is found may order *him* to give his

---

[9] While information regarding assets previously owned or controlled by Myron Gushlak may have no bearing on his current assets, such information may also help Petitioner, and the Grand Court, trace the current status of Myron Gushlak's assets. To the extent responsive documents are indeed irrelevant to Petitioner's efforts to trace Myron Gushlak's assets, that issue may be raised in front of the magistrate judge to be assigned to handle any future disputes in the instant case.

testimony or statement or to produce a document or other thing . . . ."). When the word "person" appears in a statute, federal courts must apply a "longstanding interpretive presumption that 'person' does not include the sovereign." Vt. Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 780 (2000). While this presumption is not a "hard and fast rule of exclusion," it "may be disregarded only upon some affirmative showing of statutory intent to the contrary." Id. (internal quotation marks omitted). That is, the "conventional reading of 'person' may . . . be disregarded if the purpose, the subject matter, the context, the legislative history, or the executive interpretation of the statute indicate an intent, by the use of the term, to bring state or nation within the scope of the law." Int'l Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 83 (1991) (internal quotation marks and alterations omitted).

In Al Fayed v. Cent. Intelligence Agency, 229 F.3d 272 (D.C. Cir. 2000), the D.C. Circuit, in a case of first impression, id. at 274, concluded that the government is not subject to subpoena under the statute. The Al Fayed court noted that the statute does not explicitly exclude or include the government, and found that the petitioner had failed to provide any "affirmative evidence to disturb the presumption that 'person' excludes the sovereign." Id. at 274, 276-77; see also McKevitt v. Mueller, 689 F. Supp. 2d 661, 668 n.1 (S.D.N.Y. 2010) ("The Government is not a 'person' under § 1782 and therefore cannot be compelled to provide documents for use in foreign litigation.") (citing Al Fayed).

In arguing that this court, contrary to Al Fayed, should hold that § 1782 applies to the government, Petitioner first invokes the broad goals of the statute, i.e., "to provid[e] efficient assistance to participants in international litigation and encourag[e] foreign countries by example to provide similar assistance to our courts." (Pet'r Reply Mem. at 27) (quoting Intel, 542 U.S. at 252.) Petitioner contends that it would be "ironic indeed if the United States were found to have

13

left to private litigants the task of pursuing these goals but has, without ever expressing any intent to do so, exempted itself from carrying its load." (Id.) Despite having some appeal, this argument fails. All statutes are enacted to accomplish a public good that could potentially be further served if the statute applied to the sovereign. But this broad truth does not constitute "affirmative evidence" that Congress intended a particular statute to apply to the government. See, e.g., United States v. United Mine Workers of America, 330 U.S. 258, 269-70 (1947) (holding that the Clayton Act, which prohibited courts from issuing injunctions against labor strikes, did not apply where the employer was the United States, since there were no "affirmative grounds" for believing Congress intended it to). Indeed, the Al Fayed court rejected just such an appeal to the general purposes of § 1782, finding that their invocation did "little or nothing to answer the question before us—whether Congress intended, in pursuit of those goals, to impose responsibilities and burdens on federal agencies." Al Fayed, 229 F.3d at 276.

Petitioner next argues that the presumption should not apply because Petitioner does not seek to uncover the "internal thoughts, practices, procedures, intentions or aims of any federal agency." (Pet'r Reply Mem. at 27-28.) However, the question is not whether § 1782 applies to the government in *this* case, but whether it applies to the government *ever*.

Finally, Petitioner argues that, because the United States has been held to be a "person" under Rule 45, it should also be considered a "person" under § 1782. (Id. at 28.) The only decision Petitioner cites finding that the government is a "person" under Rule 45 is Yousuf v. Samantar, 451 F.3d 248 (D.C. Cir. 2006)—a case in which the court explicitly drew a distinction between Rule 45 and § 1782. As the court pointed out in Yousuf, § 1782 post-dated the 1947 passage of the Dictionary Act, 1 U.S.C. § 1. Yousuf, 451 F.3d at 253. Under the Dictionary Act, the meaning of the word "person" in a statute includes, "unless context indicates otherwise,"

"corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals"—a list that notably does not include the sovereign. In contrast, Rule 45 was passed in 1937, when a broader presumptive definition of "person" was in force—one that included "bodies politic and corporate." Id. (citing Act of Feb. 25, 1871, § 2, 16 Stat. 431). Thus, it is logical to conclude, as the D.C. Circuit did in Yousuf, that the United States is a "person" for Rule 45 purposes, but not under § 1782.

In sum, Petitioner does not provide the requisite "affirmative showing" that the government should be considered a "person" under § 1782. Accordingly, Petitioner's application as to Warden Terrell must be denied.

### D. Myron Gushlak's and Ryan Gushlak's Motions to Intervene and Quash

Myron and Ryan Gushlak move to intervene in the case in order to quash Petitioner's subpoena as to Warden Terrell. (Gushlak Mot.) (Ryan Gushlak's motion is not filed in the public record.) The court's denial of Petitioner's application as to Warden Terrell eliminates the basis for these motions and they are accordingly denied.

### E. The Recusal Motion

Furman moves for the court to recuse itself under 28 U.S.C. § 455(a), which requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." (See Furman Recusal Mem.) Furman's motion is based on the court's decision to grant Petitioner's application as to Myron Gushlak. (Id.) That decision, reached upon consideration of the applicable law, was not influenced by bias, nor did it create any appearance of bias. See Liteky v. United States, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 227 (2d Cir. 2009) ("Generally, claims of judicial bias must be

based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality.") Accordingly, Furman's contrived and baseless motion is denied.

## III. CONCLUSION

For the aforementioned reasons, Petitioner's applications as to Furman and Lubin are GRANTED, on condition that Petitioner submits modified subpoenas limiting her requests to documents and testimony relevant to assets that Myron Gushlak owns or controls, or that he previously owned or controlled. Petitioner's application as to Warden Terrell is DENIED. Myron Gushlak's and Ryan Gushlak's motions to intervene and quash are DENIED, and Furman's motion for recusal is DENIED. The Clerk of Court is directed to assign a magistrate judge to the case, by random selection. The magistrate judge will resolve any further discovery disputes that may arise.

SO ORDERED.

Dated: Brooklyn, New York
August 17, 2011

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge