UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE APPLICATION OF DEBBIE GUSHLAK          REPORT AND
PURSUANT TO 28 U.S.C. § 1782 FOR THE          RECOMMENDATION
TAKING OF DISCOVERY FOR USE IN A
FOREIGN PROCEEDING                                          11-MC-0218 (NGG) (JO)
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

        In separate orders dated June 23 and August 17, 2011, the court granted the request of

Debbie Gushlak (the "Applicant") for an order of judicial assistance, pursuant to 28 U.S.C. Section

1782, to obtain discovery in connection with a foreign divorce proceeding from, respectively,

respondent Myron Gushlak and respondent Yelena Furman ("Furman" or, collectively with Myron

Gushlak, the "Respondents"). Docket Entry ("DE") 15; DE 51. Pursuant to those orders, the

Applicant served subpoenas on each of the Respondents. Each Respondent thereafter filed a notice

of appeal challenging the court's order allowing the subpoena to be issued; however, neither

Respondent has yet complied with the subpoena or moved to quash it. As a result, the Applicant

seeks to have each adjudged in contempt. The Respondents cross-move for a stay of all

proceedings in this court pending resolution of their appeals and pending a factual determination

regarding allegations that the Applicant presented stolen information to the court in seeking its

assistance. They further request that the court order the Applicant to return the allegedly stolen

information and strike the Applicant's Memorandum of Law in Opposition to their motion for its

"pervasive" reference to facts not supported by sworn statements. By orders dated September 15

and October 21, 2011, DE 62 & 76, the Honorable Nicholas G. Garaufis, United States District

Judge, referred the motions to me for a report and recommendation. For the reasons set forth

below, I now make this report and respectfully recommend that the court deny the Respondents'

motions in all respects, and grant the Applicant's motion for coercive contempt sanctions.

I.     Background

Respondent Myron Gushlak, who is married to Applicant Debbie Gushlak, is a federal prisoner currently serving a six-year sentence arising from his conviction for securities fraud and money laundering. *See* DE 1 (Application) at 1-2. Furman describes herself as Myron Gushlak's girlfriend. DE 51 at 3 (citing Furman's affidavit).[1]   The Gushlaks are currently litigating a divorce proceeding in the Cayman Islands. Application at 1. On April 4, 2011, Debbie Gushlak applied to the court for an order pursuant to 28 U.S.C. Section 1782 compelling discovery relating to her husband's assets in connection with the foreign divorce litigation. *Id.* In addition to seeking such discovery from her husband and Furman, the Applicant also sought to serve subpoenas on two other respondents. *See id.* at 2-4. The first was David Lubin ("Lubin"), an attorney who allegedly advised Myron Gushlak on several business transactions relating to the disputed assets. DE 2 at 2. The second was Warden Duke Terrell of the Metropolitan Detention Center ("MDC") in Brooklyn, New York, who was Myron Gushlak's custodian at the time the Application was filed. *Id.*

In a Scheduling Order dated June 9, 2011, Judge Garaufis set a briefing schedule and directed the parties to appear at a hearing on July 8, 2011. Before the briefing was completed, on June 20, 2011, the Applicant moved the court to order the Bureau of Prisons ("BOP") to hold Myron Gushlak at MDC or to produce him for the show cause hearing on July 8, 2011. DE 10, 13. The Applicant noted that her husband had been lodged at the MDC only temporarily, pending his designation to another facility in which to serve the remainder of his sentence, and she argued that in the absence of the requested relief, the BOP might remove her husband from this district and thereby destroy the court's jurisdiction over him. DE 10 at 2.

---

[1]  The Applicant's counsel speculates in a declaration that Furman is instead a "paid operative posing as a mistress for cover." DE 29 at 2 n.1. The speculation has no bearing on my analysis.

The court effectively granted the Applicant's request for relief that would allow it to maintain jurisdiction and rule on the merits of the discovery issue, but it accomplished that goal by alternate means. In an order dated June 23, 2011 – one day before briefs in opposition to the Applicant's discovery requests were due – the court granted the Applicant's original discovery request as to Myron Gushlak and therefore denied as moot her motion for relief from the BOP. DE 15 (the "June Order"). Pursuant to that ruling, the Applicant served a subpoena on her husband that day, demanding that he produce documents by August 30, 2011.

Although the court's order allowed the Applicant to serve her subpoena on Myron Gushlak before he had responded to the Application on the merits, that ruling was without any actual prejudice to Myron Gushlak's rights. Specifically, the court ordered that Myron Gushlak could seek to quash the subpoena by filing a motion the next day, and it further ordered that if such a motion was filed, the Applicant must respond a week later, and that the parties would then appear through counsel for a hearing one week after that. *Id.* at 3 n.2. The effect of that ruling was to preserve the briefing and hearing schedule the court had originally set; the only difference it made in the parties respective positions was that it required Myron Gushlak to style his opposition to his wife's attempt to secure discovery as a motion to quash a subpoena rather than as a brief opposing her original Application. Indeed, the June Order left undisturbed the briefing schedule as to the Applicant's requests for relief from Furman, Lubin, and Terrell.[2]

Nevertheless, Myron Gushlak did not move to quash the subpoena. Instead, on June 24, 2011, he filed a notice of appeal to the Second Circuit. DE 19. As a result, despite having had ample opportunity to do so before being required to produce any documents, Myron Gushlak never

---

[2] Lubin complied with that schedule, DE 21, and Furman and Terrell timely sought and received extensions of their time to respond.

presented any reason to this court – at least, not before the instant motions were filed – why he should not have to produce the discovery his wife sought pursuant to Section 1782.

In a Memorandum and Order dated August 17, 2011, the court granted the Applicant's requests for relief as to Furman and Lubin, but denied her motion as to Warden Tyrell. DE 51 (the "August Order"). As part of that order, the court referred to me for resolution any further discovery. *Id*. at 16. Pursuant to the court's ruling, the Applicant served subpoenas on Furman and Lubin on August 22, 2011. *See* DE 52 & 53 (Affidavits of Service). Furman thereafter filed a Notice of Appeal. DE 59.

In a letter dated September 6, 2011, the Applicant requested a pre-motion conference in advance of a motion to hold Myron Gushlak in contempt for his refusal to produce documents in response to the subpoena served upon him. DE 56. Myron Gushlak opposed the request on the ground that his notice of appeal had divested this court of jurisdiction over the entire matter, and that the court therefore lacked the authority to enforce the June Order. DE 58. On September 15, 2011, the Applicant enlarged her request to include a pre-motion conference in advance of a motion to hold Furman in contempt. DE 63. On the same date, the court referred both requests and the anticipated contempt motions to me. DE 63.

On September 26, 2011, the parties appeared before me for a status conference. DE 64. After hearing arguments from counsel, I concluded that there is no jurisdictional bar to considering the Applicant's motion for contempt based on the fact that the Respondents have both filed notices of appeal. *Id.* However, on the basis of counsel's representation that the Respondents had relied on his advice about the effect of the notice of appeal in failing to respond to the subpoena, I allowed the Respondents until October 11, 2011, to comply with the subpoenas' document demands, and I

4

instructed the parties to confer as to a new deposition date. *Id.* I cautioned the Respondents that failure to comply would result in a recommendation that the court adjudge the recalcitrant party in contempt. *Id.*

On October 4, 2011, the Respondents filed a motion requesting three forms of relief. First, they asked for an order setting aside what they characterized as my "finding and recommendation" at the status conference on September 26, 2011. DE 65 (Motion) at 1. Second, they requested a stay of all proceedings "to hold an evidentiary hearing to determine the extent of Debbie Gushlak's theft of private information, its use in these proceedings and appropriate sanctions[.]" *Id*. Finally, the Respondents moved for a stay of all proceedings pending the resolution of their respective appeals. *Id.*; *see also* DE 66 (Memorandum of Law) ("Resp. Memo."); DE 67 (Affidavit in Support of Motion). The Applicant filed her response in opposition to the motion on October 18, 2011. DE 71 (Memorandum of Law).

In a letter dated October 12, 2011, the Applicant reported that neither of the Respondents had complied with the subpoenas issued to them pursuant to this court's order. DE 69. That same day, I ordered the Respondents to show cause in writing no later than October 17, 2011, why I should not recommend that they be adjudged in contempt. On October 17, 2011, the Respondents submitted a letter that essentially reiterated the arguments set forth in their motion papers. DE 70. On October 21, 2011, the court referred the Respondents' motions for a stay to me for report and recommendation, and declined to review my conclusions regarding the jurisdictional issue pending its review of my report and recommendation on the Applicant's contempt motion. DE 76.

On October 26, 2011, the Respondent's submitted a letter motion seeking two additional forms of relief. DE 77. First, they asked the court to strike the Applicant's Memorandum of Law in

Opposition to their motion for a stay because of its "pervasive" reference to facts not supported by sworn statements. *Id*. at 1, 15-16. Second, the Respondents moved for an order directing the Applicant to return the allegedly stolen information. *Id*. at 1. The Applicant filed a letter in opposition to these additional requests for relief on October 27, 2011. DE 81. Although the court has not formally referred these motions to me, they appear to arise from the litigation of the Respondents' previously-referred motions, and I therefore deem them to be within the scope of the earlier referral for a report and recommendation.

II.    Discussion

      A.    Stay Pending Appeal

            1.    Applicable Law

A court considering whether to stay an order of foreign judicial assistance pending appeal of that order should apply the same standard as used to consider a stay of the enforcement of a civil judgment pending appeal pursuant to Federal Rule of Civil Procedure 62(c). *See In re Chevron Corp.*, 709 F. Supp. 2d 283, 300-10 (S.D.N.Y. 2010); *In re ROZ Trading Ltd.*, 2007 WL 120844, at *1-*3 (N.D. Ga. Jan. 11, 2007).

I discuss application of the Rule 62(c) below. However, as a preliminary matter, I note that what the respondents seek here is *not* a stay of the June and August Orders, but rather of the enforcement of subpoenas issued pursuant to those orders. Those subpoenas are themselves court orders separate and apart from the Orders now under review in the appellate court – but they are not yet final orders. To the contrary, a party seeking relief from a facially valid subpoena may not seek appellate review unless and until that party fails to comply with it and is thereafter adjudged in contempt. *See*, *e.g.*, *Morisseau v. DLA Piper*, 707 F. Supp. 2d 460, 461-62 & n.11 (S.D.N.Y.

6

2010) (quoting *Maness v. Meyers*, 419 U.S. 449, 459 (1975) ("[A]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.")); *Martin v. Neil*, 2009 WL 1161009, at *1 n.1 (E.D.N.Y. Apr. 28, 2009) ("A subpoena is a court order that requires the recipient to provide specified information."). Thus, even if the appeal of the June and August Orders divested this court of jurisdiction over the Application, I conclude it did not divest this court of its inherent authority (as well as the authority explicitly conferred by Federal Rule of Civil Procedure 45(e)) to impose contempt sanctions on a recalcitrant subpoena recipient. At most, the pendency of appeals of the June and August Orders suggests a different procedural basis for the court to consider application of the Rule 62(c) standard, in determining whether to impose contempt sanctions for the Respondents' unexcused failure to discharge their legally binding obligation to comply with the subpoenas. *See Morisseau*, 707 F. Supp. 2d at 462 (holding that recalcitrant party would not in any event have succeeded in requesting a stay of enforcement of the subject subpoena pending appeal of the order enforcing it).

A party seeking a stay pending appeal under Rule 62(c) bears a "difficult burden." *United States v. Private Sanitation Indus. Ass'n*, 44 F.3d 1082, 1084 (2d Cir. 1994). Four factors are relevant in determining whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*,

481 U.S. 770, 776 (1987); *see also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). No one factor is dispositive, and a stronger showing as to one may lessen the importance of another. *See Thapa v. Gonzales*, 460 F.3d 323, 334-35 (2d Cir. 2004). "Although the weighing of these factors is flexible and within the Court's discretion, the movant's 'burden of establishing a favorable balance of these factors is a heavy one and more commonly stay requests will be denied.'" *Optimum Shipping & Trading v. Prestige Marine Servs. Pte.*, 613 F. Supp. 2d 502, 503 (S.D.N.Y. 2009) (quoting *SEC v. Finazzo*, 2008 WL 1721517, at *2 (S.D.N.Y. Apr. 11, 2008)). I discuss each factor each turn.

2.     Analysis

a.     Likelihood Of Success On The Merits

In support of his argument that he is likely to succeed on the merits, Myron Gushlak contends that the court's decision to grant the Application as to him by virtue of a procedure that he characterizes as *ex parte* deprived him of the right to be heard and therefore violated his due process rights. I disagree for two fundamental reasons. First, there is nothing inappropriate about an *ex parte* application for an order of judicial assistance or about a decision to grant such an application. *See, e.g., In re Esses*, 101 F.3d 873 (2d Cir. 1996) (affirming judicial assistance order initially granted on the basis of an *ex parte* application); *In re Aldunate*, 3 F.3d 54 (2d Cir. 1993) (same); *In re Imanagement Servs.*, 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) (denying motion to vacate judicial assistance order obtained *ex parte*); *In re Braga*, 789 F. Supp. 2d 1294, 1303 (S.D. Fla. 2011) (noting that "most applications filed here in this district are submitted on an *ex parte* basis" and that there is "nothing inappropriate" about such motions).

Second, the procedure was not *ex parte* in any meaningful way. Even if the June Order's grant of relief prior to receiving a response to the Application, viewed in isolation, raised some due

process concern, the court plainly gave Myron Gushlak a full opportunity to be heard on the merits before requiring him to comply with the subpoena. Indeed, the record makes clear that the court acted to preserve its jurisdictional ability to consider Myron Gushlak's arguments on the Application's merits and explicitly stated that it would do so in the context of a motion to quash the subpoena issued pursuant to the June Order; the court even went so far as to set a briefing schedule and argument date for such a motion. June Order at 9 n.2. There was nothing novel about this result: litigants dissatisfied with *ex parte* orders of judicial assistance routinely vindicate their interests through motions to quash the resulting subpoenas. *See, e.g., In re Yukos Hydrocarbons Invs. Ltd.*, 2009 WL 5216951 (N.D.N.Y. Dec. 30, 2009); *In re Godfrey*, 526 F. Supp. 2d 417 (S.D.N.Y. 2007); *In re Grabski Inwestycje Finansowe Sp. z.o.o.*, 2004 WL 1234046 (S.D.N.Y. June 2, 2004). Myron Gushlak, having filed no such motion, waived the procedural opportunity the court explicitly gave him to be heard on the merits before having any obligation to comply with a subpoena; he therefore should not now be heard to complain that this court has not previously heard his arguments on the merits.

Those arguments, in any event, are not persuasive. An applicant seeking an order of judicial assistance from this court must establish three facts: first, that the person from whom she seeks discovery resides or is found in this district; second, that the discovery sought is in aid of a proceeding before a foreign tribunal; and third, that she is an interested person in that proceeding. *Esses*, 101 F.3d at 875 (citing *Aldunate*, 3 F.3d at 58). Since the Respondents do not argue that the court erred in finding that the Applicant satisfied all three statutory requirements, to prevail on appeal they will have to demonstrate that the court abused its discretion by granting the

Application. *In re Lancaster Factoring Co.*, 90 F.3d 38, 42 (2d Cir. 1996). I doubt that they will do so.

"Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor discovery to avoid attendant problems." *Esses*, 101 F.3d at 876. In exercising its discretion, a court must consider three factors: whether the discovery at issue is within the foreign tribunal's jurisdictional reach, and thus accessible if the application is denied; the "receptivity" of the foreign tribunal to the district court's assistance, and in particular whether the application "conceals an attempt to circumvent" foreign restrictions or policies concerning discovery; and whether the subpoena to be issued is unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). Moreover, a court should exercise its discretion in light of the twin aims of Section 1782: providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts. *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006) (citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)).

Myron Gushlak's sole argument in support of the proposition that the June Order was an abuse of the court's discretion is that it was made without his input. *See* Resp. Memo. at 23. But just as the *ex parte* grant of an order of judicial assistance does not offend due process, as explained above, it also does not inherently abuse the court's discretion. In any event, as with the due process argument, the proposition that the court granted relief without giving Myron Gushlak an opportunity to be heard is at best a distortion of the record and at worst a flat misstatement of fact. As set forth above, the June Order merely preserved the court's ability to exercise jurisdiction

10

over the matter without depriving Myron Gushlak of the opportunity to be heard on the merits

before being required to respond to a subpoena.[3]

Furman likewise presents no argument that appears to have even a remote prospect of

success on appeal. Her only argument as to the exercise of the court's discretion is that in her view,

"on balance," the discretionary *Intel* factors weighed in her favor. Resp. Memo. at 23. In making

that argument, Furman rehashes several of the points she originally made in her original opposition

to the Application, and only two of those points are relevant to the *Intel* analysis. First, she argues

that she "is regularly present on Grand Cayman and is available to the Grand Court in connection

with the divorce action[.]" Resp. Memo. at 23. Second, she asserts that the Applicant's request "is

duplicative of discovery requests made in the Grand Cayman." *Id.*   The court gave careful

consideration to these arguments in weighing all of the *Intel* factors before rejecting them. *See*

---

[3]  Myron Gushlak also hints at the possibility that he will succeed in demonstrating that the court's
June Order was an abuse of discretion on substantive grounds as well. Specifically, after
complaining of his supposed lack of opportunity to be heard on the merits, he writes,

> Moreover, it is not as though there was nothing to say. The filings, affidavits and
> declarations submitted on behalf of Yelena Furman and Ryan Gushlak rebutted
> scores of unsworn, uncorroborated Debbie Gushlak hearsay claims and, indeed,
> proved that many of her claims were just plain false. Myron Gushlak had all of
> these arguments and more in addition to being a party to the Cayman litigation – a
> very important factor under *Intel* weighing against granting the application. Given
> the Court's unprecedented granting of relief without affording Mr. Gushlak an
> opportunity to be heard and oppose the Application, Mr. Gushlak is likely to
> succeed on the appeal of his due process claim.

*Id.* To the extent the quoted passage merely reiterates Myron Gushlak's assertion that he is likely to
succeed on appeal on the basis of a procedural argument, I disagree for the reasons stated above.
To the extent that passage is meant to convey that he will succeed on the basis of a substantive
argument predicated on the *Intel* factors, it is demonstrably false: Myron Gushlak has made *no*
such substantive argument in seeking appellate relief, and indeed does not even mention *Intel* in
the argument section of his appellate brief. *See Debbie Gushlak v. Myron L. Gushlak, et al.*,
Docket No. 11 Civ. 2584 (the "*Gushlak Appeal*"), DE 53 (Brief of Respondent-Appellant Myron
L. Gushlak) at 10-16 (2d Cir. Oct. 24, 2011) (making due process and abuse of discretion
arguments on procedural grounds as well as challenging the district court's impartiality, but
making no argument of abuse of discretion based on the balance of *Intel* factors).

August Order at 8-9. Furman does not argue to the contrary, nor does she identify any flaw in the court's reasoning or any authority it failed to consider. Even if another court might disagree with the analysis in the August Order – and I do not mean to suggest that such a result is likely – it does not appear remotely plausible that such a court would deem the rejection of Furman's arguments after careful consideration to have been an abuse of discretion.

Furman's remaining arguments fare no better. She asserts that the Application was "based on unfounded allegations" and "utterly lacking in any legitimate and credible connection between Yelena Furman and the allegedly secreted marital assets about which discovery is sought." Resp. Memo. at 22-23. Again, the court considered and rejected these arguments, concluding that the Application's allegations were "plausible enough, and sufficiently supported, for the court to conclude that the proposed subpoenas are reasonably calculated to uncover material that would bear on the Cayman Island's divorce action." August Order at 10 (internal quotations omitted). Furman does not even attempt to explain how the court's decision in this regard was erroneous, much less an abuse of discretion. Similarly, the court considered and rejected Furman's contention that the Application should be denied because it was "part of a proven campaign of harassment against Ms. Furman." Resp. Memo. at 22-23. After acknowledging that a Section 1782 application brought as a vehicle for harassment should be denied, the court found that Furman's "account of prior incidents [was] insufficient to convince the court that the instant application is pretextual." August Order at 11 n.8. Furman identifies no error in this finding. Accordingly, I conclude that Furman's complaints are unlikely to succeed on appeal.

     b.    <u>Irreparable Harm To The Respondents</u>

The Respondents argue that they will suffer irreparable harm without a stay because compliance with the subpoenas will moot their appeals and obligate them to produce the very

discovery that they argue they have no duty to produce. I disagree. First, complying with the subpoenas will not moot the appeals because even after compliance, an appellate court can "still fashion some sort of meaningful relief," such as ordering the destruction or return of subpoenaed documents. *Church of Scientology v. United States*, 506 U.S. 9, 13 (1992); *see FDIC v. Garner*, 126 F.3d 1138, 1142 (9th Cir. 1997); *EPA v. Alyeska Pipeline Serv. Co.,* 836 F.2d 443, 445 (9th Cir. 1989); *ROZ Trading Ltd.*, 2007 WL 120844, at *3 n.4. Second, the compelled production of non-privileged discovery material, standing alone, does not constitute irreparable injury warranting a stay pending appeal. *See*, *e.g.*, *Finazzo*, 2008 WL 1721517, at *4; *United States v. Diversified Group, Inc.*, 2002 WL 31812701, at *1 (S.D.N.Y. Dec. 13, 2002); *United States v. Bright*, 2008 WL 351215, at *2-*3 (D. Hi. February 7, 2008); *ROZ Trading Ltd.*, 2007 WL 120844, at *3; *but see First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001) (finding that respondent would suffer irreparable harm by being compelled to provide discovery absent a stay of the district court's order denying his motion to quash a subpoena). I therefore conclude that the Respondents will suffer no irreparable harm in the absence of a stay.

c.   <u>Substantial Harm To The Applicant</u>

The Applicant has a substantial interest in the speedy resolution of her request for discovery. Given the apparent scope and complexity of Myron Gushlak's financial dealings, there is a real concern that a delay in collecting evidence through the discovery process will substantially impair the Applicant's interests due to fading memories and the loss of records. Moreover, if this court grants the requested stay, the Applicant runs the risk that the Cayman divorce action may be brought to a close without the discovery. These concerns are particularly acute in light of the

already protracted history of this litigation, which, despite the relative lack of complexity of the legal questions involved, has already been pending for almost ten months.[4]  I therefore conclude that the Applicant would face a likelihood of substantial injury if a stay were ordered.

d.      The Public Interest

A stay would not be in the public interest. Congress empowered federal courts to issue orders of judicial assistance so that litigants in international litigation would have an efficient way to get the discovery they need and to encourage foreign countries by example to provide similar means of assistance to our courts. *Microsoft Corp.*, 428 F. Supp. 2d at 193. Granting a stay, particularly where the merits so clearly favor the Applicant, would plainly undermine both of these salutary goals. I therefore conclude that this factor, like each of the other *Intel* factors, weighs heavily against granting the Respondents' request for a stay.

B.      Relief Relating To Respondent's Allegations Of Theft

The Respondents request various forms of relief, including a stay of all proceedings and an evidentiary hearing, based on allegations that the Applicant presented stolen information to the court in support of her request. Specifically, the Respondents allege that the Applicant improperly obtained a copy of Myron Gushlak's September 2010 cellular telephone bill from Sasha Hayles ("Hayles"), an employee of a telephone company in the Cayman Islands, and presented to the court information from the bill in the reply papers she filed on July 8, 2011.[5]  In support of this claim, the

---

[4]  One day after asking this court to stay enforcement of the subpoenas pending resolution of their appeals, the Respondents asked the appellate court to hold their appeals in abeyance pending the outcome of the proceedings in this court. *See Gushlak Appeal*, DE 42; *see also id*. DE 50 (denying the motion). If both of the Respondents' motions had been granted in both courts, the Applicant would have been denied any chance of securing relief to which she might be entitled, regardless of the merits of the case – an outcome that plainly would cause the Applicant substantial harm.

[5]  The Respondents also claim, without evidentiary support, that the Applicant "misappropriated Furman's travel information" and improperly obtained a copy of a letter authorizing Furman to access Myron Gushlak's telephone account. Resp. Memo at 15, 18-19. These allegations appear to

14

Respondents submit an affidavit in which Hayles describes giving the Applicant the September 2010 telephone bill after the Applicant persistently had asked her for copies of Myron Gushlak's telephone bills over a period of several months. DE 67 at 1-2.

 For purposes of analyzing the instant motion, I will assume Hayles' account to be true – but that does not advance the Respondents' cause. Even with that assumption, the Respondents' assertion that the Applicant presented information from the September 2010 telephone bill in her reply papers is demonstrably false. The Applicant asserted in her reply that Furman began to have frequent telephone conversations with a Canadian stock trader and Swiss money managers connected with some of Myron Gushlak's purported assets only *after* Myron Gushlak was incarcerated on his securities fraud conviction. DE 29 (Declaration of Applicant's counsel, Sheryl E. Reich) ¶¶ 5(b)-(c). The Respondents claim that the Applicant obtained the information on which that assertion was based from the September 2010 phone bill (a claim that implicitly endorses the assertion about Furman's contacts as true even as it berates the Applicant for its provenance). But Myron Gushlak was not yet incarcerated in September 2010; indeed, he remained at liberty until his sentencing on November 18, 2010, at which time he was remanded to custody. *See United States v. Myron Gushlak*, docket no. 03-CR-0833, DE 45 (minute entry reflecting that defendant was not in custody at the sentencing proceeding); DE 33 at 122 (transcript of sentencing reflecting remand order). It is thus obvious that a telephone bill from September 2010 could have provided no information about telephone calls that Furman made after Myron Gushlak was incarcerated. I therefore conclude that the Respondents' allegation that the Applicant presented stolen information to the court in her reply papers is unfounded and provides no basis for any relief.

---

be based on nothing more than sheer speculation, and I therefore conclude they provide no basis for relief.

C.     The Respondents' Requests Concerning Records Obtained From Sasha Hayles

The Respondents also seek an order directing the Applicant to "collect and transmit to the Court (for restoration to the lawful owners), private records relating to Mr. Gushlak or Ms. Furman, and all material derived from or referencing such records, that were obtained after March 2011 from Sasha Hayles." DE 79 at 2. I assume the Respondents are referring to the September 2010 telephone bill, as the evidentiary record provides no basis for assuming that Hayles provided any other information to the Applicant.

The Respondents do not explain the source of the court's authority to issue the order they seek. Even assuming that the court might have authority to take such action in order to sanction the Applicant for submitting improperly obtained information as part of her reply papers, there would be no reason to exercise that authority here because, as explained above, the Respondents have failed to demonstrate that the Applicant made any use of the telephone bill in her submission. In the absence of any other identified theory that would explain why the court can or should grant the relief the Respondents seek, I respectfully recommend that the court deny their motion.

D.     The Respondents' Request To Strike Applicant's Memorandum Of Law

The Respondents also move to strike the entirety of the Applicant's Memorandum of Law in opposition to their motion, DE 71, on account of its "pervasive reference to 'facts' not supported by statements sworn under oath." DE 79 at 1. The request is frivolous: although the Respondents cite authority for the unremarkable proposition that a court may disregard unsupported factual assertions or strike an attorney's affidavit attesting to facts in the absence of personal knowledge, *id*. at 2, no legal authority that they identify, or of which I am aware, requires or even justifies striking a memorandum of law on such grounds. Moreover, the Respondents' characterization of

16

the Applicant's memorandum is simply inaccurate; the arguments of law and references to facts contained therein are appropriate. To the extent the Applicant's memorandum includes references to the Applicant's personal financial situation that are unsupported by sworn statements, I disregard those allegations; doing so has no impact on any aspect of my analysis of any issue now before the court.

E.      The Applicant's Motion For Contempt Sanctions

The Applicant moves for an order holding the Respondents in contempt for their failure to comply with the subpoenas served upon them pursuant to the June and August Orders. The Respondents' sole basis for refusing to comply with the subpoenas is their argument that the notices of appeal they filed operated to divest this court of jurisdiction to issue further orders in the proceeding and, in effect, gave rise to an automatic stay of the enforcement of the judgment. I note that the force of this argument is somewhat diminished by the fact that the Respondents, while arguing that this court has been divested of jurisdiction over the entire proceeding, simultaneously seek relief from this court for the Applicant's alleged wrongdoing with respect to Myron Gushlak's phone bill. In any event, the Respondents' argument is simply wrong on the merits.

While, as a general rule, an effective notice of appeal divests the district court of jurisdiction over the matter forming the basis for the appeal, *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), "the mere pendency of an appeal does not, in itself, disturb the finality of a judgment." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (internal quotation omitted); *United States v. Schulz*, 2008 WL 2626567, at *2 (N.D.N.Y. Apr. 28, 2008). "The district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." *Cincinnati Bronze, Inc.*, 829 F.2d at 588 (citing *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 n.2 (5th Cir. 1984)); *In re Fischer*, 53 Fed. App'x 129, 133

17

(2d Cir. 2002); 20 James Wm. Moore, et al., Moore's Federal Practice § 303.32(2)(b)(vi) (3d ed. 2010) ("Until the district court's judgment is superseded or stayed, the judgment is fully in effect and the district court retains the authority to enforce the judgment"); 16A Charles A. Wright, et al., Federal Practice and Procedure § 3949.1 (4th ed. 2011) ("Unless the judgment is stayed, the district court may act to enforce it despite the pendency of an appeal."). "Where … the district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes." *Cincinnati Bronze, Inc.,* 829 F.2d at 588 (quoting *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 439 (6th Cir. 1985)); *see, e.g., Am. Town Ctr. v. Hall 83 Assoc.,* 912 F.2d 104, 110 (6th Cir. 1990); *Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979); *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976); *C.H. Sanders Co., Inc. v. BHAP Hous. Dev. Fund Corp.*, 750 F. Supp. 67, 69-70 (E.D.N.Y. 1990); *Schulz*, 2008 WL 2626567, at *2; *see also Howat v. Kansas*, 258 U.S. 181, 190 (1922) ("It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.")

The Respondents attempt to avoid the application of these well-settled principles by analogizing their situation to that of a defendant seeking interlocutory appellate review of a district court's order denying a claim of qualified immunity. In that narrow context, a number of courts have held that an appeal divests a district court of jurisdiction to proceed with any part of the action against the appealing defendant. *See*, *e.g., Rivera-Torres v. Ortiz Velez*, 341 F.3d 86, 93 (1st Cir. 2003); *Yates v. City of Cleveland*, 941 F.2d 444, 448-49 (6th Cir. 1991); *Chuman v. Wright*, 960

18

F.2d 104, 105 (9th Cir. 1992); *Stewart v. Donges*, 915 F.2d 572, 576-77 (10th Cir. 1990); *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989). Respondents contend that the rule articulated in these cases should also apply in the context of an appeal from an order issued pursuant to 28 U.S.C. Section 1782, since, as with an appeal from an order denying a claim of immunity, the subject matter of an appeal from such an order concerns the validity of the entire action. I disagree.

The rule that the Respondents seek to apply by analogy has its origin in a line of cases that consider whether absolute or qualified immunity for government officials should be resolved in advance of trial. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Nixon v. Fitzgerald*, 457 U.S. 731 (1982); *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Stewart*, 915 F.2d at 576-77; *Apostol*, 870 F.2d at 1335-40; *see also Will v. Hallock*, 546 U.S. 345 (2006). As explained in *Forsyth*, the concerns in such cases arises from the possibility of "subjecting officials to the risks of trial[.]" 472 U.S. at 526. Those concerns, such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service[,]" *id.*, implicate the public interest, rather than the interests of the litigants themselves. A claim of absolute or qualified immunity for government officials is, in essence, a claim of entitlement not to stand trial or face the burdens of litigation. *See id*. at 525-527. Because "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and … is effectively lost if a case is erroneously permitted to go to trial," *id.* at 526 (emphasis in original), a district court should not retain the same authority over the litigation that it generally would during other kids of interlocutory appeals. *See Stewart*, 915 F.2d at 576-77; *Apostol*, 870 F.2d at 1338.

Plainly, the public interest in the conduct of government officials at stake in such cases is not implicated in the instant litigation. Subjecting the Respondents to the burdens of complying

with the Applicant's discovery requests will not compromise the efficiency of government or otherwise "imperil a substantial public interest." *Will*, 546 U.S. at 353. Nor will any substantial right or entitlement be lost if Respondents are made to comply with discovery orders that are later overturned on appeal. Respondents do not claim that they are immune from the foreign discovery provisions of Section 1782. They simply claim that the district court abused its discretion in assisting the Applicant in her efforts to secure information from them. Under these circumstances, there is no reason why the well-settled rule that a district court retains jurisdiction to enforce its own orders despite the pendency of an appeal should not apply in this action.

To the extent the Respondents seek to excuse their failure to comply with the subpoenas on the ground that they relied on the advice of their counsel – advice that I conclude was plainly wrong, for the reasons set forth above – they again ignore settled law. A subpoena recipient is not privileged to ignore a subpoena on the advice of counsel, and may not escape contempt sanctions on that basis. *See United States v. Remini*, 967 F.2d 754, 757 (2d Cir. 1992) (holding that good faith reliance on advice of counsel is not a defense to a charge of criminal contempt); *Howe Labs. v. Stevick*, 1996 WL 652608, at *6 (E.D.N.Y. Nov. 6, 1996) ("[A] good faith reliance on legal advice does not excuse a party for contempt."); *SEC v. Musella*, 818 F. Supp. 600, 606-07 (S.D.N.Y. 1993) (collecting cases holding that "[t]he party seeking a finding of contempt need not show that violation of the order was willful, and good faith is not a defense. Nor may the alleged contemnor rely on his own inadvertence, misunderstanding or advice from counsel.").

The Respondents have improperly failed to comply with the terms of a facially valid subpoena. They remained recalcitrant even after given a final opportunity to avoid contempt sanctions, and they have engaged in dilatory tactics and presented frivolous arguments to delay

even longer their compliance with this court's lawful orders. For those reasons, I respectfully recommend that the court adjudge the Respondents in contempt.

III.    <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the court deny the Respondents' motions in all respects, and that it grant the Applicant's motion for coercive contempt sanctions.

IV.    <u>Objections</u>

Any objections to this Report and Recommendation must be filed no later than February 16, 2012. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
       January 30, 2012

                                          _____/s/_____
                                          JAMES ORENSTEIN
                                          U.S. Magistrate Judge

21