UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X

*In re*                                                            Case No. 11-MC-218 (NGG) (JO)

APPLICATION OF DEBBIE GUSHLAK


---------------------------------------------------X



**MEMORANDUM OF LAW OF DEBBIE GUSHLAK IN OPPOSITION TO
OBJECTIONS TO REPORT AND RECOMMENDATION OF
MAGISTRATE JUDGE ORENSTEIN TO HOLD MYRON GUSHLAK
AND YELENA FURMAN IN CONTEMPT AND IN OPPOSITION TO MOTIONS
UNDER RULE 60 AND FOR A STAY**



March 13, 2012

Gerald B. Lefcourt, P.C.
Gerald B. Lefcourt
Sheryl E. Reich
148 East 78th Street
New York, N.Y. 10075
Tel (212) 737-0400
Fax (212) 988-6192
Reich@Lefcourtlaw.com
*Attorneys for Debbie Gushlak*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

Introduction .................................................................................................................... 1

Immediate Procedural Background ................................................................................ 2

POINT ONE

THE RECOMMENDATION THAT MYRON GUSHLAK AND YELENA FURMAN
BE HELD IN CONTEMPT AND COERSIVE SANCTIONS IMPOSED SHOULD
BE ADOPTED ................................................................................................................ 5

Introduction and Standard of Review ............................................................................ 5

    A.  The District Court has Authority to Enforce its Own Order Through
        Civil Contempt .................................................................................................. 6

    B.  Myron Gushlak and Yelena Furman are in Contempt of the Court's
        Orders of Discovery ........................................................................................ 10

        1.  The Legal Standard ................................................................................. 10

        2.  Applying the Standards .......................................................................... 11

        3.  The Proper Sanctions ............................................................................. 11

POINT TWO

THE RECOMMENDATION TO DENY THE RULE 60 MOTION TO RECONSIDER
THE RULING REQUIRING THE PARTIES TO PROVIDE DISCOVERY SHOULD
BE ADOPTED .............................................................................................................. 14

Introduction ................................................................................................................. 14

    A.  The Relevant Considerations in the Current Posture ...................................... 15

    B.  Why Movants' Arguments Cannot Provide Any Relief ................................. 16

    C.  The Legal Standard for Granting Relief Under Fed.R.Civ.P.60 ..................... 22

    D.  Movants Fail to Raise an Issue Under Rule 60 .............................................. 23

POINT THREE

THE RECOMMENDATION THAT NO STAY PENDING APPEAL SHOULD BE
ALLOWED SHOULD BE ADOPTED ........................................................................25

The Legal Standard for Granting a Stay Pending Appeal ...........................................26

    A.  Can either movant show that he or she will be irreparably harmed
        absent a stay? ................................................................................................27

    B.  Will the issuance of a stay substantially injure the other parties interested in the
        proceedings? ................................................................................................29

    C.  Is a stay in the public interest? .......................................................................30

    D.  Have the movants demonstrated a sufficient likelihood of successfully appealing
        the order under review? ..................................................................................30

    E.  After consideration of all factors, should a stay be granted? ...........................33

CONCLUSION ..............................................................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered, 2011 U.S. Dist. LEXIS
    53905* (S.D.N.Y. May 20, 2011)................................................................................31

*American Town Center v. Hall 83 Associates,*
    912 F.2d 104 (6th Cir. 1990) ..................................................................................9

*Anselm Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    2012 U.S. App. LEXIS 4719 (2d Cir. March 6, 2012)......................................20, 31

*Aventis Pharma v. Wyeth,*
    Case No. M-19-70, 2009 U.S. Dist. LEXIS 105422 (S.D.N.Y. Nov. 6, 2009) ......................32

*Barr v. United States,*
    1995 U.S. Dist. LEXIS 3600 (E.D.N.Y. March 9, 1995) ......................................9

*Bolino v. United States,*
    556 F. Supp. 765 (E.D.N.Y. 1983) ........................................................................13

*Brown v. Braddick,*
    595 F.2d 961 (5th Cir. 1979) ..................................................................................9

*C.H. Sanders Co, Inc. v. BHAP Housing Development Fund Co., Inc.,*
    750 F. Supp. 67 (E.D.N.Y. 1990) ..........................................................................7

*Camardo v. General Motors Hourly-Rate Employees Pension Plan,*
    806 F. Supp. 380 (W.D.N.Y. 1992).........................................................................5

*Davenport Recycling Associates v. C.I.R.,*
    220 F.3d 1255 (11th Cir. 2000) ..............................................................................24

*Defazio v. Wallis,*
    500 F. Supp. 2d 197 (E.D.N.Y. 2007) ....................................................................24

*Dunlop-McCullen v.Local 1-S,*
    149 F.3d 85 (2d Cir. 1998)......................................................................................22

*Fischer v. Crown Heights Jewish Community Council,*
    53 Fed. Appx. 129, 2002 U.S. App. LEXIS 6033 (2d Cir. 2002)............................7

*Gompers v. Bucks Stove & Range Co.,*
    221 U.S. 418 (1911)................................................................................................9

*Howat v. Kansas,*
258 U.S. 181 (1922).........................................................................................6

*In re Application of Apotex Inc. for Order to Obtain Discovery for Use in Action Pending Before the Federal Court in Canada (Case No. T-161-07),* Misc. No. M12-160, 2008 U.S. Dist. LEXIS 109420 (S.D.N.Y. Dec. 30, 2008) ........................................... 32

*In re Application of Asher B. Edelman,*
295 F.3d 171 (2d Cir. 2002)...................................................................... 29, 31

*In re Application of Bank of Cyprus Public Co. Ltd.,*
2011 U.S. Dist. LEXIS 6082 (S.D.N.Y. Jan. 21, 2011)...........................................30

*In re Application of Euromepa SA,*
51 F.3d 1095 (2d Cir. 1995)....................................................................20

*In re Godfrey,*
526 F. Supp. 2d 417 (S.D.N.Y. 2007).........................................................32

*In re Imanagement, Ltd.,*
Case No. Misc. 05-89, 2005 U.S. Dist. LEXIS 17025 (E.D.N.Y. Aug. 16, 2005)..................32

*In re Microsoft Corp.,*
428 F. Supp. 2d 188 (S.D.N.Y. 2006).........................................................32

*In re Prudential Lines, Inc.,*
170 B.R. 222 (S.D.N.Y. 1994)..............................................................7, 8

*In re World Trade Center Disaster Site Litigation*
503 F.3d 167, 2007 U.S. App. LEXIS 23371 (2d Cir. 2007) .............................................8, 26

*In re Yukos Hydrocarbons Investments Ltd.,*
Civil Action No. 5:09-MC-0078, 2009 U.S.Dist. LEXIS 121268 (N.D.N.Y. Dec. 30, 2009) ........................................................................................32

*Intel Corp. v. Advanced Micro Devices,*
542 U.S. 241 (2004).....................................................................20, 29

*Latino Officers Ass'n City of New York, Inc. v. City of New York,*
558 F.3d 159 (2d Cir. 2009)....................................................................10

*Leser v. U.S. Bank Nat'l Ass'n,*
Civil Action No. 09-CV-2362 (KAM)(ALC),
2011 U.S. Dist. LEXIS 28127 (E.D.N.Y. Mar. 18, 2011)...........................................12

*Levin v. Tiber Holding Corp.,*
277 F.3d 243 (2d Cir. 2002)....................................................................10

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC,*
   2012 U.S. Dist. LEXIS 14974 (S.D.N.Y. Feb. 6, 2012) ........................................21

*McComb v. Jacksonville Paper Co.,*
   336 U.S. 187 (1949) ........................................................................................... 11

*Mohammed v. Reno,*
   309 F.3d 95 (2d Cir. 2002) ................................................................................26

*N.L.R.B. v. Cincinnati Bronze, Inc.,*
   829 F.2d 585 (6th Cir. 1987) ...............................................................................9

*Nemaizer v. Baker,*
   793 F.2d 58 (2d Cir. 1986) ................................................................................23

*New York State Nat'l Org. for Women v. Terry,*
   952 F. Supp. 1033 (S.D.N.Y. 1997), *aff'd,* 159 F.3d 86 (2d Cir. 1998) ................12

*OJSC Ukrnafta v. Carpatsky Petroleum Corp.,*
   Case No. 3:09 MC 265, 2009 U.S. Dist. LEXIS 109492 (D. Conn. Aug. 27, 2009) .............32

*Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems,*
   369 F.3d 645 (2d Cir. 2004) .........................................................................10, 11

*Peterson v. Vallenzano,*
   1996 U.S. Dist. LEXIS 6519 (S.D.N.Y. May 13, 1996) ......................................7, 9

*Pineda v. Masonry Constr., Inc.,*
   2011 U.S. Dist. LEXIS 132130 (S.D.N.Y. Nov. 15, 2011) ...............................6, 26

*Powell v. Ward,*
   643 F.2d 924 (2d Cir. 1981) ..............................................................................10

*Red Ball Interior Demolition Corp. v. Palmadessa,*
   947 F. Supp. 116 (S.D.N.Y. 1996) .......................................................................7

*Sampson v. Murray,*
   415 U.S. 61 (1974) ............................................................................................27

*SEC v. United States Envtl., Inc.,*
   2004 U.S. Dist. LEXIS 20271 (S.D.N.Y. Oct. 7, 2004) .......................................23

*Sekaquaptewa v. MacDonald,*
   544 F.2d 396 (9th Cir. 1976) ............................................................................9

*Selletti v. Carey,*
   173 F.3d 104 (2d Cir. 1999) ..............................................................................16

*Spallone v. United States*,
   493 U.S. 265 (1990)...........................................................................................11

*State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*,
   374 F.3d 158 (2d Cir. 2004)..............................................................................24

*Tyger v. Air Line Pilots Ass'n, Int'l*,
   2007 U.S. Dist. LEXIS 16057 (E.D.N.Y. Mar. 7, 2007)....................................23

*United States v. Dien*,
   598 F.2d 743 (2d Cir. 1979)..............................................................................13

*United States v. Int'l Bhd. of Teamsters*,
   247 F.3d 370 (2d Cir. 2001)..............................................................................23

*United States v. Isabelle*,
   1989 U.S. Dist. LEXIS 7951(N.D.N.Y. July 7, 1989)........................................13

*United States v. Liberatore*,
   574 F.2d 78 (2d Cir. 1978)................................................................................13

*United States v. N.Y. City Bd. of Educ.*,
   620 F. Supp. 2d 413 (E.D.N.Y. 2009) ...............................................................26

*United States v. Raddatz*,
   447 U.S. 667 (1980)............................................................................................5

*United States v. Schultz*,
   2008 U.S. Dist. LEXIS 57948, 101 A.F.T.R.2d (RIA) 2436 (N.D.N.Y. 2008) .......8

*United States v. United Mine Workers of America*,
   330 U.S. 258 (1947)............................................................................................6

*V.S. v. Muhammad*,
   2008 U.S. Dist. LEXIS 96099 (E.D.N.Y. Nov. 24, 2008)..............................26, 33

*V.S. v. Muhammad*,
   2009 U.S. Dist. LEXIS 28150 (E.D.N.Y. April 3, 2009) ...................................26

*Williams v. New York City Dep't of Corr.*,
   219 F.R.D. 78 (S.D.N.Y. 2003) ........................................................................22

STATUTES AND RULES

28 U.S.C. §636(b)(1) .........................................................................................5

28 U.S.C. §636(e)(6).........................................................................................10

28 U.S.C. §1782........................................................................................ passim

Fed.R.Civ.P. 62.1 ...................................................................................................................15

Fed R. Civ. P. 72(b) .................................................................................................................5

Rule 60(b) ..............................................................................................16,  22, 23, 34

Rule 60(b)(2)..........................................................................................................................23

Rule 60(b)(3)..........................................................................................................................24

**OTHER AUTHORITIES**

11A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil 2d § 2946
(1995) ............................................................................................................................21

"Recent Developments Under Section 1782", *N.Y.L.J.*, October 13, 2011 ...................................31

**Introduction**

This is the second time Debbie Gushlak has filed a document entitled "Memorandum of

Law of Debbie Gushlak in Opposition to Objections to Report and Recommendation of

Magistrate Judge Orenstein to Hold Myron Gushlak and Yelena Furman in Contempt and in

Opposition to Motion Under Rule 60 and for a Stay". The first such filing, dated October 18,

2011 [Dkt. #71], was submitted five months ago in response to Myron Gushlak's and Yelena

Furman's objections to the anticipated Report and Recommendation. While we leave to the

Court the question of whether Gushlak and Furman waived their rights to object a second time,

we would urge the Court to consider just how studied the objections can be when the identical

objections were made months before they ever got the decision.

Because so much of what is argued in this (second) set of objections merely reiterates the

arguments made the first time around, we intend, as applicable, to restate the arguments made by

Mrs. Gushlak the first time around, all of which were credited by Magistrate Judge Orenstein in

his Report and Recommendation, dated January 30, 2012 [Dkt. #62] (hereafter, "R&R").

The underlying motions addressed by the R&R sought several distinct forms of relief –

that the Court reject any Report and Recommendation Magistrate Judge Orenstein makes that

Mr. Gushlak and Miss Furman be held in contempt for their failure to produce documents (an

objection that was obviously pre-mature since at the time of the motion, no such

recommendation had yet been made), though it has been now; a motion pursuant to Fed.R.Civ.P.

60 that the District Court reconsider its decision allowing Mr. Gushlak and Miss Furman to be

served with subpoenas to provide discovery because "newly discovered evidence" would show

not that it was not warranted but that Mrs. Gushlak did not deserve to get it because she

committed "fraud" in obtaining a document that supported, truthfully, the application for discovery; and a request for a stay of the discovery orders pending resolution of the appeals and/or the Rule 60 motion. As Magistrate Judge Orenstein aptly recognized, all these motions are so lacking in merit they can only have been filed for the purpose of wasting everyone's time:

> The Respondents have improperly failed to comply with the terms of a facially valid subpoena. They remained recalcitrant even after given a final opportunity to avoid contempt sanctions, and they have engaged in dilatory tactics and presented frivolous arguments to delay even longer their compliance with this court's lawful orders.

R&R at 21. Indeed, as Magistrate Judge Orenstein recognized, it is particularly galling that Mr. Gushlak and Miss Furman seek substantive relief from this Court when they simultaneously contended – **in the very same papers** – that this Court lacks any authority to entertain the motion they seek to advance because of the pendency of the appeals. R&R at 17.

## Immediate Procedural Background

Some familiarity with the early chapters of this saga are assumed. Pursuant to this Court's rules, by letters dated September 6, 2011, and September 15, 2011, Mrs. Gushlak sought a pre-motion conference in advance of moving to hold Myron Gushlak and Yelena Furman in contempt for their refusal to comply with the court ordered subpoenas to produce documents and to appear for deposition. In response, the witnesses claimed that the district court lacked authority to entertain the motion because, they argued, once a notice of appeal is filed, the district court is stripped of all authority, even to enforce its own orders. This Court referred the matter to Magistrate Judge Orenstein. [Dkt. #62; minute entry 9/16/11.]

At the pre-motion conference, Magistrate Judge Orenstein ruled that the law allowed a district court to enforce its own orders even while an appeal of an underlying order is pending. As such, the witnesses were obligated to follow the discovery orders, absent a stay.

Counsel to the witnesses represented that the witnesses had been refusing to comply with the orders because they had been told by counsel that the law did not require that they comply and therefore they should not (yet) be held in contempt.  With counsel to the witnesses having been instructed on the law, Magistrate Judge Orenstein asked how much time was needed to produce documents.  At their request, they were given until October 11, 2011, to comply.

Magistrate Judge Orenstein made the following minute entry to the docket sheet:

> After hearing the arguments of counsel I concluded that there is no jurisdictional bar to considering petitioner Debbie Gushlak's motion for contempt based on the pendency of a notice of appeal of Judge Garaufis' orders pursuant to 28 U.S.C. Sec. 1782. However, the motion itself is arguably premature: the subpoena recipients acknowledge that they have no legal basis for failing to respond other than reliance on their counsel's advice about the effect of the notice of appeal. Accordingly, having resolved that legal issue in the petitioner's favor, I will allow Mr. Gushlak and Ms. Furman until October 11, 2011, to comply with the subpoena's document demands (the parties will confer as to a new deposition date). If either Ms. Gushlak or Ms. Furman fails to comply by that date, I will recommend that the court adjudge him or her in contempt.

Evidently, counsel knew that the witnesses would persist in their noncompliance:  by motion filed October 4, 2011, the witnesses objected to the Report and Recommendation **not yet made** but clearly anticipated in light of their certainty that they would not comply.  In addition, they moved pursuant to Fed.R.Civ.P. 60 for reconsideration of the decisions, made June 23, 2011 [Dkt. #15], and August 17, 2011 [Dkt. #51] allowing Mrs. Gushlak to serve the subpoenas [Dkt. #65].  They also sought stays pending appeal.  Mrs. Gushlak filed papers in opposition to the motions, as noted above [Dkt. #71].  All motions were thereafter referred to Magistrate Judge Orenstein for Report and Recommendation.  [Dkt. #'s 62, 76]

By Report and Recommendation, Magistrate Judge Orenstein rejected every one of the arguments made by Gushlak and Furman.  He "respectfully recommend[ed] that the court deny

the Respondents motions in all respects and grant the Applicant's motion for coercive contempt sanctions". R&R at 1. More specifically, he recommended that this Court find:

1. There is no bar to this Court enforcing its Order that Gushlak and Furman comply with discovery. A District Court retains jurisdiction to enforce its own order even where the matter is on appeal. R&R at 17.

2. Gushlak and Furman failed to show cause why they should not be held in contempt. Each acted willfully and with knowledge and each should be held in contempt. R&R at 20.

3. The Rule 60 Motion is without merit and should be denied. R&R at 15.

4. Gushlak and Furman should not be granted a stay on appeal: neither established any likelihood of success on the merits (R&R at 8-12); neither established he will suffer an irreparable injury if a stay is not granted (R&R at 13); neither established that the balance of equities is in his favor (R&R at 14); and neither established that a stay is in the public interest (R&R at 14).

5. With respect to the conditions that should be imposed with respect to the contempt, the R&R made no recommendation.

Not unexpectedly, Gushlak and Furman object to every recommendation in the R&R. As is manifest from the lengthy and thorough Report and Recommendation itself, the Magistrate Judge painstakingly examined the facts and law and the Report should be adopted by this Court.

4

## POINT ONE

### THE RECOMMENDATION THAT
### MYRON GUSHLAK AND YELENA FURMAN BE HELD IN CONTEMPT AND
### COERSIVE SANCTIONS IMPOSED SHOULD BE ADOPTED

**Introduction and Standard of Review**

Myron Gushlak and Yelena Furman do not dispute that they have been served with

subpoenas authorized by this Court.  Neither do they dispute that they were ordered by this Court

to comply therewith.  Nor do they dispute that they have knowingly and intentionally refused to

comply.  As quoted above but worthy of reminder, in his Report and Recommendation

Magistrate Judge Orenstein found that

> The Respondents have improperly failed to comply with the terms of a
> facially valid subpoena.  They remained recalcitrant even after given a
> final opportunity to avoid contempt sanctions, and they have engaged in
> dilatory tactics and presented frivolous arguments to delay even longer
> their compliance with this court's lawful orders.

R&R at 21.

Pursuant to Fed. R. Civ. P. 72(b), a party may "file specific written objections" to a

Magistrate Judge's proposed findings and recommendations.  In that case, 28 U.S.C. § 636(b)(1)

requires that the district court make a *de novo* determination as to those portions of the Report

and Recommendation to which objections were made.  And in doing so, a district court judge is

afforded discretion in the weight placed on proposed findings and recommendations.  *United*

*States v. Raddatz*, 447 U.S. 667, 676 (1980).  However, objections to a Report and

Recommendation must be "specific and are to address only those portions of the proposed

findings to which the party objects." *Camardo v. General Motors Hourly-Rate Employees*

*Pension Plan*, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992).  Where a "party's objections are

5

conclusory or general, **or simply reiterate original arguments**, the district court reviews the Report and Recommendation for clear error." *Pineda v. Masonry Constr., Inc.*, 2011 U.S. Dist. LEXIS 132130 at *6 (S.D.N.Y. Nov. 15, 2011) (emphasis added).  While we have no doubt that if the Court were to undertake a *de novo* review it would reach the same conclusions as those in the Report and Recommendation of Magistrate Judge Orenstein, because no new legal arguments have been raised, the Report and Recommendation need only be reviewed for clear error.  And none has been pointed out by Gushlak or Furman.

### A.   The District Court has Authority to Enforce its Own Order Through Civil Contempt

Willfully blinding themselves to the unbroken line of cases that goes against them, Mr. Gushlak and Miss Furman continue to insist that this Court has no authority to enter a contempt order to enforce the decisions that are now on appeal.  They are just wrong.  As noted above, because they make no new arguments with respect to this point, the Court is entitled to examine the Report and Recommendation only for clear error.  It will find none.

As the Supreme Court has said, "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers of America,* 330 U.S. 258, 293 (1947). Such orders are "to be obeyed until they expire or are set aside by appropriate proceedings, appellate or otherwise." *Id.*  It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.  *Howat v. Kansas*, 258 U.S. 181, 190 (1922). No court has wavered from saying, distinctly, repeatedly and without reserve, that though a

6

matter is on appeal, the parties are not permitted to follow their own view of the law.  They must

comply with an order or judgment until and unless it is either stayed or vacated.

One need not dip back decades to find such pronouncements.  In, for example, *Fischer v.

Crown Heights Jewish Community Council*, 53 Fed. Appx. 129, 2002 U.S. App. LEXIS 6033 at

*11 (2d Cir. 2002), the Second Circuit reminded litigants that "to enforce a judgment that has not

been stayed on appeal is within the jurisdiction of the district court".

That the district courts uniformly understand this to be the rule, and act in conformity

therewith, is unquestionable.  Those parties who do not comply with orders and judgments, even

though seeking to overturn them on appeal, are subject to contempt sanctions.  *C.H. Sanders Co,

Inc. v. BHAP Housing Development Fund Co., Inc.*, 750 F. Supp. 67, 69 (E.D.N.Y. 1990) (". . .

the mere pendency of an appeal does not, in itself, disturb the finality of a judgment. . . . the

district court has jurisdiction to act to enforce its judgment so long as the judgment has not been

stayed or superseded. . . . [A] district court . . . does retain jurisdiction to enforce the judgment");

*Red Ball Interior Demolition Corp. v. Palmadessa*, 947 F. Supp. 116, 120 (S.D.N.Y. 1996)

(district court remains vested with the ability to enforce an order, even while the order is *sub

judice* before the reviewing court); *Peterson v. Vallenzano,* 1996 U.S. Dist. LEXIS 6519 at *13

(S.D.N.Y. May 13, 1996) (district court remains vested with the ability to enforce an order, even

while the order is *sub judice* before the reviewing court); *In re Prudential Lines, Inc.*, 170 B.R.

222, 243 (S.D.N.Y. 1994) (lower court retains jurisdiction to enforce a judgment notwithstanding

the filing of a notice of appeal).

Movants struggle to develop operative rules that will allow them to concede that this is

the law, yet at the same time carve out a Gushlak/Furman exception to that law.  What they

simply do not grasp is the distinction between acts to enforce a judgment, jurisdiction for which

a lower court retains notwithstanding the filing of a notice of appeal, and acts to expand a judgment, for which a district court lacks authority. *See In re Prudential Lines, Inc., supra.* Perhaps the best way to understand this distinction is the one to be made between Mrs. Gushlak's request that this Court enforce the orders that Gushlak and Furman comply with discovery, which the law clearly allows a district court to do despite the pendency of an appeal, and the request by Gushlak and Furman that the Court reconsider its orders that they comply with discovery, which the Court clearly lacks authority to do while an appeal thereof is pending.

This distinction is clear from the very cases upon which movants rely, where district courts were stopped from taking actions that affect an existing order or judgment then on appeal. None of the cases involves an effort to enforce the order or judgment itself. That is a critical distinction that they simply ignore. At the end of the day, **movants cite no case where a district court's jurisdiction has been found wanting to enforce its own order on appeal absent a stay. Not one.** [1]

That is particularly true in the area of disclosure, the very subject of this dispute. Court after court has required litigants to "let the cat out of the bag" so to speak despite the pendency of an appeal of the very discovery order and despite the fact that letting the cat out of the bag will result largely in frustrating meaningful appellate review of the order. So, for example, in *United States v. Schultz*, 2008 U.S. Dist. LEXIS 57948 at *4; 101 A.F.T.R.2d (RIA) 2436 (N.D.N.Y.

---

[1] For example, movants rely on *dicta* in *In re World Trade Center Disaster Site Litigation* 503 F.3d 167, 2007 U.S. App. LEXIS 23371 (2d Cir. 2007) G&F Memo at 25. There, the Second Circuit considered a motion to vacate a stay that had been granted by a motions' panel pending full review. The stay had halted pre-trial proceedings from going forward while there was an interlocutory appeal to review whether certain defendants were immune from suit. The Second Circuit questioned whether the district court lacked authority to require them to participate in discovery while the question of immunity was on appeal, but declined to rule on that contention of appellants. Instead, the Court dissolved the stay and returned the matter to the district court for discovery and trial. Never at issue was the question of a district court's authority to enforce a discovery order by contempt. The question was whether it could proceed with discovery at all.

2008), the district court held a party in contempt for refusing to comply with discovery though he was seeking appellate review of the order requiring that disclosure. In *Peterson v. Vallenzano, supra*, 1996 U.S. Dist. LEXIS 6519 at *13, the district court required a party to produce documents and to appear for deposition despite the pendency of an appeal. And in *Barr v. United States*, 1995 U.S. Dist. LEXIS 3600 (E.D.N.Y. March 9, 1995), Judge Glasser required a party to comply with his post-judgment discovery order though the judgment was on appeal. Such requirements, which flow directly from repeated Supreme Court pronouncements that an order must be complied with until vacated or stayed, is not unique to the lower courts of this Circuit.

The numerous cases from other jurisdictions cited by Magistrate Judge Orenstein (R&R at 18) provide further support: *American Town Center v. Hall 83 Associates*, 912 F.2d 104, 110-11 (6th Cir. 1990); *Sekaquaptewa v. MacDonald*, 544 F.2d 396 (9th Cir. 1976); and, most notably, *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987), and *Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979), in both of which latter cases an appellate court affirmed a district court's determination that a witness's refusal to comply with a discovery order while seeking to appeal the order of discovery was contempt.

In short, there is no argument, and there is no good faith basis to believe, that a district court order that has not been stayed or vacated can be ignored, as Mr. Gushlak and Miss Furman have done here: "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911).

**B.**     **Myron Gushlak and Yelena Furman are in Contempt of**
          **the Court's Orders of Discovery.**

*1.   The Legal Standard*

A federal district court has "the inherent power to hold a party in civil contempt in order

to enforce compliance with an order of the court or to compensate for losses or damages."

*Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (*citing McComb v. Jacksonville Paper Co.*,

336 U.S. 187, 191 (1949)).  Likewise, a district court may hold a party in contempt for violating

an order of a magistrate judge.  *See* 28 U.S.C. §636(e)(6) (providing that upon certification of

facts by the magistrate judge, the "district judge shall thereupon hear the evidence as to the act or

conduct complained of and, if it is such as to warrant punishment, punish such person in the

same manner and to the same extent as for a contempt committed before a district judge").

To hold a party in contempt, the "moving party [must] establish[] by clear and

convincing evidence that the alleged contemnor violated the district court's edict." *Latino*

*Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009).

"Specifically, the movant must establish that (1) the order the contemnor failed to comply with is

clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the

contemnor has not diligently attempted to comply in a reasonable manner." *Id.* (citation omitted).

"It need not be established that the violation was willful." *Paramedics Electromedicina*

*Comercial, Ltda v. GE Medical Systems*, 369 F.3d 645, 655 (2d Cir. 2004).  In the context of

civil contempt, the clear and convincing standard requires "a quantum of proof adequate to

demonstrate a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277

F.3d 243, 250 (2d Cir. 2002) (citation omitted).

### 2. Applying the Standards

Applying these standards, it is not possible to reach any conclusion but that Myron

Gushlak and Yelena Furman are in contempt of this Court's orders, and Magistrate Judge

Orenstein so finds. R&R at 20. It is beyond dispute that (1) the orders of discovery were

unambiguous, and, to the extent there was any question, Magistrate Judge Orenstein made it

crystal clear what was expected of the witnesses; second, it is equally unambiguous that neither

has complied; and third, it is also clear that neither has or intends to take any steps towards

compliance. Under applicable standards, they should be adjudged in contempt, with appropriate

conditions imposed that are designed to persuade them to purge their contempt and comply.

### 3. The Proper Sanctions

Civil contempt sanctions may serve dual purposes, namely "to secure future compliance

with court orders and to compensate the party that has been wronged." *Paramedics, supra,* 369

F.3d at 657 (citation omitted). Civil contempt sanctions may not be imposed punitively. *Id.*

Where the contempt sanction is coercive, a district court has "broad discretion to design a

remedy that will bring about compliance." *Id.* (citation omitted); *see also McComb v.*

*Jacksonville Paper Co.*, 336 U.S. 187, 193-94 (1949) ("The measure of the court's power in civil

contempt proceedings is determined by the requirements of full remedial relief."). Still, "a court

is obliged to use the least possible power adequate to the end proposed." *Spallone v. United*

*States*, 493 U.S. 265, 276 (1990) (citation omitted). In selecting sanctions, a court is to be guided

by "the character and magnitude of the harm threatened by continued contumacy, the probable

effectiveness of any suggested sanction in bringing about compliance, and the contemnor's

ability to pay." *Paramedics*, 369 F.3d at 658 (citation omitted).

11

The harm caused by Mr. Gushlak's and Miss Furman's refusal to provide discovery includes not only the lack of discovery needed to vindicate her rights, but large and unnecessary counsel fees. It is respectfully suggested that the appropriate sanction to be imposed on Myron Gushlak for his contempt is incarceration as well as Mrs. Gushlak's counsel fees.

We had initially not requested monetary sanctions, including attorneys fees, out of concern that any money Gushlak came up with would be money to which Mrs. Gushlak already had a claim. However, at this point, it is clear he has sources of funds that she may never find. [2] So, he might as well pay her fees, even if it is with money to which she has a claim.

When deciding whether to award fees and costs to the sufferer of the contemnor's conduct, "courts have focused on the willfulness of the contemnor's misconduct . . . Although willfulness is not necessarily a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." *Leser v. U.S. Bank Nat'l Ass'n*, Civil Action No. 09-CV-2362 (KAM)(ALC), 2011 U.S. Dist. LEXIS 28127 at *41 (E.D.N.Y. Mar. 18, 2011) (internal citations omitted). That he is acting willfully is beyond dispute. As discussed above, all that need be shown is that the "contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good   faith effort to comply." *New York State Nat'l Org. for Women v. Terry*, 952 F. Supp. 1033, 1043 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 86 (2d Cir. 1998) (internal quotation marks omitted).

That having been said, using funds to which someone else has a claim dilutes the coercive effect of having to part with them. Therefore, incarceration is the only coercive

---

[2] As we previously noted, it certainly is curious that Mr. Gushlak can afford to pay all these lawyers to do all this work. While we had thought he was sucking the money out of the Liechtenstein Trust in order to pay legal fees, the Trustee has represented that he is abiding by the injunction imposed by the Cayman Court and is not paying any such bills. We know of no disclosed source from which these bills can be getting funded.

sanction that is likely to have the intended impact. Mr. Gushlak's criminal sentence should be

interrupted and he should be deemed incarcerated pursuant to the contempt. Such procedure is

permitted and appropriate here. As we previously indicated, the Second Circuit has recognized

the authority of a district court to interrupt the running of a federal sentence and have further

incarceration deemed served pursuant to a contempt sanction until such time as the contempt is

purged. *United States v. Dien*, 598 F.2d 743, 744 - 45 (2d Cir. 1979). As the Court said there,

> Dien's principal argument on appeal is that when the district court
> confined him for civil contempt it lacked the power to stay the running of
> his prior federal sentence for the period of his confinement for civil
> contempt. Section 1826(a) expressly authorizes the district court to
> confine a recalcitrant witness. Although the statute says nothing as to the
> effect of this confinement upon the service of a prior criminal sentence, a
> concurrent service of both terms would obviously frustrate the purpose of
> the statute and provide no motivation for the cooperation of the witness.
> Although no case in this circuit has held that a district court has the power
> to stay the prior federal criminal sentence, there is ample authority,
> including decisions by seven other circuit courts, supporting a finding of
> such power in the district court.

In *Dien*, the witness was held in contempt for his refusal to comply with an order to

testify before a grand jury despite an order of immunity. *See, e.g., Bolino v. United States*, 556

F. Supp. 765 (E.D.N.Y. 1983) (interrupting federal sentence for civil contempt sanction for

refusal to comply with order requiring him to testify before grand jury); *United States v. Isabelle*,

1989 U.S. Dist. LEXIS 7951(N.D.N.Y. July 7, 1989) (interrupting federal sentence for civil

contempt sanction for refusal to comply with order to sign waiver documents); *and see United

States v. Liberatore*, 574 F.2d 78, 84 (2d Cir. 1978) (marshalling cases from six circuits that had

previously ruled that a federal sentence may be interrupted by incarceration for civil contempt).

That is the right result here.

As for Miss Furman, while we would be reluctant to ask that someone who ought not to

have a dog in this fight be incarcerated, a monetary sanction should be imposed only after the

Court is satisfied that the funds that would be used to pay it would be Miss Furman's own and not Mr. Gushlak's (directly or indirectly).  That is so both because using someone else's funds to pay a sanction would not have any coercive effect and additionally, using Mr. Gushlak's funds, or being reimbursed by him, would again work a hardship on Mrs. Gushlak were the sanction paid with what is potentially Mrs. Gushlak's own funds.  Thus, before imposing a monetary sanction, we would ask that Miss Furman be required to disclose the source or sources of any such payment and to commit under oath that Mr. Gushlak is not directly or indirectly the actual source of such funds and will not reimburse her.  Otherwise, any such condition cannot possibly have any coercive effect since it is "no skin off her back".  Should the Court be unable to ascertain that the money is actually coming from Miss Furman, then incarceration, or the threat thereof, ought to coerce her to comply with the Order.

For these reasons, any Report and Recommendation of Magistrate Judge Orenstein that Mr. Gushlak and Miss Furman be adjudged in contempt should be accepted.  Each should be sanctioned in a manner likely both to compensate Mrs. Gushlak from the harm caused by the unjustifiable refusal to comply with the Court's orders and the multiplication of legal costs in getting them to do so as well as to coerce them to comply with the orders.


## POINT TWO

### THE RECOMMENDATION TO DENY THE RULE 60 MOTION
### TO RECONSIDER THE RULING REQUIRING THE PARTIES
### TO PROVIDE DISCOVERY SHOULD BE ADOPTED


### Introduction

In the motions this Court referred to Magistrate Judge Orenstein, movants claimed to have learned that evidence presented to the Court in support of the §1782 Petition was "stolen"

from LIME, the Cayman Islands' telephone company. From that, they argued that the Court was fraudulently induced into its Decision authorizing service of the subpoenas and therefore must reconsider its decision; hold hearings to determine the factual basis of the various assertions made in the Petition; require Mrs. Gushlak to "return" the "stolen" document; and all manner of other things. Magistrate Judge Orenstein recognized that the argument was both factually and legally ludicrous: "I . . . conclude that the Respondents' allegations that Applicant presented stolen information to the court in her reply papers is unfounded and provides no basis for relief". R&R at 15.

Movants have now supplemented their submission on this point as part of their objections in an effort to scaffold their claim. As argued below, the new material not only contradicts the argument they initially made but corroborates the Magistrate Judge's view that by their motion they implicitly confirm the truth of the claims made by Mrs. Gushlak. For those reasons, Magistrate Judge Orenstein's recommendations that the Rule 60 motion should be denied should be adopted.

## A. The Relevant Considerations in the Current Posture

It is important in considering the objections to remember what movants entirely ignore – that pursuant to Fed.R.Civ.P. 62.1, this Court has limited options with respect to a Rule 60 motion. Under that Rule, where, as here, an appeal "has been docketed and is pending", the district court has only three options, and granting the relief sought here is not any of them. When such motion is filed, a district court may only:

> (1) defer considering the motion;
>
> (2) deny the motion; or
>
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a

substantial issue.

In other words, the Court has no authority to hold a hearing, grant the motion, or consider any of the other grab bag of relief that movants seek. *Selletti v. Carey,* 173 F.3d 104, 109 (2d Cir. 1999) (*citing Toliver v. County of Sullivan,* 957 F.2d 47, 49 (2d Cir. 1992) ("during pendency of appeal district court may entertain and deny Rule 60(b) motion, but if district court is inclined to grant the motion, remand from court of appeals must be obtained").

Second, as we now come to recognize as the characteristic common to all Gushlak-Furman filings, the reader is tasked with hacking through a mishmash of arguments just to understand who is seeking what and why. Though one would not know it from reading the motion or the objections to the R&R, the Rule 60 motion has **nothing whatever** to do with Myron Gushlak, and therefore could not provide any relief to him even if it had any merit. That is so because the issue concerns the assertion made in Mrs. Gushlak's papers in reply to **Miss Furman's** opposition to the Petition, not to any motion made by Mr. Gushlak. Not only did Mr. Gushlak not participate in that motion, but he contends that at the time that motion was filed, since he had already filed a notice of appeal, the Court had no authority to act on this matter with respect to him. Moreover, even if he had participated in that motion, the claim itself has nothing to do with him, as we see below. It has only to do with whether there was a basis for seeking discovery from Miss Furman.

## B. **Why Movants' Arguments Cannot Provide Any Relief**

The claim at issue before the Magistrate Judge was an assertion in Mrs. Gushlak's reply in further support of her petition (filed after the Court allowed service of a subpoena on Mr. Gushlak, which subpoena Mr. Gushlak never moved to quash) that the deposition was not intended to harass Miss Furman but that counsel had a good faith belief to ask Miss Furman at

deposition about a number of relevant issues, including that "upon Mr. Gushlak's incarceration [she] was in frequent contact with the Swiss money managers who also control assets that are presumptively marital but as to which we can get no information". Reich Decl., dated July 8, 2011, at ¶5 [Dkt. #29]. The assertion was made to provide still more rebuttal to the patently false assertion by Miss Furman that she has no knowledge of any of the financial dealings of Mr. Gushlak and therefore should not have to be made to suffer the ignominy of sitting for a deposition.

Miss Furman's argument is that the only way Mrs. Gushlak could know that such statement is true is that she saw the bill listing calls to the bankers that only Miss Furman could have made,[3] and that Mrs. Gushlak obtained the bill wrongfully.

As Magistrate Judge Orenstein readily recognized, the argument necessarily admits that the calls were made, that is, that Miss Furman is indeed Mr. Gushlak's conduit to the Swiss bankers. R&R at 15. But as he also recognized, since the bill initially at issue was from September 2010, at a time when Mr. Gushlak was at liberty, did not need a conduit and presumably made any such calls listed on that bill himself, whether Mrs. Gushlak received such bill wrongfully or otherwise makes no difference. Myron Gushlak was incarcerated in December 2010. So, it is not possible that calls reflected on a September 2010 phone bill could be the basis for any assertions about what occurred in or after December 2010. *See id.*

Of course, the far larger problem for Miss Furman is that she has not any evidence that even if the bill was in fact given to Mrs. Gushlak, that Mrs. Gushlak engaged in any wrongdoing whatever in order to obtain it. That Miss Hayles may have violated LIME policy has no bearing, because we simply cannot find anything in the sequence of events alleged by the telephone

---

[3] This implicit confirmation that Miss Furman did in fact make calls to the Swiss bankers is of course one of the bases for asserting that taking discovery of her is only for the purpose of harassment and not to obtain relevant information as to the whereabouts of the hidden assets.

company employee, Sasha Hayles, that points to any wrongful conduct *by Mrs. Gushlak* alleged

to have induced Miss Hayles to provide the bill.  Despite Mr. Rosner's sworn assertion that Mrs.

Gushlak "convinced the employee to steal . . . private telephone records" (Rosner Decl. ¶4), [4] that

is nowhere borne out by the account of events relayed by Miss Hayles.  According to Miss

Hayles, she provided Mrs. Gushlak with the September 2010 bill because Mrs. Gushlak

"persisting in asking me for [it]".  Hayles Decl. ¶8.  There is **no** contention that Mrs. Gushlak

offered the woman anything of value to violate her duties to her employer and **no** contention that

Mrs. Gushlak gave her anything to violate her duties to her employer – **none**.  Nor does Miss

Hayles contend that she ever told Mrs. Gushlak that providing any records would be a violation

of Miss Hayles' duties to her employer.  So, even if the events set out by Miss Hayles were true

they do not support the conclusion that movants insist the Court draw – that Mrs. Gushlak did

anything wrongful to obtain information.

      Movants Furman now supplement the filing with a statement from LIME which they

claims shows that Mrs. Gushlak also obtained other bills from Miss Hayles, including a bill

covering a period after Mr. Gushlak went to jail.  **Noticeably absent is any claim from Miss**

**Hayles that she ever gave the bill to Mrs. Gushlak**, or any explanation for the obvious material

contradiction between Miss Hayles' prior sworn statement that she obtained only the September

bill and that is the one she gave to Mrs. Gushlak, and the new information.  Nor, critically, do

movants supplement their submissions to cover the gaping flaw in the analysis – that Mrs.

Gushlak allegedly wrongfully induced the actions of Miss Hayles.

      It is of course quite obvious why this "new" information was never submitted to

Magistrate Judge Orenstein – because it is entirely contradicted by Sasha Hayles.  While these

---

[4] References to the Declaration of Brian Rosner, dated October 4, 2011, submitted in support of the
motion of Mr. Gushlak and Miss Furman, are designated "Rosner Decl. __".  The Declaration of Miss
Hayles is attached to the Rosner Decl.

other bills may have been accessed, Miss Hayles quite clearly does not claim that she gave them to Mrs. Gushlak.  And, if she now were to claim she did, such claim would be irreconcilable with the prior sworn statement.

And of course, fatal to the entire creaky argument is again any evidence that even if the bills were given to Mrs. Gushlak, Mrs. Gushlak unlawfully induced such action.  In fact, the records now submitted to the Court show phone records with a jumble of inscrutable subscriber data that includes Mrs. Gushlak as an owner of multiple phone accounts.

The question never answered by movants, of course, is what is the legal significance of their claims.  Even if Mrs. Gushlak had obtained the records, as Magistrate Judge Orenstein was prepared to assume was so for purposes of the R&R (at 15), and even if she had done so "wrongfully", the information contained therein is presumably true.  Thus, movants are in the rather extraordinary posture of arguing that Mrs. Gushlak defrauded this Court by providing truthful information.[5]

Moreover, movants nowhere even argue that any such documents could not provide a good faith basis for questioning Miss Furman at a deposition.  A "good faith basis" for a line of questioning means that there is a good faith basis to believe that the question may lead to the discovery of relevant evidence.  It has nothing whatever to do with how the questioner came to acquire the information.  Certainly, we find no legal argument by movants for the proposition that a court asked to entertain a discovery application is required to test the means by which counsel comes to assert he or she has a basis for an intended line of questioning.  Moreover, even

---

[5] For this reason we are mystified by movants' provision of the Cayman travel records that confirm what Mrs. Gushlak asserted about Miss Furman's erratic and infrequent travel there.  We can only assume this is intended as another example of the Court having been "defrauded" by now corroborated information – information that again puts the lie to the previous sworn assertions of Miss Furman.

if there were, as we demonstrate in the next section, they never come close to meeting the standards for reconsideration on the basis of fraud, which is their burden.

In deciding an application under §1782, and as this Court recognized in its August 17, 2011, Decision granting the Application as to Miss Furman and Mr. Lubin, district courts are instructed to "avoid undertaking 'an extensive examination of foreign law' that would likely lead to a 'superficial' ruling based on 'a battle-by affidavit of international legal experts'", *quoting In re Application of Euromepa S.A.*, 51 F.3d 1095, 1099 (2d Cir. 1995). Instead, as this Court noted, "courts should err on the side of ordering discovery, since foreign courts can easily disregard material they do not wish to consider". Decision 8/17/11 at 7.

As if this were not entirely clear, a decision of the Second Circuit issued March 6, 2012, made it 100 percent so. In *Anselm Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 2012 U.S. App. LEXIS 4719 (2d Cir. March 6, 2012), the Second Circuit reversed a district court's quashing of a subpoena issued pursuant to an *ex parte* application under §1782. The subpoena was quashed because the district court questioned whether the foreign court would admit the evidence sought. The Second Circuit determined that the district court's decision was based upon an erroneous reading of the applicable law: Not only is there no requirement that the applicant demonstrate that the evidence is admissible in the foreign proceeding, but the inquiry itself is a foray into foreign law that **a district court is not permitted to make**. As the Second Circuit said, "requiring a court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such 'comparisons of that order are fraught with danger'". 2012 U.S. App. LEXIS at *16, *quoting Intel,* 542 U.S. at 163.

Yet, entanglement in interpreting foreign laws is precisely what the motion asks – for the Court to determine whether Mrs. Gushlak obtained a September 2010 telephone bill from the

Cayman telephone company, or for any other period, and if she did, the circumstances under which she did, specifically, whether (*if* she obtained it) doing so was wrongful, and, if it was, what Cayman law provides in such circumstances. The Court is also asked to determine whether Mrs. Gushlak obtained the travel records of Miss Furman, and if she did, whether that is a violation of Cayman law. How in the world is this Court to do that without entangling itself in foreign law? By engaging in the very same examination of foreign law that the Second Circuit not only counsels against, but says is not permitted as a matter of law.

Finally, movants appear to believe that this is an equitable action and therefore Mrs. Gushlak may be barred by her "unclean hands". The argument is simply wrong.

First, this is not an action in equity as to which the doctrine could apply. An equitable action seeks to enforce good faith in defendants. *See* 11A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil 2d § 2946, at 108 (1995). But Mrs. Gushlak is not seeking "justice" and is not asking the Court to require the witnesses to "do the right thing". The application is made pursuant to a statutory provision that gives foreign litigants the opportunity to obtain evidence for use in a foreign proceeding. If Mrs. Gushlak "wins" here, all she wins is the chance to provide relevant evidence to the Cayman Court. If the Cayman Court acts "fairly" it will allocate the parties' resources pursuant to Cayman law.

Second, even if this were an equitable action, the doctrine of unclean hands is inapplicable unless "the party seeking to invoke the doctrine was injured by the alleged wrongful conduct" and said conduct has "immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation". *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 U.S. Dist. LEXIS 14974 (S.D.N.Y. Feb. 6, 2012) (internal citations omitted). Here, there is no relation between the alleged wrongful conduct and the relief. The documentary evidence

submitted in support of the initial Petition is more than adequate to meet the extraordinarily

modest standard for showing that discovery from a witness may lead to admissible evidence.

Moreover, to the extent that the alleged "wrongful conduct" has induced movants now to admit

that Miss Furman does indeed have relevant evidence in her possession, justice has been served.

Finally, even if the Court were to consider Mrs. Gushlak's alleged "unclean hands", a

court may weigh the unconscionable acts of the party asserting "unclean hands" to deny relief on

that basis.  The doctrine of unclean hands also "may be relaxed if defendant has been guilty of

misconduct that is more unconscionable than that committed by plaintiff." *Dunlop-McCullen v.

Local 1-S*, 149 F.3d 85, 90 (2d Cir. 1998) (internal citations omitted).  And as Mr. Gushlak well

knows, even bad guys get discovery.[6]

With this review of the applicable facts and limits on the inquiry to be made, we review

the motion under applicable Rule 60 law.

## C.  The Legal Standard for Granting Relief Under Fed.R.Civ. P. 60

Rule 60(b) permits the court to provide relief based on any of six criteria: (1) mistake,

inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud . . .,

misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the

judgment has been satisfied . . . or is no longer equitable that the judgment should have

prospective application; or (6) any other reason justifying relief from the operation of the

judgment. *See Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78, 84 (S.D.N.Y. 2003).

---

[6]  Nor, as movants assert with no evident irony, is there a test for litigants by which each must demonstrate not only that he is legally entitled to prevail, but he is morally worthy of doing so.  Indeed, were that so, one would hope the Court would consider that Mr. Gushlak's endless resistance to providing discovery here is in service to the cause of assuring that the assets he unlawfully hid from this Court in connection with the criminal matter will stay hidden from his wife, as well.

The disposition of a Rule 60(b) motion rests within "the sound discretion of the District Court." *Tyger v. Air Line Pilots Ass'n, Int'l*, 2007 U.S. Dist. LEXIS 16057 at \*5 (E.D.N.Y. Mar. 7, 2007) (*citing Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd* 501 U.S. 115 (1991)). Motions for relief under Rule 60(b) are disfavored and "is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) ("Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances").

**D. <u>Movants Fail to Raise an Issue Under Rule 60</u>**

The two prongs under which movants seem to seek relief are (2), on the basis of newly discovered evidence, and (3), fraud.  Under neither can they prevail.

A party moving for relief or a new trial under Rule 60(b)(2) on the grounds of newly discovered evidence, faces "an onerous standard." *United States v. Int'l Bhd. of Teamsters, supra,* 247 F.3d at 392.  Movant must show (1) that the newly discovered evidence existed at the time of the proceeding; (2) movant was justifiably ignorant of the evidence because it could not previously have been discovered despite exercising due diligence; (3) the evidence is admissible and would have likely changed the outcome of the proceeding; and (4) the evidence is not "merely cumulative or impeaching". *Id.; SEC v. United States Envtl., Inc.*, 2004 U.S. Dist. LEXIS 20271 at \*8 (S.D.N.Y. Oct. 7, 2004).

Here, as we argue above, it is not possible to show that the "newly discovered evidence" could possibly have a material impact on the outcome because, quite aside from the fact that the September 2010 bill cannot be relevant to what occurred in December 2010 and beyond, even if Mrs. Gushlak did receive the later bills – of which there is no evidence - the alleged circumstances of its receipt have no bearing on the truth of its contents.  As noted above,

Magistrate Judge Orenstein recognized that the Gushlak-Furman argument implicitly concedes that the bills for the relevant time period confirm that Miss Furman was indeed in contact with the Swiss bankers once Mr. Gushlak was incarcerated.  R&R at 15.  And, if there were any remaining doubt, the fact that they clearly have the bills in their possession but chose not to submit them to the Court, nails that coffin shut.

Of course, if such bills were relevant and were at some point offered at trial, in the Cayman Islands, the circumstances of its receipt might be relevant to its admissibility.  But the circumstances of its alleged receipt have no relevance to whether it could provide a good faith basis for the assertion that the calls were made.  None.  As such, it cannot "likely have changed the outcome of the proceeding".

As to the claim of fraud under Rule 60(b)(3), a "party seeking relief pursuant to Rule 60(b)(3) must establish by clear and convincing evidence that the opposing party engaged in fraud or other misconduct".  *Defazio v. Wallis*, 500 F. Supp. 2d 197, 200 (E.D.N.Y. 2007), *citing Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989).  Moreover, to prevail on a Rule 60(b)(3) motion, a movant "must show that the conduct complained of prevented the moving party from fully and fairly presenting his case."  *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 176 (2d Cir. 2004).  These same principles apply when a movant seeks to set aside a judgment on the basis of fraud on the court.  *See Davenport Recycling Associates v. C.I.R.*, 220 F.3d 1255, 1262 (11th Cir. 2000) (". . .fraud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision, preventing the opposing party from fully and fairly presenting his case") (quotations omitted).

But there has been not even a plausible allegation of fraud on the Court.  At the time the assertion was made, whatever the basis, Miss Furman knew whether it was true.  And at no point has she ever denied it.  Thus, whatever the basis for the assertion, if the bill shows the calls, there is a good faith basis for the assertion.  How any bill was acquired, and specifically, the legality or illegality thereof, and the consequences that flow therefrom, is a matter of Cayman law.  The claim of fraud has nothing to do with the truth of the assertion.  Thus, even if the events occurred in the way movants claim, they have not even alleged a scenario in which this Court was defrauded.

In sum, neither factually nor legally do the events depicted in the moving papers provide the basis for a reconsideration of the discovery orders of either Myron Gushlak, to whom the allegedly purloined information does not even colorably relate, or Miss Furman.   As such, there is no basis for reconsideration of the decision and the motion should be denied.


### POINT THREE

### THE RECOMMENDATION THAT NO STAY PENDING APPEAL SHOULD BE ALLOWED SHOULD BE ADOPTED

Not surprisingly, Mr. Gushlak and Miss Furman seek a stay of the discovery orders.  Quite aside from the fact that they failed to justify it under the applicable standards, Magistrate Judge Orenstein points out that the stay they seek is not of the decisions they are appealing.  And thus, even if they were granted a stay it would not affect their obligation to comply with the subpoenas that neither of them moved to quash.  R&R at 6.  Nevertheless, Magistrate Judge Orenstein conducted a thorough analysis of the applicable law as if they had not waived their rights to quash the subpoenas.  As with the argument on why they should not be held in

contempt, they raise no new arguments from those raised and considered by the Magistrate

Judge.  Where a party's objections "simply reiterate original arguments, the district court reviews

the Report and Recommendation for clear error." *Pineda v. Masonry Constr., Inc.*, 2011 U.S.

Dist. LEXIS 132130, 4-6 (S.D.N.Y. Nov. 15, 2011).  Gushlak and Furman cannot and do not

meet that standard.  We repeat the argument submitted to Magistrate Judge Orenstein.

## The Legal Standard for Granting a Stay Pending Appeal

To determine whether to grant a stay of all proceedings pending appeal, a court considers

whether: (1) the applicant will be irreparably harmed absent a stay; (2) the issuance of a stay will

substantially injure the other parties interested in the proceedings; (3) the stay is in the public

interest; and (4) the stay applicant has demonstrated a sufficient likelihood of successfully

appealing the order under review.  *In re World Trade Center Disaster Site Litigation*, 503 F.3d

167, 170 (2d Cir. 2007); *V.S. v. Muhammad,* 2009 U.S. Dist. LEXIS 28150 at \*2 (E.D.N.Y.

April 3, 2009) (Irizarry, J.).  These factors are interrelated, such that "more of one excuses less of

the other." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (citation and internal quotation

marks omitted). Thus, "[t]he probability of success that must be demonstrated is inversely

proportional to the amount of irreparable injury plaintiff will suffer absent the stay." *Id.*; *United

States v. N.Y. City Bd. of Educ.*, 620 F. Supp. 2d 413, 416 (E.D.N.Y. 2009) (Block, C.J.); *V.S. v.

Muhammad*, 2008 U.S. Dist. LEXIS 96099 at \*10 (E.D.N.Y. Nov. 24, 2008) (Orenstein, M.J.)

(extent to which a party seeking a stay must demonstrate any one factor weighs in its favor

depends on the extent to which the other three factors favor a stay).

Neither Mr. Gushlak nor Miss Furman demonstrates that a stay is appropriate.

**A. Can either movant show that he or she will be irreparably harmed absent a stay?**

As the Supreme Court has held, ". . . the key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

To show "irreparable harm", then, movants must show that any harm cannot be repaired. But neither witness can show that here.  First and foremost, the principal line of defense against the discovery sought by the §1782 action has been that the discovery is duplicative of discovery sought in the Cayman proceeding.  Indeed, the witnesses have argued that discovery there is moving along,[7] with the implication that nothing sought here will not ultimately be produced there.  Miss Furman has even taken, and continues to take, the position that she will make herself available in the Caymans for discovery.

Given that both witnesses have repeatedly sought to avoid discovery here by a claim that the discovery will be provided elsewhere, it is simply not possible to conclude that taking the discovery here, rather than in Cayman, or indeed, also in Cayman, somehow would cause irreparable harm.  There is nothing to be repaired, other than, the "money, time and energy necessarily expended in the absence of a stay" – something the Supreme Court has said is not enough.

Moreover, let us not lose sight of what discovery is being sought here: the whereabouts of the assets that Mr. Gushlak has secreted around the world.  Mr. Gushlak, of course, claims that he has fully disclosed his assets and there is nothing more to disclose.  Indeed, he has repeatedly,

---

[7] An entirely erroneous claim, to be sure.

with each successive financial disclosure form filed in connection with his sentencing in this Court, purportedly truthfully disclosed.  As such, it is difficult to understand how he can maintain that having to disclose his assets, again, would cause "irreparable harm".

It is also difficult to take seriously his contention that the discovery would invade his "constitutionally protected zone of privacy in seeking private financial records".  Mr. Gushlak is a plaintiff in a divorce action.  Without delving into the details of Cayman law, it is difficult to imagine that the finances of a plaintiff in a divorce action are off limits.  Moreover, aside from being a plaintiff in a divorce action, he was and remains a criminal defendant who was required to disclose fully his "private financial records".   Having to disclose them again (and perhaps now, truthfully) will not cause a harm that the law should recognize, let alone protect against.

As to Miss Furman, nothing is sought from Miss Furman that is personal to her; it is the records reflecting her furtherance of the dealings of Mr. Gushlak that are called for.  Thus, to the extent there is a right of privacy, it is Mr. Gushlak's privacy that is at issue.  And he has no privacy interest to protect.  It is therefore impossible for Miss Furman to contend that she will be irreparably harmed, either.  She is a witness, not a party to any action.  Further, as noted above, she has claimed she will comply with discovery in Cayman.  So again, how can having to provide information here cause irreparable harm if she is prepared to provide it elsewhere?  As to her, she has entirely failed to put forth any way in which she will be irreparable harmed.  All she has to do is answer the questions truthfully and produce what responsive documents she has.

**B. Will the issuance of a stay substantially injure the other parties interested in the proceedings?**

The issuance of a stay here will substantially harm Mrs. Gushlak. The course of a civil appeal in the Second Circuit is nearly 18 months. [8] Though the briefs in the Gushlak appeal have been filed, no argument has been set. Only the opening brief in the Furman appeal has been filed. So, if there were a stay, once the movants' frivolous appeals are decided against them, Mrs. Gushlak would have had to wait at least two years from when she first filed the Petition to begin to get the discovery in support of her position in the Cayman litigation.[9] In the meantime, she is receiving no interim financial support, cannot get at the couple's assets, and has had to stand by while the apartment the couple own in Grand Cayman sits empty because Mr. Gushlak has instructed the Liechtenstein Trustee not to allow Mrs. Gushlak access to it. Nor can she get access to the cars, the boat, or anything else. Nor is the impact of the stalled Cayman action limited to Mrs. Gushlak. Mrs. Gushlak's son Eric cannot get the Liechtenstein Trustee to pay his school fees in light of the Cayman injunction. In fact, and this is what Mr. Gushlak hopes to accomplish by his appeal, is Mrs. Gushlak would have to bring the Cayman action to a close without the discovery. That is a real injury to her and other innocents.

So, on the one hand, neither Mr. Gushlak nor Miss Furman can show any legally cognizable harm that will befall them from provision of the discovery, yet Mrs. Gushlak will obviously suffer significant harm from the delay.

---

[8] According to the most recent statistics available, the median time from the filing of notice of appeal to its disposition, in all private civil appeals in the Second Circuit, is 17.6 months. *See* Chart, "Median Disposition, Notice of Appeal to Final Disposition for Year Ending September 30, 2009", Table 2, Figure 2, compiled by the Statistical Division of the Administrative Office of the United States Courts and available at http://www.ca2.uscourts.gov/annualreports.htm.

[9] Moreover, it is entirely obvious that we can expect at least one additional round of appeals here. Once Gushlak and Furman are held in contempt, we can all be confident that they will restart the appellate process, resetting the 18 month clock.

### C.  Is a stay in the public interest?

Granting a stay here is contrary to the public interest.  That is so because it entirely

frustrates the purposes of 28 U.S.C. §1782.  The statute is intended to "provid[e] efficient

assistance to participants in international litigation and encourage foreign countries by example

to provide similar assistance to our courts".  *Intel Corp. v. Advanced Micro Devices,* 542 U.S.

241, 252 (2004); *In re Application of Asher B. Edelman*, 295 F.3d 171, 181 (2d Cir. 2002); *see*

*also In re Application of Bank of Cyprus Public Co. Ltd.*, 2011 U.S. Dist. LEXIS 6082 at *5-6

(S.D.N.Y. Jan. 21, 2011).

Yet, these witnesses have sought to undermine the procedure by every possible sharp

practice.  Instead of providing the discovery, they have made argument after argument that has

no legal basis whatsoever, including opposing the application on the grounds that the Cayman

Court has not asked for the information and that Mrs. Gushlak has not exhausted her discovery

rights in Cayman, both of which have repeatedly been found to have no bearing whatever on

whether to grant an application.  They have also repeatedly ignored lawful orders of this Court,

insisting that this Court has no authority to enforce its own orders when unbroken precedent

holds otherwise.  Allowing a stay here, which would in effect terminate Mrs. Gushlak's ability to

obtain the assistance of United States courts in aid of the litigation in Cayman, mocks the statute,

mocks this Court, and mocks the notion of United States cooperation for the purpose of

encouraging foreign courts to assist American litigants abroad.

### D.  Have the movants demonstrated a sufficient likelihood of successfully appealing the order under review?

Movants have not, and cannot, show any likelihood of successfully appealing the Court's

orders.  Indeed, the appeals are entirely frivolous, without any legal basis whatever – as

Magistrate Judge Orenstein so asserts: "[Mr. Gushlak's] arguments are not persuasive (R&R at

30

9); "his argument is at best a distortion of the record and at worst a flat misstatement of fact" (*id.* at 10); "Furman likewise presents no argument that appear to have even a remote prospect of success on appeal". R&R at 11.

To be entitled to discovery under 28 U.S.C. §1782, an applicant must demonstrate that the petition meets three threshold legal qualifications, namely, that the witnesses are found within the district, that the discovery sought is in aid of a foreign proceeding, and that the applicant is an interested party in that proceeding. *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 2011 U.S. Dist. LEXIS 53905 at *8-9 (S.D.N.Y. May 20, 2011). None of the witnesses ever disputed that Mrs. Gushlak satisfied those mandatory criteria.

Instead, the witnesses took issue with how the Court should weigh the evidence against the discretionary criteria to be used by a court in exercising its discretion.

In order to prevail on appeal with respect to this Court's exercise of its discretion, movants will have to show that the Court abused its discretion in granting the discovery. Yet, no arguments that were made, or could be made, ever weighed against the grant of discovery here such that the grant of discovery could be deemed wrong as a matter of law. None. Moreover, he bases his appeal on the losing claim that it was wrongful to grant the application *ex parte*. Such applications are frequently granted *ex parte* (*see, e.g., In re Application of Asher B. Edelman*, 295 F.3d 171 (2d Cir. 2002)).[10] The vehicle for challenging the grant is a motion to quash. It is anticipated that the merits of Mr. Gushlak's appeal will be further eroded by the fact that he declined to litigate the merits of the application in the district court, though he was invited to file a motion to quash the subpoena. Decision 6/23/11 at n. 2. Gushlak argues long and hard (at Memo Points IV and V) that the R&R erroneously concluded that he was given an opportunity to

---

[10] *See also* a survey of recent developments in the area of 28 U.S.C. §1782, where the authors note in particular that they are frequently granted *ex parte*. "Recent Developments Under Section 1782", *N.Y.L.J.*, October 13, 2011, at 3.

31

be heard on the merits.  His argument, while filled with non-debatable boilerplate concerning the right to a hearing in unrelated contexts, entirely ignores that §1782 jurisprudence allows an *ex parte* application to grant issuance of a subpoena followed by a motion to quash should one be warranted.[11]  In is simply indisputable, and therefore ignored by Gushlak, that district courts regularly entertain *ex parte* applications for discovery under §1782 and thereafter entertain challenges to the grant thereof, should one be warranted.  *See, e.g. In re Yukos Hydrocarbons Investments Ltd.*, Civil Action No. 5:09-MC-0078, 2009 U.S.Dist. LEXIS 121268 at *20 (N.D.N.Y. Dec. 30, 2009) (granting discovery *ex parte* but disallowing it upon consideration of motion to quash); *Aventis Pharma v. Wyeth,* Case No. M-19-70, 2009 U.S. Dist. LEXIS 105422 at *2 (S.D.N.Y. Nov. 6, 2009) (granting discovery *ex parte* but denying motion to compel); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.,* Case No. 3:09 MC 265, 2009 U.S. Dist. LEXIS 109492 at *16 n.9 (D. Conn. Aug. 27, 2009) (granting discovery *ex parte* but noting "Urknafta filed this request *ex parte*; in response to this Order [citation omitted], SPC will have the opportunity to address any issues it may have regarding the proposed discovery"); *In re Application of Apotex Inc. for Order to Obtain Discovery for Use in Action Pending Before the Federal Court in Canada (Case No. T-161-07),* Misc. No. M12-160, 2008 U.S. Dist. LEXIS 109420 at *1 (S.D.N.Y. Dec. 30, 2008)  (granting discovery *ex parte* but granting motion to quash subpoena);  *In re Godfrey,* 526 F. Supp. 2d 417, 418 (S.D.N.Y. 2007) (granting discovery *ex parte* and quashing subpoenas on motion); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 189 (S.D.N.Y. 2006) (granting discovery *ex parte* and vacating the discovery order upon consideration of a motion to quash);  *In re Imanagement, Ltd.*, Case No. Misc. 05-89, 2005 U.S. Dist. LEXIS 17025 at *1, 23 (E.D.N.Y. Aug. 16, 2005) (granting discovery *ex parte* and

---

[11] Including the most recent Second Circuit decision in *Anselm Brandi-Dohrn*.  There, the district court initially allowed subpoenas to be issued pursuant to an ex parte application.  That was followed by a motion to quash, which was granted. 2012 U.S. App. LEXIS 4719 at *4-5.

affirming upon consideration of motion to vacate the order). The simple fact is, Mr. Gushlak declined, for strategic reasons, to move to quash and get his plenary hearing.

The determination that the §1782 Petition should be granted was within the discretion of this Court which was exercised appropriately. Neither movant has, or could, show that the grant is likely to be overturned on appeal.

**E. After consideration of all factors, should a stay be granted?**

As noted above, a court considering a stay may weigh the factors so that if one weighs heavily in favor of a stay, that may balance out a failure to satisfy another prong. *V.S. v. Muhammad, supra,* 2008 U.S. Dist. LEXIS 96099 at *10 (E.D.N.Y. Nov. 24, 2008) (Orenstein, M.J.). But here, there is nothing weighing against (i) the harm that a stay will cause Mrs. Gushlak; (ii) movants' inability to show that compliance with the orders will harm them, let alone irreparably; (iii) that there is any likelihood of success on the merits of the appeals; or that (iv) the public is not dis-served by a stay here. Each of these factors weighs against a stay.

Indeed, the Court should not ignore the fact that, despite it being beyond dispute that in order to avoid complying with the Court's orders movants are required to obtain a stay, they waited, in Mr. Gushlak's case, four months, to do so. It is entirely possible that each litigation step has been taken not because the law justifies it but to delay. The goal is to reach a point where Mrs. Gushlak will come away with nothing, not because she will have failed to obtain an order requiring disclosure, but because it will either become too expensive, or just take too long, to obtain any benefit therefrom. In its final consideration, the Court should take into account the game playing in which these litigants are engaged.

**Conclusion**

For all of these reasons, this Court should adopt in its entirety the Report and Recommendation of Magistrate Judge Orenstein that Mr. Gushlak and Miss Furman be held in contempt for their refusal to obey this Court's orders and impose an appropriate sanction geared to coercing them into complying; deny a stay; and deny the Rule 60(b) motion.  The Court should also consider at the appropriate time entertaining an application for sanctions against movants for the extraordinary amount of time and money that their maneuvers are costing both Mrs. Gushlak and this Court.

March 13, 2012

Respectfully submitted,

GERALD B. LEFCOURT, P.C.


By: _____/s/_____
　　　Gerald B. Lefcourt
　　　Sheryl E. Reich

148 East 78th Street
New York, N.Y. 10075
(212) 737-0400
(212) 988-6192
Reich@Lefcourtlaw.com
*Attorneys for Applicant Debbie Gushlak*
