UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
*In re*                                           Case No. 11-MC-218-NGG
APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782
FOR THE TAKING OF DISCOVERY
FOR USE IN A FOREIGN PROCEEDING
-------------------------------------X

### REPLY IN FURTHER SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE ORENSTEIN'S JANUARY 30, 2012 REPORT & RECOMMENDATION

| | |
|---|---|
| LAW OFFICES OF ALAN S. FUTERFAS | ROSNER & NAPIERALA, LLP |
| Alan S. Futerfas (ASF-2686) | Brian Rosner (BR-4306) |
| 565 Fifth Avenue, 7th Fl. | 26 Broadway, 22nd Fl. |
| New York, NY 10017 | New York, NY 10004 |
| Telephone: (212) 684-8400 | Telephone: (212) 785-2577 |
| Facsimile:  (212) 684-5259 | Facsimile:  (212) 785-5203 |

*Attorneys for Myron Gushlak and Yelena Furman*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................i

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT ...........................................................................................................1

    The Opposition Misstates the Procedural Law and Posture ..........................1

    The Opposition's Positions Regarding Potential Sanctions are
    Without Basis ................................................................................................3

    The Opposition Distorts and Understates the True Extent and
    Significance of Debbie Gushlak's Wrongdoing ............................................6

    The Opposition's Argument that No Stay Should Issue Relies on
    Illogical and Inaccurate Propositions ...........................................................10

    The Opposition's Omissions are Telling ......................................................12

CONCLUSION .......................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                                                                                                 **Page(s)**

*Am. Town Ctr. v. Hall 83 Assocs.*,
    912 F.2d 104 (6th Cir. 1990) ............................................................................4

*Anselm Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    2012 WL 695541 (2d Cir. March 6, 2012) ................................................*passim*

*Barr v. United States*,
    1995 U.S. Dist. LEXIS 3600 (E.D.N.Y. March 9, 1995) ......................................4

*Barr v. United States*,
    67 F.3d 469 (2d Cir. 1995) ...................................................................................4

*Brown v. Braddick*,
    595 F.2d 961 (5th Cir. 1979) ................................................................................5

*Glynn v. EDO Corp.*,
    2010 WL 3294347 (D. Md. Aug. 20, 2010) .........................................................2

*Mohammed v. Reno*,
    309 F.3d 95 (2d Cir. 1999) .............................................................................10, 11

*N.L.R.B. v. Cincinnati Bronze, Inc.*,
    829 F.2d 585 (6th Cir. 1987) .............................................................................4, 5

*NXIVM Corp. v. Bouchey*,
    2011 WL 5080322 (N.D.N.Y. Oct. 24, 2011) ...................................................3, 4

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004) .................................................................................3

*Petersen v. Vallenzano*,
    1996 WL 252376 (S.D.N.Y. May 13, 1996) ........................................................4

*Sekaquaptewa v. MacDonald*,
    544 F.2d 396 (9th Cir. 1976) ................................................................................5

*United States v. Schulz,*
    2008 WL 2626567 (N.D.N.Y. Apr. 28, 2008) ...................................................4

## STATUTES AND RULES

28 U.S.C. Sec. 636 ....................................................................................................3

28 U.S.C. Sec. 1782 ...........................................................................................*passim*

Fed. R. Civ. P. Rule 45 ..........................................................................................12

Fed. R. Civ. P. Rule 72 ...........................................................................................2

## PRELIMINARY STATEMENT

Debbie Gushlak's characterization of this litigation as a "saga" in her Memorandum of Law in Opposition to Objections to the Report and Recommendation of Magistrate Judge Orenstein (the "Opposition") is truly apt. But it is a saga all of her own making. In effectively conceding through silence that she stole Cayman Immigration records, Debbie Gushlak's "saga" stems from her own misguided decision to bring this duplicative and vexatious Application and engage in a plethora of criminal conduct in an attempt to support it with stolen telephone and travel records.

Ms. Furman and Mr. Gushlak ("Respondents") have already explained in detail in both their October 2011 filings as well as their Objections to the Report & Recommendation (the "Report") the bases in law why this Court: (1) does not have jurisdiction to hold Respondents in contempt when Respondents' appeals from final orders are pending in the Second Circuit; (2) if it nonetheless finds it has jurisdiction, should stay all proceedings pending Respondents' appeals; and (3) should hold an evidentiary hearing to determine the full extent of Debbie Gushlak's theft of Ms. Furman's records and appropriate sanctions. Rather than restate these bases, this reply addresses the various misstatements and omissions of law and fact in the Opposition.[1]

## ARGUMENT

### I. The Opposition Misstates the Procedural Law & Posture

The suggestion that Respondents' right to object to the January 31, 2012 Report and Recommendation is somehow not intact, see E.D.N.Y. Dkt. No. 11-mc-218 at entry dated March 13, 2012 (ECF doc. 86) (hereinafter "Opposition") at 1, is without support. The Report itself

---

[1] Respondents' filings to date are all hereby incorporated by reference and provide further legal and factual support for why the District Court should decline to follow the Report. These include Respondents' October 2011 filings (E.D.N.Y. Dkt. No. 11-mc-218 at entries dated October 4, 2011, October 17, 2011 and October 24, 2011 (ECF docs. 65-67, 70, 77)) as well as filings under seal on June 27, 2011, July 7, 2011 and July 22, 2011 (E.D.N.Y Dkt. No. 11-mc-218 at entries dated October 18, 2011 and October 20, 2011 (ECF docs. 72 & 74).

1

specifically sets forth that Respondents have a right to file objections thereto, cites the Federal Rule of Civil Procedure (Fed. R. Civ. P. 72(b)(2)) providing for that right, and directs Respondents to file their objections by February 16, 2012. *See* E.D.N.Y. Dkt. No. 11-mc-218 at entry dated January 31, 2012 (ECF doc. 82) (hereinafter "Report" or "Report and Recommendation") at 21. Additionally, the district court granted Respondents' motion for an extension of time within which to file their objections. *See* E.D.N.Y. Dkt. No. 11-mc-218 at entry dated February 1, 2012. It is clear that the Court agrees that Respondents have a right to object to the Report.

The Opposition also incorrectly opines that the district court should only review the Report for clear error. *See* Opposition at 5-6. Instead, it is appropriate for the district court to review the Report & Recommendation *de novo*. "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed R. Civ. P. 72(b)(3). Respondents have objected to each element of the Report by specific reference to factual misstatements and legal errors.

It is incorrect that the Rule 60 motion "has nothing whatever to do with Myron Gushlak." Opposition at 16. Respondents' motion brings to this Court's attention the new and continuously emerging evidence that the Application was granted based on illegally obtained evidence. Sanctions for this behavior include, but are not limited to, dismissal of the entire petition, both as to Ms. Furman and Mr. Gushlak. *See Glynn v. EDO Corp.*, 2010 WL 3294347, *3 (D. Md. Aug. 20, 2010). Moreover, the stated premise of this Application is to unearth allegedly secreted marital assets which Debbie Gushlak thinks are in Myron Gushlak's possession. The foreign dispute in conjunction with which this Court's assistance is sought is a divorce action pending between Debbie Gushlak and Myron Gushlak. This entire action, and all of the Cayman

2

investigations and domestic appeals and motions it has spawned, are "to do with" Myron Gushlak.

## II. The Opposition's Positions Regarding Potential Sanctions are Without Basis

First, the Opposition is incorrect that Respondents "make no new arguments with respect to" the Report's finding that this Court has jurisdiction to issue contempt sanctions despite the fact that Respondents have filed appeals from final orders. *See* Opposition at 6. The Objections to the Report (the "Objections") specifically highlight how the Report erred in misapprehending the distinction between cases when the enforcement at issue is with respect to discovery issues ancillary to the main dispute, and when the discovery order is in fact the resolution of the entire dispute. *See* E.D.N.Y. Dkt. No. 11-mc-218 at entry dated March 1, 2012 (ECF doc. 85) (hereinafter "Objections") at 23-25.

Second, the observation in the Opposition that a district court may hold a party in contempt for violating an order of a Magistrate Judge, *see* Opposition at 10, is without relevance. Magistrate Judge Orenstein has issued no order regarding a potential finding of contempt, nor has the district court authorized the Magistrate to do so. The Magistrate Judge has only recommended that such an order issue. There can be no finding of contempt unless "the order with which the contemnor failed to comply is clear and unambiguous." *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). No such order from the Magistrate exists. Moreover, the Magistrate did not certify facts that support a civil contempt finding, the sole role designated to a Magistrate Judge when a civil case is referred to a Magistrate without the parties' consent. *See* Federal Magistrates Act, 28 U.S.C. § 636(e)(6)(B)(iii); *see also NXIVM Corp. v. Bouchey*, 2011 WL 5080322, *3 - *4 (N.D.N.Y. Oct. 24, 2011) (explaining the limited role delegated to Magistrates pursuant to the

Federal Magistrate Act in the context of civil contempt requests when the case is not before the Magistrate on the parties' consent).

Third, the cases cited in the Opposition to support the assertion that this Court has jurisdiction to enforce compliance with the subpoenas by contempt sanctions, *see* Opposition at 8-9, are all distinguishable. The Opposition cites seven cases, three of Applicant's own choosing, and four which the Magistrate Judge relied on. They are addressed *seriatim*:

1. In *United States v. Schulz*, 2008 WL 2626567, at *2 (N.D.N.Y. Apr. 28, 2008), unlike this case, the Second Circuit had already ruled and found adversely to the party against whom contempt was sought in the district court. Here there has been no ruling by the Second Circuit on the appropriateness of the district court's decisions allowing discovery pursuant to § 1782.

2. In *Petersen v. Vallenzano*, 1996 WL 252376, at *1 (S.D.N.Y. May 13, 1996), the main action was to enforce a judgment; the court required the party from whom discovery was sought in that judgment enforcement action to provide the discovery despite having appealed from the order requiring it to do so. Most importantly, the discovery order was not the ultimate resolution of the main action, as it is in this and all § 1782 actions.

3. In *Barr v. United States,* 1995 U.S. Dist. LEXIS 3600 (E.D.N.Y. March 9, 1995), Judge Trager did direct plaintiff to answer defendants' post-judgment discovery requests. But those discovery requests (about which no details are provided in the case) and responses thereto were not the sum and substance of the entire action. Rather, it was a suit to hold Barr liable for tax penalties under I.R.C. §§ 6700, 6701 for promoting abusive tax shelters and aiding and abetting understatement of tax liability. *See Barr v. United States*, 67 F.3d 469 (2d Cir. 1995).

4. In *American Town Center v. Hall 83 Associates*, 912 F.2d 104 (6th Cir. 1990), the action which the district court took during the pendency of the appeal was not inextricably intertwined with the issue on appeal as a potential contempt finding is here.

5. In *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 586 (6th Cir. 1987), the issuance of the operative subpoena was not an appealable event, as it was issued as a matter of course by the NLRB without prior court approval in connection with pending civil litigation. The subpoena did not implicate the entirety of the unfair labor practice dispute and by the time the Sixth Circuit passed on whether contempt proceedings were jurisdictionally appropriate, it had already upheld an order directing compliance with the subpoena in a prior decision.

6. In *Sekaquaptewa v. MacDonald*, 544 F.2d 396 (9th Cir. 1976), as in *Cincinnati Bronze*, the legitimacy of the initial order, which the district court later took steps to enforce, was not in dispute when the court issued this decision. Additionally, if the district court's determination were reversed, clear remedies were available even if the appealed order was enforced while the appeal was pending. Here, if Respondents are forced to submit to depositions and provide private information while the legitimacy of this Court's decisions is under review, they have no remedy when the Second Circuit reverses the district court's decisions.

7. In *Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979), the subpoena at issue had been issued as a matter of course in connection with a pending patent interference proceeding pursuant to 35 U.S.C. § 24. The subpoena in *Brown* was an administrative action performed automatically on application, without a reviewable district court exercise of discretion like in the § 1782 context.

Respondents, of course, disagree with the whole premise that they should be subject to sanctions when they have taken the entirely appropriate step of appealing final order, and those appeals have vested jurisdiction over this action with the Second Circuit. However, particularly egregious is Applicant's assertion that she is entitled to her attorneys' fees as part of the requested sanctions. Opposition at 12. This entire duplicative and vexatious proceeding is of Applicant's own doing. She has made no showing that she cannot get the discovery from the Cayman court. She has committed crimes and stolen private information from two different institutions to support her Application here. Declining to provide any information about her criminal activity, Applicant has compelled Respondents to expend time and resources to uncover her extensive misconduct. Applicant's request for attorneys' fees is specious. If anything, attorneys' fees should be assessed against Debbie Gushlak for bringing this duplicative, unnecessary litigation and grossly corrupting the judicial process with evidence from her theft, impersonation, commercial bribery and obstruction of justice.

### III. The Opposition Distorts and Understates the True Extent and Significance of Debbie Gushlak's Wrongdoing

Contrary to the Opposition's assertions, *see* Opposition at 15, the additional evidence documenting Debbie Gushlak's theft of LIME records does not contradict, in any manner, the initial evidence presented by Respondents in their October 2011 filings. While Ms. Hayles does explicitly state that she had misappropriated the September 2010 LIME bill, she never indicated that this was the only bill which she (a) had provided to Debbie Gushlak or (b) accessed to provide Debbie Gushlak with information. *See* E.D.N.Y. Dkt. No. 11-mc-218 at entry dated October 4, 2011 (ECF doc. 67), Exhibit A, Affidavit of Sasha Hayles. Ms. Hayles described a clear pattern of contact with Debbie Gushlak over an extended period of time designed to obtain private telephone records. *See id.* Further, Ms. Hayles was recounting Debbie Gushlak's illegal contact from memory and only from the point at which Ms. Gushlak first sought the LIME phone records.

But the logic of Applicant's argument is classic "Catch-22." Respondents are criticized for not uncovering the full scope of Applicant's crimes where Applicant, who has full knowledge of these events, has failed to address or disclose her conduct and has consistently opposed Respondents' requests for an evidentiary hearing at which the full extent of Applicant's criminality can be revealed.

Nor could this supposed "contradiction" be the reason that the additional information from LIME was not presented to the Court in October 2011. *See* Opposition at 18-19. The information simply was not received from LIME until February 8, 2012. *See* E.D.N.Y. Dkt. No. 11-mc-218 at entry dated March 1, 2012 (ECF doc. 85), Declaration of James Kennedy, Exhibit C.

6

The Opposition is similarly incorrect that the "bill initially at issue was from September 2010." *Id.* at 17-19. This *post-hoc* delineation of the issue is a creation of Applicant; it has nothing to do with the papers Respondents filed. "At issue" was the fact that Debbie Gushlak has stolen Ms. Furman's telephone records, evidence of which included Ms. Hayles' affidavit, and which evidence called for a full evidentiary hearing at which the extent of the theft could be determined.

Additionally, it is undisputed that Applicant made representations regarding Ms. Furman's phone activity after November 18, 2010. Ms. Furman did not provide this information to Debbie Gushlak or her attorney. No plausible alternative explanation of access has been offered by Applicant in response to the considerable evidence that it was a result of theft. There has been no denial of theft by Debbie Gushlak, either in a sworn statement from her or her attorney.

The Opposition's suggestion that there is nothing to indicate "that Ms. Gushlak engaged in any wrongdoing whatever in order to obtain" the LIME bills, *id.* at 17, is frivolous. It is also grossly disingenuous. Neither Ms. Gushlak nor her counsel have denied by affidavit or declaration that Ms. Gushlak illegally obtained private phone records and used them in these proceedings.[2] To even suggest otherwise places counsel on the far side of the line imposing a duty of candor to the Court.

The LIME letters and Ms. Hayles' affidavit describe in detail the LIME theft and indicate that the information inappropriately obtained was given to Debbie Gushlak. Ms. Hayles' affidavit is clear that she and her husband were bribed with payments in exchange for Ms. Hayles' unlawful access and promised significant hush money to keep quiet about the LIME

---

[2] The same is also true with respect to clear proof of Debbie Gushlak's theft of Ms. Furman's Cayman Immigration records.

7

theft. *See* E.D.N.Y. Dkt. No. 11-mc-218 at entry dated October 4, 2011 (ECF doc. 67), Ex. A, Affidavit of Sasha Hayles, ¶¶ 6-14; E.D.N.Y. Dkt. No. 11-mc-218 at entry dated March 1, 2012 (ECF doc. 85), Declaration of James Kennedy, ¶ 5 & Exhibit C thereto. The LIME investigation and documentary proof of the accesses of Ms. Furman's private telephone records fully corroborate the theft, as does the timing of Debbie Gushlak's attorney's use of that information in filings to this Court. Ms. Hayles, a young mother with three children, lost her job at LIME as a result of her corruption by Debbie Gushlak.

Applicant's citation to the Second Circuit's decision in *Anselm Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 2012 WL 695541, *5 (2d Cir. March 6, 2012), is of no help to her in these proceedings. *Anselm* concerned whether a district court in deciding whether to grant a § 1782 Application should have to consider "the admissibility laws of the foreign jurisdiction" which "would require interpretation and analysis of foreign law" - an exercise that "can be fraught with danger."

A principal issue here is whether an Article III Court, presented with an Application seeking relief where the Applicant engaged in criminal conduct to obtain evidence and place it before that Court, should grant the relief sought thereby rewarding and encouraging criminal conduct by litigants. That issue – front and center in these proceedings – is nowhere present in *Anselm*. The related question is whether the Court should grant a § 1782 Application which is not only weak on its face but based on illegally obtained evidence. Neither question is addressed by *Anselm* and neither question requires an examination of "the admissibility laws" of the Grand Cayman courts. There can also be no doubt that *Anselm* does not alter the traditional *Intel* factors. Rather, the single issue in *Anselm* was whether the district court erred in construing the

"for use" prerequisite of § 1782 as requiring Applicant to demonstrate sought will be admitted in the foreign jurisdiction. *Anselm*, 2012 WL 695541, *7

The Opposition repeatedly suggests that Respondents have acquiesced to Applicant's characterizations of Ms. Furman's alleged connection to and knowledge of the purportedly marital and allegedly secreted assets. *See* Opposition at 2, 15, 17, 25. What has been made clear, and not denied, is that Debbie Gushlak stole private Cayman phone records and committed crimes against the Cayman Immigration authorities to obtain Ms. Furman's confidential travel information. There has been no admission, explicit or implicit, that the allegations regarding Ms. Furman in the Application are accurate or truthful.

Moreover, Applicant does not and cannot provide any support for her proposed new rule that courts should accept and use of evidence presented no matter how it is obtained. *See* Opposition at 19-20. Followed to its logical conclusion, potential litigants would be encouraged to commit all kinds of thefts and malfeasance knowing that their illegal efforts would be rewarded by the court's use of, and reliance on, the resulting fruits. As such a rule would be abhorrent, it is clearly not the law.

Rather, there can be no doubt on the vast record now before this Court that Applicant's unclean hands are a legally and factually supported basis to deny all of the relief Applicant requests, including holding Respondents in contempt, and to grant all of the relief that Respondents request, including dismissing the action. The suggestion that the claims before the Court do not arise "in equity," and so are unaffected by challenges based on Applicant's "unclean hands," is simply delusional. *See* Opposition at 21. To the contrary, Applicant's criminal activities in obtaining information submitted to this Court in this litigation is central to the

9

equitable relief sought by both sides. *See* Opposition at 21 ("[T]here is no relation between the alleged wrongful conduct and the relief.")

IV. **The Opposition's Argument that No Stay Should Issue Relies on Illogical and Inaccurate Propositions**

One of the showings a party seeking a stay pending appeal is required to make is of irreparable harm absent a stay. *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 1999). In suggesting that there is no irreparable harm at stake here, Applicant makes the specious argument that Respondents will not be harmed because they will have to turn over this information in the Cayman divorce action anyway. *See* Opposition at 27 - 28. This argument amounts to an admission that this Application is entirely duplicative, which in turn, evidences why the fourth *Intel* factor favors denial of the Application. *Anselm*, 2012 WL 695541, *4 ("Our cases acknowledge that a district court may deny the section 1782 application where it suspects that the discovery is being sought for the purposes of harassment.") *citing Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n. 6 (2d Cir.1995) ("[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or ***unreasonably seeks cumulative*** or irrelevant ***materials***, the court is free to deny the application *in toto*, just as it can if discovery was sought in bad faith in domestic litigation.") (emphasis added).

Debbie Gushlak's prejudice argument is premised in part on the averment that "[i]n the meantime, she is receiving no interim financial support, cannot get at the couple's assets, and has had to stand by while the apartment the couple owned in the Grand Cayman sits empty. . . Nor can she get access to the cars, the boat or anything else[.]" Opposition at 29. However, significant evidence, which remains un-rebutted, was put forth over four months ago, that Ms. Gushlak's cries of poverty are a farce. The allegedly impecunious Debbie Gushlak received

10

$10,000,000 from the Crossroad Trust over the last two or three years; owns a $2,000,000 unit at the Ritz in Cayman which she is presently renovating; owns a multi-million dollar unit at the Four Seasons in Whistler, Canada; has not disclosed the source and destination of approximately $20,000,000 in bank transfers; told Ms. Hayles that she used JDS Enterprises to transfer $4,000,000 to a secret account; possesses approximately $2,000,000 in diamonds; and had the financial wherewithal to recently invest $1,000,000 in a dubious penny stock. *See* Reply Memorandum of Law, E.D.N.Y. Dkt. No. 11-mc-218 at entry dated October 24, 2011 (ECF doc. 77), at 8-10 and annexed Declaration of Alan S. Futerfas and exhibit thereto and Declarations of Bryson Farril and Brian Rosner.

Debbie Gushlak's complaint that she is somehow being prejudiced because the "apartment the couple owned in the Grand Cayman sits empty," is particularly offensive. ***She owns an identical apartment in the same building which she is renovating***. In addition, the "empty" apartment is owned by the Trust – a fact she does not dispute in the Cayman proceedings. Moreover, the "apartment the couple owned" is considered home by Ryan Gushlak, Debbie Gushlak's biological son, who, for reasons made explicit to this Court in sealed filings, cannot and should not be forced to share a residence with a woman who has caused him so much pain. *See* Declarations of Ryan Gushlak dated July 7 & 22, 2011 (filed under seal).

Allowing a stay here will not "terminate Ms. Gushlak's ability to obtain the assistance of United States courts in aid of the litigation in Cayman." Opposition at 30. A stay will simply allow the Respondents to pursue their right to appeal the final orders entered against them to the Second Circuit.

Regarding the merits of Myron Gushlak's appeal, another inquiry relevant to the appropriateness of a stay pending appeal, *Mohammed v. Reno*, 309 F.3d 95 at 101, Applicant

11

argues that "district courts regularly entertain *ex parte* applications for discovery under 1782 and thereafter entertain challenges to the grants thereof" string-citing nine cases to support that proposition. *See* Opposition at 32-33. However, in none of the cases cited by Applicant in support of this proposition did the district court determine that it would not grant an application *ex parte*, provide specifically for an opportunity for the party from whom discovery was sought to respond, set a hearing date for the application, and then grant the application *ex parte* on the eve the opposition was due. Moreover, simply because some district courts, in the absence of the unusual procedure here, entertained merits arguments in opposition to a § 1782 application in the form of a motion to quash which is usually circumscribed by Fed R Civ P 45(c)(3), does not mean that Myron Gushlak could have known that the Court's eleventh hour invitation to move to quash was an invitation to completely re-litigate on the merits the decision the Court had just made.

V.     **The Opposition's Omissions are Telling**

In addition to the Opposition's deficiencies noted above are its significant omissions. These include:

- There is no response to the painstakingly detailed recount in the Objections of the improper and illegal access to Ms. Furman's Cayman Islands Department of Immigration private travel records, by means of impersonation, and the uncanny coincidence that the representation by Ms. Reich in her July 8, 2011 sworn Declaration in further Support of the Application (with no explanation as to the source of the information) regarding the number of days Ms. Furman had spent in Grand Cayman lines up precisely with the number of days Ms. Furman had been in Grand Cayman as of the date of the illegal access to her Immigration records, in late March 2011, not through the end of June 2011, as Ms. Reich represented.

- There is no denial to the clear evidence that Debbie Gushlak also committed crimes to steal confidential travel information form Cayman Immigration authorities.

- There is no response to the statement that Debbie Gushlak is currently residing in the Northeastern United States in apparent avoidance of the Grand Cayman criminal investigation into her theft of records from LIME.

- There has been no denial, in either her October 2011 filing, or in the Opposition, in a sworn statement from Debbie Gushlak or her attorney, that Debbie Gushlak did not corrupt LIME employee Sasha Hayles in order to improperly and illegally obtain Ms. Furman's records to support the Application.

- There has been no response to significant evidence that Ms. Gushlak is far from in need of "financial support," such that a stay pending appeal would prejudice her. *See* Reply Memorandum of Law, E.D.N.Y. Dkt. No. 11-mc-218 at entry dated October 24, 2011 (ECF doc. 77), at 8-10 and annexed Declaration of Alan S. Futerfas and exhibit thereto and Declarations of Bryson Farril and Brian Rosner.

This Court noted in its August 2011 decision the paucity of support for the factual averments made in support of the Application. *See* E.D.N.Y. Dkt. No. 11-mc-218 at entry dated August 17, 2011 (ECF doc. 51), pp. 3-5, 10. To date, Debbie Gushlak has still not offered a sworn statement in this action, either to support the various factual assertions made by her attorney on her behalf, or to rebut the significant and damning evidence that she has stolen evidence from LIME and the Cayman Immigration authorities and invaded Ms. Furman's privacy in order to support her wholly duplicative and vexatious Application.

13

## CONCLUSION

For the reasons detailed above and in the Objections, Respondents respectfully request that the Court decline to follow Magistrate Judge Orenstein's Report & Recommendation.

Dated: New York, New York
March 19, 2012

Respectfully submitted,

By: _____/s/_____
Alan S. Futerfas (ASF-2686)
Law Offices of Alan S. Futerfas
565 Fifth Avenue, 7th Fl.
New York, NY 10017
Telephone: (212) 684-8400

Brian Rosner (BR-4306)
Rosner & Napierala, LLP
26 Broadway – 22nd Fl.
New York, NY 10004-2442
Telephone: (212) 785-2577

*Counsel for Myron Gushlak and Yelena Furman*