UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IN RE APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782 FOR THE
TAKING OF DISCOVERY FOR USE IN A
FOREIGN PROCEEDING

**MEMORANDUM & ORDER**
**11-MC-218 (NGG)**

-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Respondents Myron Gushlak and Yelena Furman object to the report and recommendation ("R&R") of Magistrate Judge James Orenstein recommending that the court deny Respondents' various motions and adjudge Respondents in contempt of court. The court ADOPTS the R&R in its entirety. All of Respondents' motions are accordingly DENIED, and Applicant Debbie Gushlak's motion to hold Respondents in contempt is GRANTED. Myron Gushlak is ORDERED to pay $250 a day, every day, until he complies with the subpoena served upon him in June 2011. If he has not complied within thirty days, the court will, upon a motion by Debbie Gushlak, consider a more coercive sanction. Yelena Furman is ORDERED to pay $250 a day, every day, until she complies with the subpoena served upon her. Attorney Alan S. Futerfas is ORDERED to show cause within seven days of the issuance of this order why he should not be sanctioned for raising a frivolous argument in apparent contravention of Rule 11 of Federal Rules of Civil Procedure.

## BACKGROUND

      Respondents' objections to the R&R (Docket Entry # 85) represent the end of a tortured procedural path embarked upon by the parties over a year ago and accurately recounted in the R&R (see R&R (Docket Entry # 82) at 2-6). At root, however, the case simple. In April 2011,

1

Debbie Gushlak applied to the court, pursuant to 28 U.S.C. § 1782, for assistance in conducting discovery related to a foreign judicial proceeding. (See Docket Entry # 1.) Debbie Gushlak was getting divorced in the Cayman Islands and sought production of certain documents from, among other individuals, her husband Myron and his alleged girlfriend, Yelena Furman, who were residing in this District. On June 23, 2011, the court granted Debbie Gushlak's application ex parte as to Myron Gushlak (Docket Entry # 15), and Debbie Gushlak served a subpoena on him that day. Later, in August, after considering an opposition by Furman, the court also granted the application as to Furman, and she was duly served with a subpoena. (See Docket Entry # 51.)

Respondents did not comply with the terms of the subpoenas, nor did they move to quash the subpoenas. The Respondents decided instead to file notices of appeal (see Docket Entries ## 18 and 59) and produce nothing. In October 2011, Debbie Gushlak moved to have Respondents held in contempt of court for failing to respond to the subpoenas. (See Docket Entry # 69.) Respondents countered with a variety of motions and requests, chief among them that all proceedings be stayed pending resolution of their appeals.[1] To date, Respondents have still not provided the court-ordered discovery to Debbie Gushlak.

## DISCUSSION

Respondents request that the entire R&R be set aside and that Debbie Gushlak's application be dismissed. (Resp'ts' Mem of Law (Docket Entry # 85) at 1.) The court has, of course, long ago granted Debbie Gushlak's application (see Docket Entries ## 15 and 51) and will not reconsider that ruling. Here, the court reviews only Judge Orenstein's recommendations

---

[1] Respondents have also moved for: an evidentiary hearing into Debbie Gushlak's alleged wrongdoing; an order requiring Debbie Gushlak to return allegedly stolen phone records; and an order striking portions of one of Debbie Gushlak's memoranda of law. (See R&R at 1.)

on the motions that were before him—namely, Debbie Gushlak's motion to hold Respondents in contempt and Respondents' various cross-motions.

The court will review de novo those portions of the R&R to which Respondents have lodged specific objections, see 28 U.S.C. § 636(b)(1), but will review the remainder of the R&R for clear error, see U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-cv-2522 (JS) (WDW), 2012 U.S. Dist. LEXIS 29896, at *2 (E.D.N.Y. Mar. 6, 2012); Pall Corp. v. Entergris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008).[2]

Respondents make five specific objections. First, Respondents object to Judge Orenstein's denial of their motion for an evidentiary hearing regarding allegations that Debbie Gushlak stole phone records in preparing her application for leave to serve the subpoenas; second, they contend that Judge Orenstein erred by "failing to acknowledge the compelling proof and legal consequences of Debbie Gushlak's 'unclean hands'" (Resp'ts' Mem of Law at 15); third, Respondents argue that the R&R wrongly concludes that Myron Gushlak had an opportunity to be heard on the merits of Debbie Gushlak's application; fourth, Respondents object to Judge Orenstein's recommendation to deny their motion for a stay pending their appeals; and, finally, Respondents argue that the entire R&R is in error because the court did not retain jurisdiction to enforce the subpoenas after Respondents filed their notices of appeal.

---

[2] In determining the portions of the R&R to which Respondents have specifically objected, the court notes that Respondents ignored the court's Individual Rule III.C, which restricts memoranda of law in support and in opposition to motions to no more than twenty-five pages (not including appendices or attachments). Ordinarily, the court would therefore not consider any of Respondents' objections to the R&R appearing on pages 26-33 of their memorandum of law, and would review only for clear error those portions of the R&R to which Respondents object on these pages. Given the potential for severe sanctions to be imposed on Respondents as a result of this order, however, the court will review de novo all of the portions of the R&R to which Respondents specifically object irrespective of where in their memorandum of law the objections appear. No further exceptions to the court's individual rules will be made in the future.

With respect to Respondents' first objection, there is no cause to hold an evidentiary hearing. At issue here is whether Respondents should be held in contempt for failing to comply with the terms of a court-ordered subpoena. It is therefore irrelevant whether Debbie Gushlak stole Myron Gushlak's phone records. To the extent that this alleged fact somehow undermines the merits of Debbie Gushlak's application, then the appropriate time and place for such an argument was in a motion to quash the subpoenas. As noted above, Respondents did not avail themselves of the opportunity to make such a motion, and the time to do so has passed. If Respondents seek to assert some type of property right in the records or hope to initiate a criminal investigation, then they are in the wrong forum.

Respondents' second objection fails for the same reason as their first. Judge Orenstein was under no obligation to consider whether Debbie Gushlak had "clean hands" in making her application. The application was not before Judge Orenstein. His only task was to recommend whether Respondents should be held in contempt for failing to comply with a court order, and Debbie Gushlak's conduct in the run-up to her application is irrelevant to this question.

Respondent's third objection is irrelevant and incorrect. Whether Myron Gushlak was afforded an opportunity to be heard on the merits of Debbie Gushlak's application simply has no bearing on the question of Respondents' compliance with the court-ordered subpoenas—the primary issue before Judge Orenstein. Cf. Latino Officers Ass'n City of New York, Inc. v. City of New York, 558 F.3d 159, 164 (2d Cir. 2009) (providing the three elements of civil contempt). To the extent that Myron Gushlak's opportunity to be heard relates to Respondents' motion for a stay, Judge Orenstein's recommendation that the motion be denied is the subject of a separate objection.

In any event, Respondents' contention is without merit. The court expressly invited Myron Gushlak to file a motion to quash the subpoenas[3] (see June Order (Docket Entry # 15) at 3 n.2.), but, for reasons known only to Myron Gushlak and his counsel, he declined to exercise this right. It is now too late for him to litigate the validity of Debbie Gushlak's application.[4]

Respondents' objection to the portion of the R&R recommending denial of their motion for a stay pending resolution of their appeals is also baseless.

In deciding whether to stay a judgment or order pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987).

All four of these factors weigh decisively against Respondents.

First, the court finds that Respondents' likelihood of success on the merits of their appeal is remote. To begin with, by failing to challenge the subpoenas in this court, Myron Gushlak

---

[3] Respondents' assertion that they were allowed only one day to move to quash the subpoenas (see Resp'ts' Mem. of Law at 26) is superficially true, but is, at its essence, dishonest. Initially, on May 9, 2011, the court issued an order for Respondents to show cause by June 20, 2011 why the court should not grant Debbie Gushlak's application. (See Docket Entry #5) This deadline was subsequently extended to June 24, 2011. (See Scheduling Order dated June 9, 2011.) As it ultimately granted leave one day before this date, the court offered Myron Gushlak the option of converting his response to the order to show cause into a motion to quash to be filed by the same return date. Myron Gushlak thus had nearly seven weeks to prepare a response to Debbie Gushlak's application.

[4] Respondents' argument that granting the application ex parte somehow prejudiced Myron Gushlak's due process rights (see Resp'ts' Mem. of Law at 28-29) is frivolous. As the cases correctly cited by Judge Orenstein's R&R demonstrate (see R&R at 8-9 (citing, inter alia, In re Esses, 101 F.3d 873 (2d Cir. 1996); In re Aldunate, 3 F.3d 54 (2d Cir. 1993); In re Braga, 789 F. Supp. 2d 1294 (S.D. Fla. 2011); In re Godfrey, 526 F. Supp. 2d 417 (S.D.N.Y. 2007))), courts routinely grant § 1782 applications ex parte, limiting respondents' challenges to after the subpoena is served. Any argument Myron Gushlak could have marshaled in opposition to the application before it was granted also could have been presented in a post-service motion.

may have waived his right contest them on appeal. See Hutchinson v. Deutsche Bank Sec. LLC, 647 F.3d 479, 491 n.6 (2d Cir. 2011). Moreover, even if the Court of Appeals does reach the merits of Myron Gushlak's arguments, the court considers these arguments to be weak. Respondents state that Myron Gushlak will argue that he was denied a opportunity to be heard on the application. As discussed above, this is false. Myron Gushlak had every opportunity to challenge the subpoenas post-service through a motion to quash, a motion for reconsideration, or a motion for a protective order. Respondents will apparently also argue that the court's decision to grant Debbie Guslak's application as to both Respondents should be reversed on the basis of the so-called Intel factors. See generally Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). These factors guide the court's exercise of its discretionary power to grant an application under § 1782. See id. at 247. Not surprisingly, the court's treatment of them and ultimate decision on the application are subject to review for abuse of discretion. See Schmitz v. Bernstein Liebhard & Lifshitsz LLP, 376 F.3d 79, 85 (2d Cir. 2004). Absent an error of law or fact, neither of which is alleged here by Respondents, a district court abuses its discretion when its ruling "cannot be located within the range of permissible decisions." Scott v. City of New York, 626 F.3d 130, 132 (2d Cir. 2010) (quoting McDaniel v. County of Schenectady, 595 F.3d 411, 416 (2d Cir. 2010)). The court's decision should easily survive this deferential standard of review. In its order granting leave for Debbie Gushlak to serve a subpoena on Furman, the court found that: (1) the discovery sought was not readily available in the Cayman Islands; (2) the court in the Cayman Islands would be receptive to this discovery; and (3) compliance with the subpoena, as amended, would not be unduly burdensome to Furman. (Aug. Order (Docket Entry # 51) at 6-11.) Under Intel, these findings all favor granting an application under § 1782, see

6

542 U.S. at 264-65, and so it was not an abuse of the court's discretion to grant the application. Because the application sought essentially the same discovery from Myron Gushlak as it did from Furman, the same Intel analysis applies.

With Respondents chances of success on appeal so small, there is no need to extensively discuss the other stay factors. Cf. Thapa v. Gonzales, 460 F.3d 323, 334-35 (2d Cir. 2004) (stating that the stay factors are to be applied "somewhat like a sliding scale," where a strong showing of one factor makes the other factors less important). It is sufficient to note that all of them favor denying Respondents' motion for a stay.

Respondents have not described in their objections how they would be irreparably injured by a denial of their motion, and the court concludes that they will not be so harmed. As Judge Orenstein correctly noted, "compelled production of non-privileged discovery material, standing alone, does not constitute irreparable injury." (R&R at 13 (citing cases).)

With respect to the potential harm granting a stay would cause Debbie Gushlak, the court finds that it would be substantial. Debbie Gushlak has already waited almost a year for Respondents to comply with two facially valid subpoenas. The discovery she seeks is likely time-sensitive as it is needed to help prevent Myron Gushlak from secreting assets to which Debbie Gushlak may have a claim. Every day that Respondents remain noncompliant expands the opportunity for Myron Gushlak to hide his assets.

Finally, it is not in the public interest to grant a stay. Surveying the record, the court agrees with Judge Orenstein that, from the very beginning of these proceedings, Respondents "have engaged in dilatory tactics and presented frivolous arguments" to delay and avoid compliance with the subpoenas. (Id. at 20-21.) To reward this type of gamesmanship with yet

7

more time for Respondents to shirk their legal obligations would be unjust and would set a bad precedent for future litigants.

The Respondents' final objection—that the court is without jurisdiction to enforce facially valid subpoenas pending appeal—is frivolous and may be sanctionable.

Absent a stay, district courts retain jurisdiction to enforce their orders while review of those orders is pending on appeal. See NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585, 588 (6th Cir. 1987); See also In re Fischer, 53 Fed. App'x 129, 133 (2d Cir. 2002); Barr v. United States, No. 87-CV-3979 (DGT), 1995 U.S. Dist. LEXIS 3600, at *1 (E.D.N.Y. Mar. 9, 1995). In the event that Respondents' own legal research did not reveal this well-settled principle, the nearly two pages of accurate supporting citations that appear in the R&R (see R&R at 17-18) should have put them on notice.[5]

Respondents' jurisdiction argument is not only legally baseless; it appears have been made in bad faith. Although Respondents have insisted before this court that the court is without jurisdiction to enforce the subpoenas pending resolution of their appeal, they have simultaneously sought from the Court of Appeals a stay of their appeal pending resolution of

---

[5] Respondents do not dispute the accuracy of the case law cited in the R&R, nor do they meaningfully distinguish these cases from their own. Instead, they simply recite the uncontested proposition that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." (Resp'ts' Mem. of Law at 22 (citing Griggs v. Provident Consumer Discount, Co., 459 U.S. 56, 58 (1982)).) This rule, of course, applies to the expansion and amendment of orders and judgments, not efforts to enforce them once they are final. See, e.g., Griggs, 459 U.S. at 57, 61 (holding that Rule 4(a) of the Federal Rules of Appellate Procedure precludes the exercise of appellate jurisdiction where motion to amend judgment remains pending in the district court). A cursory reading of the cases cited in the R&R would have revealed this obvious distinction.

The court further notes that Respondents' argument relating to the proper timing of an appeal from subpoenas (see Resp'ts' Mem. of Law at 22-25) is utterly irrelevant to the issue at hand. Judge Orenstein's conclusion that the court has jurisdiction to enforce its facially valid subpoena post-appeal has nothing to do with whether Respondents' appeal was procedurally proper.

these proceedings—a proceeding they apparently believe the court lacks jurisdiction to resolve. See Order Denying Mot. to Hold Appeal in Abeyance, In re Application of Debbie Gushlak, No. 11-2584, Dkt. No. 50 (2d Cir. Oct. 14, 2011). This is not the only time Respondents have taken a position seemingly contrary their jurisdictional argument. Since filing their appeals, they have continually petitioned the court for relief, often making specious requests such as that the court strike Debbie Gushlak's memorandum of law for referencing facts not supported by statements sworn to under oath (see Docket Entry # 79), or that it order Debbie Gushlak to return allegedly stolen property (see id.). While a party certainly need not choose between defending an action on the merits and raising a jurisdictional defense, Respondents' constant solicitation of the court's remedial powers calls into question the sincerity of their objection.

By signing a legal memorandum, as counsel to Respondents has done here, an attorney certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "legal contentions" contained therein are "warranted by existing law." See Fed. R. Civ. P. 11(b). If an attorney's certification turns out to be false, that attorney may be subject to sanction. See Fed. R. Civ. P. 11(c). On the record as it stands now, the court cannot credit counsel's certification that he believed his argument on jurisdiction was "warranted by existing law." To begin with, the jurisdictional argument is plainly wrong. Next, the R&R identified the argument as wrong and cited a wealth of case law clearly demonstrating its error. Finally, counsel took positions in serious tension with his jurisdictional argument both here and before the Court of Appeals. In spite of all of this, counsel has insisted on raising the argument yet again in Respondents' objections.

Pursuant to Rule 11(c), Attorney Alan S. Futerfas shall show cause no later than seven

days from the issuance of this order why he should not be sanctioned for making this frivolous objection.

The court has reviewed the remainder of the R&R for clear error, and, finding none, adopts the R&R in its entirety.

Myron Gushlak and Yelena Furman are therefore adjudged to be in contempt and the court must sanction them accordingly. Debbie Gushlak has requested that the court sanction Myron Gushlak with further confinement and responsibility for Debbie Gushlak's attorneys' fees. (See Applicant's Mem. of Law (Docket Entry # 86) at 12.) She has requested that the court make an inquiry into the nature of Yelena Furman's finances, and then impose either monetary sanctions or confinement.

"The purpose of civil contempt is to coerce, not punish." In re Cocilovo, 618 F. Supp. 1378, 1379 (S.D.N.Y. 1985) (citing Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441-42 (1911)). But there are circumstances where the only effective coercive measures available to a district court are similar to those typically used for punishment. The court has "broad discretion to design a remedy that will bring about compliance," Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 657 (2d Cir. 2004), and, at times, courts have used this discretion to order contemnors confined. For the most part, this admittedly extreme measure has been reserved for recalcitrant witnesses, whose confinement is expressly authorized under 28 U.S.C. § 1826. See, e.g., United States v. Ochoa, 819 F.2d 366, 367 (2d Cir. 1987); United States v. Simpkin, 715 F.2d 34, 36 (2d Cir. 1983); United States v. Dien, 598 F.2d 743, 744 (2d Cir. 1979). The court is aware, however, of at least one case in which a district court confined a contemnor for disregarding an order unrelated to testimony

10

before a grand jury or at trial.  See United States v. Isabelle, No. 87-CR-158, 1989 U.S. Dist. LEXIS 7951, at *1 (N.D.N.Y. July 7, 1989).

Given its broad power to fashion an appropriate remedy for civil contempt, the court can find no reason why the logic behind § 1826 should not extend to other instances of non-compliance with a subpoena.  In those rare cases where there is simply no other means of bringing about compliance with a facially valid subpoena, the court must be allowed to resort to an order of confinement.

The court is tempted to do so here.  Debbie Gushlak is correct that monetary sanctions would likely have little coercive effect on Myron Gushlak.  He is already in debt to the United States for $25 million, see Judgment as to Myron Gushlak, United States v. Gushlak, No. 03-CR-833 (NGG), Dkt. No. 47, (E.D.N.Y. May 9, 2011), and he owes the victims of his securities fraud another roughly $17.5 million, see Restitution Order, United States v. Gushlak, No. 03-CR-833 (NGG), Dkt. No. 104. (E.D.N.Y. April 20, 2012).  Furthermore, Debbie Gushlak herself has a claim to at least some of whatever assets may remain once these hefty judgments are satisfied.  In short, there is a legitimate risk that a monetary sanction will not affect Myron Gushlak because he will sense that he is paying the sanction with other people's money.

Nevertheless, the court will for now give him the benefit of the doubt.  Myron Gushlak will pay $250 a day, every day, from the issuance of this order until he fully complies with the terms of the subpoena.  If, after thirty days, he still has not complied with the subpoena, the court will entertain a motion by Debbie Gushlak for a revised and more coercive sanction.  Debbie Gushlak shall be, for the time being, responsible for her own attorney's fees.

With respect to Yelena Furman, the court is satisfied that a monetary sanction will be

11

sufficient to bring about compliance. Yelena Furman will pay a fine of $250 a day every day from the issuance of this order until she fully complies with the terms of the subpoena.

## CONCLUSION

The R&R is ADOPTED in its entirety. Debbie Gushlak's motion to hold Myron Gushlak and Yelena Furman in contempt of court is GRANTED. Respondents' myriad motions and requests are DENIED. Attorney Alan S. Futerfas is ORDERED to show cause within seven days of the issuance of this order why he should not be sanctioned for raising a frivolous argument before the court in apparent violation of Rule 11 of the Federal Rules of Civil Procedure. Myron Gushlak is ORDERED to pay $250 a day, every day, until he complies with the subpoena served upon him in June 2011. If he has not complied within thirty days, the court will, upon a motion by Debbie Gushlak, consider imposing more coercive sanctions. Yelena Furman is ORDERED to pay $250 a day, every day, until she complies with the subpoena served upon her.

SO ORDERED.

Dated: Brooklyn, New York  
     April 30, 2012

          /s/  
NICHOLAS G. GARAUFIS  
United States District Judge