UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IN RE APPLICATION OF DEBBIE GUSHLAK
PURSUANT TO 28 U.S.C. § 1782 FOR THE
TAKING OF DISCOVERY FOR USE IN A
FOREIGN PROCEEDING

                  **MEMORANDUM & ORDER**
                       11-MC-218 (NGG)

-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      The court is in receipt of Attorney Alan S. Futerfas's response to its order to show cause why Futerfas should not be sanctioned under Rule 11 of the Federal Rules of Civil Procedure for presenting a frivolous legal argument to the court. (Docket Entry # 98.) Because the court finds, based on the totality of the circumstances in this case, that Futerfas raised this argument in subjective bad faith, the court imposes sanctions under Rule 11(c)(3). Pursuant to Rule 11(c)(4), Futerfas is ORDERED to pay a penalty to the court in the form of $500, payable to the Clerk of Court.

      On April 30, 2012, the court ordered Futerfas, who was at the time defending contempt proceedings against his clients Myron Gushlak and Yelena Furman, to show cause why he should not be sanctioned pursuant to Rule 11 for raising the frivolous argument that the court had been divested of jurisdiction to enforce its own facially valid subpoenas due to respondents' appeals from two orders granting leave for the applicant in this case to serve those subpoenas. Not only was this argument totally unsupported by case law or common sense, but it had been thoroughly debunked by Magistrate Judge Orenstein in a report and recommendation ("R&R") that the court ultimately adopted. Still, Futerfas persisted in raising the frivolous divestiture

1

argument in his clients' objections to the R&R.[1]

In relevant part, Rule 11(b) requires a lawyer to certify, "to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that his or her "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." If Rule 11(b) is violated, the court may impose sanctions, either upon a motion by the opposing party or on its own initiative. See Fed. R. Civ. P. 11(c). The conduct that constitutes a violation of Rule 11(b) differs, however, depending on whether the prospect of sanctions arises by motion or by an order to show cause. In In re Pennie & Edmonds LLP, the Second Circuit drew on language in the Advisory Committee notes to the 1993 amendment to Rule 11 to hold that where, as here, the court itself initiates an inquiry into a potential Rule 11 violation, sanctions should not be imposed unless the responding attorney acted with "subjective bad faith." See 323 F.3d 86, 87 (2d Cir. 2003). This is in contrast to the mens rea standard that applies when a party makes a motion for Rule 11 sanctions. In those cases, the standard is objective unreasonableness. Id. at 90 (citing Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997)). The rational for this distinction is that a motion for sanctions allows the responding attorney an opportunity to withdraw or disclaim his or her offending contention, whereas the court-initiated sanctions process does not. Id. at 91. This approach is not universally accepted, see id. at 93-102 (Underhill, J. dissenting); Young v. City of Providence, 404 F.3d 33, 40 (1st

---

[1] In his response to the court's order to show cause, Futerfas devotes substantial space to highlighting his co-counsel's role in formulating the divestiture argument. (See, e.g., Resp. at 1, 14-18.) By signing a "pleading, written motion, or other paper" submitted to the court, however, a lawyer accepts responsibility for the integrity of the arguments and representations contained therein. See Fed. R. Civ. P. 11(b). Futerfas signed and filed his clients' objections to the R&R, and so he is fully accountable for any Rule 11 violations related to that submission.

Cir. 2005), but it remains the law of the Circuit, see ATSI Commc'ns, Inc. v. Sharr Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009).

Here, the court issued an order to show cause sua sponte, and so it cannot impose sanctions on Futerfas without first finding that he acted with subjective bad faith.

Not surprisingly, "bad faith" is a relatively loosely defined term of art. The Second Circuit has stated that cases are brought in bad faith when "the claim is entirely without color and has been asserted wantonly, for the purposes of harassment or delay." Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir. 1977). More recent formulations of the term dispense with any inquiry into motive, and allow bad faith to be inferred solely from the "pursuit of frivolous contentions," Dow Chem. Pac., Ltd. v. Rascator Maritime, S.A., 782 F.2d 329, 345 (2d Cir. 1986), or actions that are "completely without merit," 60 E. 80th Street Equities, Inc. v. Sapir (In re Jerasimos Papapanayotou, Esq.), 218 F.3d 109, 116 (2d Cir. 2000).

It is unclear, however, whether these more recent cases are still good law insofar as their definitions of bad faith relate to Rule 11. Their apparent disregard for motive or intent is difficult to square with the heightened culpability standard articulated in Pennie & Edmonds, and so the court does not rely on them.

Reference to recent district court cases similarly fails to provide clear guidance. Since the Circuit clarified the standard for court-initiated sanctions, district courts have found subjective bad faith in a variety of cases, ranging from those involving overtly dishonest or contemptuous behavior, see, e.g., Gollomp v. Spitzer, 06-CV-802 (FJS/RFT), 2007 U.S. Dist. LEXIS 8524, at *28-29 (N.D.N.Y. Feb. 5, 2007), aff'd, 568 F.3d 355 (2d Cir. 2009) (imposing sanctions on counsel under 28 U.S.C. § 1927 for lying to the magistrate judge about his

3

disciplinary record); SEC v. Smith, 798 F. Supp. 2d 412, 426 (N.D.N.Y. 2011) (imposing sanctions on a party for intentionally misrepresenting her financial interest in a trust); Washington 1993, Inc. v. Hudson (In re Hudson), No. 00-11683, Adversary No. 00-90091, 2010 Bankr. LEXIS 3003, at *16-17 (Bankr. N.D.N.Y. Aug. 30, 2010) (imposing sanctions on pro se litigant for filing recusal motion that included the baseless allegation that the bankruptcy judge committed a crime by altering the content of a submission), down to those where the court simply regarded an argument as frivolous, see, e.g. McGuire v. Village of Tarrytown, No. 08-CIV-2049 (KTD), 2011 U.S. Dist. LEXIS 10321, at *4 (S.D.N.Y. Sept. 14, 2011).

  The court concludes that the best interpretation of subjective bad faith must fall somewhere in between these two extremes. The standard can neither be so strict as to require a lie about a historical fact or contempt, nor can it be so lenient as to allow the court to impose sanctions for nothing more than a frivolous argument. If it were the former, then the court would be unable to impose sanctions for conduct prohibited by several important provisions of Rule 11, cf. Fed. R. Civ. P. 11(b)(2) (allowing for sanctions for "legal contentions" not warranted by law), which are expressly made grounds for court-imposed sanctions by subsection (c)(3) of that rule. If it were the latter, sanctions could be imposed for mere negligence. Instead, the court concludes that, in the context of this case, a finding of subjective bad faith requires evidence of what might be referred to as "frivolous-plus." That is, it is not sufficient to find that a legal argument is frivolous. There must also be either direct or circumstantial evidence that counsel knew that the argument was without merit. One type of circumstantial evidence of such knowledge is evidence that the argument was made for an improper purpose. Subsection (b)(1) of Rule 11 provides examples of such improper purposes such as "to harass, cause unnecessary

4

delay, or needlessly increase the cost of litigation."  Where these motives are present, it is fair to conclude that counsel was aware that the frivolous argument was baseless, but raised it anyway because success on the merits was not the ultimate objective.

Cameron International Trading Co. v. Hawk Importers, Inc., No. 03-CV-2496 (JS), 2011 U.S. Dist. LEXIS 4976 (E.D.N.Y. Jan. 18, 2011), provides a good example of this standard in practice.  There, the court imposed sanctions on defense counsel after finding that two of counsel's arguments were frivolous and that these arguments were raised for improper purposes.

The case arose after the court dismissed a complaint pursuant to a stipulation of settlement and dismissal.  See id. at *2-5.  The court also "so ordered" the settlement itself, which, among other things, allowed either party to invoke the court's jurisdiction in the future for the purposes of enforcing the terms of the settlement.  See id.  The so-ordered settlement thus in effect became a consent decree.  When the plaintiffs later sued on the decree, seeking to remedy the defendants' alleged breach, the defendants moved to dismiss on the grounds of lack of jurisdiction.  See id.  They argued that the court did not adopt the settlement agreement's continued-jurisdiction provision because the court did not rewrite the terms of the settlement agreement into its decree, but rather incorporated them through reference.  See id. at *8-11.  According to the defendants, the "logical construct" of the court's orders was that jurisdiction to enforce the settlement agreement would terminate upon dismissal of the underlying complaint.  See id. at *7-8.

These arguments were frivolous.  In imposing sanctions, the court examined the depth of the frivolity, the relationship of the frivolous argument to other positions taken by the defendants, and the defendants' overall course of conduct.  See id. at *12-16.  It found that

because the court had expressly incorporated the terms of the settlement into its decree, the defendants' arguments were "absurd" and "nonsensical." See id. at *12, *15. It also found that the defendants had taken a number of positions contrary to these arguments, including seeking to invoke the court's jurisdiction after dismissal of the complaint. See id. at *12-13. Finally, the court found that, "[c]onsidering Defendants' conduct in its entirety," the conduct reflected "a manifest and calculated disrespect for the Court and its authority." Id. at 15. The defendants had failed to appear at several conferences, appeared unprepared, made other frivolous arguments, and generally employed a strategy of delay. See id. at 14-15. In short, the court concluded that "Defendants' counsel . . . endeavored to 'harass, cause unnecessary delay, and needlessly increase the cost of litigation.'" Id. at 16 (quoting Fed. R. Civ. P. 11(b)(1)). Having found the presence of these ulterior motives, the court concluded that the defendant's frivolous argument was made in bad faith. Id.

In this case, Futerfas is subject to sanctions for similar reasons. Not only was the divestiture argument utterly frivolous, but the court finds that Futerfas knew the argument was baseless and raised it anyway for improper reasons.

The divestiture argument was frivolous.

"It is a 'basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent stay, he must comply promptly with the order pending appeal.'" United States v. Pescatore, 637 F.3d 128, 144 (2d Cir. 2011) (quoting Maness v. Meyers, 419 U.S. 458, 458 (1975)). The primary way that a district court ensures compliance with its orders

6

and judgments pending appeal is, of course, through its powers of contempt.[2] See, e.g., Blue Cross & Blue Shield v. Am. Express, 467 F.3d 634, 638 (7th Cir. 2006) (holding that district court retained jurisdiction to hold contempt proceedings following defendant's alleged violation of a consent decree while appeal of that decree was pending); Acevedo-Garcia v. Vera-Monroig, 368 F.3d 49, 58 (1st Cir. 2004) (affirming holding of defendant in contempt for failure to comply with writ of execution while appeal of underlying judgment was pending); Farmhand, Inc. v. Anel Eng'g Indus., 693 F.2d 1140, 1146 (5th Cir. 1982) (holding that district court retained jurisdiction to hold contempt proceedings following defendant's alleged violation of permanent injunction while appeal of that injunction was pending); Nat'l Serv, Indus., Inc. v. Vafla Corp., 694 F.2d 246, 249-250 (11th Cir. 1982) (affirming holding of defendants in contempt for failure to comply with post-judgment discovery while appeal of the underlying judgment and post-judgment discovery order was pending); Ross v. Thomas, No. 09-Civ.-5631 (SAS), 2011 U.S. Dist. LEXIS 60444, *3-4 (S.D.N.Y. Jun. 6, 2011) (noting defendant had been held in contempt for transferring assets in violation of restraining notice while appeal of underlying judgment was pending); United States v. Schulz, No. 07-CV-352 (RIA), 2008 U.S. Dist. LEXIS 57948, *3-4, *12 (N.D.N.Y. Apr. 28, 2008) (holding defendant in contempt for noncompliance with terms of injunction while appeal of the injunction was pending). And district courts can

---

[2] District courts may also exercise jurisdiction in other ways while their orders and judgments are pending on appeal. They may, for example, cancel notices of lis pendens, see Am. Town Ctr. v. Hall 83 Assocs., 912 F.2d 104, 110 (6th Cir. 1990); issue bench warrants for the arrest of contemnors, see In re Campbell, 761 F.2d 1181, 1186 (6th Cir. 1985); and order post-judgment discovery, see Nat'l Serv. Indus., Inc., 694 F.2d at 249-50; Bar v. United States, No. 87-CV-3979 (DGT), 1995 U.S. Dist. LEXIS 3600, *1 (E.D.N.Y. Mar. 9, 1995). In an analogous situation, a bankruptcy court may order the sale of an estate's assets while an appeal of the bankruptcy court's order expunging a creditor's claim on those assets is pending before the district court. See In re Fischer, 53 Fed. Appx. 129, 133 (2d Cir. 2002) (summary order).

and do use contempt orders to enforce compliance with subpoenas while challenges to the merits of those subpoenas are pending in the courts of appeal. See, e.g., N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 587-89 (6th Cir. 1987) (affirming holding of respondent in contempt for failure to comply with court order enforcing an administrative subpoena while appeal from that order was pending); Brown v. Braddick, 595 F.2d 961, 963-64 (5th Cir. 1979) (recognizing district court's jurisdiction to hold respondent in contempt for failing to comply with its subpoena while appeal from order denying motion to quash the subpoena was pending).

The rule is uncontroverted. And how could it be? If an appeal from an order or judgment divested the district court of jurisdiction to enforce that order or judgment, there would be no point to Rule 62(d) of the Federal Rules of Civil Procedure, which provides for a stay of an appealed order or judgment with the posting of a supersedeas bond. Similarly, there would be no reason for litigants to petition for a stay, as, ironically, respondents have done in this case. If the effect of judgments and orders were automatically stayed pending appeal, a great deal of well established practice and procedure would be superfluous. Moreover, in cases like this one, where the district court issues an ex parte order allowing for the service of subpoenas, divestiture of enforcement jurisdiction would effectively convert the Circuit into a court of first instance because respondents could entirely avoid litigating the validity of the subpoena at the district court level.[3]

All of this would be obvious to an attorney acting reasonably, but it was apparently not

---

[3] Under the existing system, a party that does not want to comply with an ex parte subpoena must choose between challenging the validity of the subpoena in the district court through a motion to quash, or obtaining a stay pending appeal. Either scenario will produce at least some legal analysis of the merits of the subpoena for the court of appeals to review.

8

clear to Futerfas as he prepared to litigate the contempt motion.[4]  Although basic legal research or a moment's thought would have revealed the futility of his divestiture argument, Futerfas nevertheless decided to raise it before Judge Orenstein.

He was, of course, rebuked.  (See R&R (Docket Entry # 82) at 17-18.)  In rejecting Futerfas's divestiture argument, Judge Orenstein cited numerous cases (many of which are also cited above), and he referred to two of legal profession's most noted treatises.  As quoted in Judge Orenstein's R&R, Wright and Miller's Federal Practice and Procedure states that "[u]nless the judgment is stayed, the district court may act to enforce it despite the pendency of an appeal."  (R&R at 18.)  Moore's Federal Practice concurs: "Until the district court's judgment is superseded or stayed, the judgment is fully in effect and the district court retains the authority to enforce the judgment."  (Id.)  Lest there be any confusion about the scope of these statements, the Federal Rules of Civil Procedure define "judgment" as "any order from which an appeal lies." Fed. R. Civ. P. 54(a).

Remarkably, in the face of this contrary authority, Futefas did not back down.  Instead, he included among his objections to the R&R a section with the heading "THE REPORT & RECOMMENDATION ERRED IN CONCLUDING THAT THIS COURT RETAINS JURISDICTION OVER THE CASE."  (Obj. (Docket Entry # 85) at 21.)  In that section, which is four pages in length, Futerfas raised two arguments, neither of which addressed the relevant portion of the R&R in any way.

First, Futerfas cited Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982), for

---

[4]      Because the order to show cause does not relate to Futerfas's submissions to Judge Orenstein, but rather to his objection to the R&R,  the court need not decide whether Futerfas acted with bad faith or mere negligence in raising the divestiture argument at that earlier stage of the proceedings.

9

the well-known and undisputed proposition that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." (See Obj. at 22 (citing Griggs, 449 U.S. at 58).) He did not mention, however, that Griggs concerned an effort to amend, rather than enforce, a judgment while an appeal was pending. See 449 U.S. at 61. Nor did Futerfas cite any of the numerous cases that expressly distinguish the scenario in Griggs from that in this case where a district court strives to enforce its own judgment. See, e.g., Blue Cross & Blue Shield, 467 F.3d at 368; In re Fischer, 53 Fed App'x at 133; Am. Town Ctr., 912 F.2d at 110; Cincinnati Bronze, Inc., 829 F.2d at 588-89; Farmhand, Inc. 693 F.2d at 1145-46. Had Futerfas considered any of these cases—many of which were cited in the R&R—he would have known that Griggs was inapposite.

Second, Futerfas blatantly mischaracterized the primary basis for Judge Orenstein's recommendation. Whereas Judge Orenstein rejected Futerfas's divestiture argument principally on the grounds that the contempt proceedings were an exercise of the court's retained power to enforce its appealed orders (see R&R at 17-18), Futerfas disregarded that discussion and pretended that the rejection rested entirely on a determination that the merits of the subpoenas were not ripe for appeal. (See Obj. at 22-24). Having thus created a straw man to explain Judge Orenstein's divestiture recommendation, Futerfas beat it relentlessly, arguing from case law that subpoenas issued pursuant to 28 U.S.C. § 1782 can be challenged on appeal immediately.

Futerfas's contention that merits of the subpoenas are properly before the Court of Appeals may be correct, but that is utterly irrelevant to the question of whether an appeal of an order or judgment—ripe or not—divests the district court of jurisdiction to enforce that order or judgment while on appeal. While Judge Orenstein did suggest that Futerfas's appeals did not

10

include a challenge to the subpoenas (see R&R at 6), this position did nothing to alter his subsequent determination that there is no divestiture of the court's power to enforce whatever aspects of the orders were on appeal (see id. at 17). None of the numerous cases Judge Orenstein cited turn on the ripeness of an appeal. Nor could they; the rule that, absent a stay, a district court maintains jurisdiction to enforce orders and judgments that are pending on appeal is necessarily premised on the fact that those orders and judgments are final and appealable. Otherwise, there could be no appeal and the question of divestiture would not arise.

It was these arguments made in Futerfas's objections that caused the court to issue the order to show cause. Futerfas's total disregard for applicable case law, reason, and—especially—the content of the R&R clearly establish that he was at least negligent in including the divestiture argument among his objections. If the court could impose sanctions on Futerfas for acting in an objectively unreasonable manner, it would not hesitate to do so.

Whether Futerfas's degree of culpability rose to the level of subjective bad faith, however, presents a closer question. The court must find based on that totality of circumstances that Futerfas knew that the divestiture argument was without merit. As described above, this inquiry requires the court to consider factors beyond the pure frivolity of Futerfas's argument.

To begin with, the court cannot ignore the procedural context in which Futerfas raised his frivolous argument. Judge Orenstein issued his R&R only after extensive motion practice wherein Futerfas and his co-counsel "engaged in dilatory tactics and presented frivolous arguments to delay even longer [their clients'] compliance with this court's lawful orders." (R&R 20-21.) These tactics included continuously petitioning the court for various forms of unmerited relief. (See Order of Contempt (Docket Entry # 90) at 4, 9 (discussing the

11

speciousness of various motions made by Futerfas).) In addition, during this period of time, Futerfas and his co-counsel requested that the court stay the contempt proceedings pending resolution of the appeals (Docket Entry # 65), and <u>one</u> <u>day</u> <u>later</u> petitioned the Court of Appeals to hold the appeals in abeyance pending the resolution of the contempt proceedings. <u>See</u> Mot. to Hold Appeal in Abeyance, <u>In re Application of Debbie Gushlak</u>, No. 11-2584, Dkt. No. 50 (2d Cir. Oct. 5, 2011). Futerfas did not inform the district court that, as he sought a stay pending appeal, he was simultaneously seeking to hold the appeal in abeyance. He did not inform the Court of Appeals that, as he sought to have the appeal held in abeyance, he was simultaneously seeking to stay the district court proceedings. Obviously, had both of Futerfas's motions been granted, the case would have ground to a halt—stayed at both the district court and appellate levels—and Futerfas's clients would never have been called upon to comply with the subpoenas. Such gamesmanship—which Futerfas has never attempted to explain—evinces an intent to frustrate the judicial process and harass the applicant in this case.

Futerfas's tactics were also inconsistent with the substance of his divestiture argument. If Futerfas truly believed that the court lacked jurisdiction in this case after his appeal, it is strange indeed that he would invoke again and again the court's remedial powers on behalf of his clients. And it is stranger still that Futerfas would petition the Court of Appeals—upon which he is relying to rescue him from these supposedly ultra vires district court proceedings—to hold his appeal in abeyance so that he could continue to litigate the case in what he regarded to be an improper and illegitimate forum. All of this calls into question the sincerity of Futerfas's belief in the merits of the divestiture argument.

Next, the court must account for the manner in which Futerfas presented the divestiture

12

argument itself.

As noted above, Futerfas ignored almost all of Judge Orenstein's treatment of the divestiture argument. He did so despite the fact that the primary discussion of the argument appears in a section conspicuously headed, "<u>The Applicant's Motion for Contempt Sanctions</u>," the second sentence of which is: "The Respondents' sole basis for refusing to comply with the subpoenas is their argument that the notices of appeal they filed operated to <u>divest</u> this court of jurisdiction to issue further orders in the proceeding and, in effect, gave rise to an automatic stay of the enforcement of the judgment." (R&R at 17 (emphasis added).) Most people with legal training would read this sentence as an indication that analysis addressing the divestiture argument is soon to follow. And indeed it does, complete with nearly a page and a half of citations. (<u>See</u> <u>id.</u> at 17-18.) Discussion of this material, however, is nowhere to be found in Futerfas's objections.

Instead, Futerfas built a straw man. In a separate and much earlier section of the R&R headed, "<u>Stay Pending Appeal</u>," Judge Orenstein suggested that an appellate challenge to the merits of the subpoenas would be premature. (<u>See</u> R&R at 6.) He then reasoned that Futerfas must not be an pursuing an unripe appeal, and thus concluded that the merits of the subpoenas were not before the Court of Appeals. (<u>See</u> <u>id</u> at 6-7.) After Judge Orenstein had so construed the appeal, he stated: "Thus, even if the appeal of the June and August Orders divested this court of jurisdiction over the Application, I conclude it did not divest this court of its inherent authority . . . to impose contempt sanctions on a recalcitrant subpoena recipient." (<u>See</u> <u>id</u> at 7.) This last conclusion was, at most, an alternative basis for rejecting the divestiture argument; and it is, perhaps, better characterized as an offhand remark. Judge Orenstein appears to have been

13

simply noting that, if the merits of the subpoenas were not part of the appeal, then there was no appeal to "do any divesting" of the contempt proceedings. In any event, Judge Orenstein went on later in the R&R to fully address—and reject—the merits of the divestiture argument. (See id. at 17-18.) Futerfas, however, detected that Judge Orenstein's statement about the scope of the appeal might rest on an incorrect proposition of law, and decided to devote the entirety of his argument in the objections to defending the ripeness of his appeal. As discussed above, this point is irrelevant. Indeed, construing the scope and ripeness of Futerfas's appeal is an issue for the Court of Appeals, not for this court.

Futerfas's tunnel vision is suspect. It is difficult for the court to accept that a lawyer of Futerfas's experience (cf. Resp. at 2 (lauding Futerfas's professional qualifications)) could so severely misread the R&R as to genuinely believe that Judge Orenstein's rejection of the divestiture argument rested on language appearing in the much earlier section of R&R about the finality of the court's orders. Rather, the objections give rise to a strong inference that Futerfas searched the R&R for an error of law, found what he perceived to be one, and then falsely attributed Judge Orenstein's recommendation on divestiture to it. Because the primary basis for the recommendation was unassailable, it appears that Futerfas simply decided to disregard it.

Finally, the court must consider Futerfas's response to the order to show cause. In it, Futerfas asserts again and again that he raised the divestiture argument in good faith, but there is little in the submission to support this claim. To start with, only about four pages in the twenty-five-page document actually address the order to show cause. And, here, the only explanation Futerfas offers is the assertion that the divestiture argument "is not frivolous and is grounded in law and fact." (Resp at 14.) He then repeats his straw-man argument, focusing on

14

the irrelevant issue of whether the subpoenas were immediately appealable. (Id. at 15-18.)

That Futerfas would cling to the divestiture argument even after the court's order to show cause is astonishing. The argument in the response is every bit as frivolous as it was in earlier iterations, and is actually rendered worse because, now, unlike in his objections, Futerfas falsely claims to find support for his position in the case law cited by Judge Orenstein.

Whereas, in his objections, Futerfas ignored the legal authority supporting Judge Orenstein's recommendation to reject the divestiture argument, Futerfas now refers to four cases cited by Judge Orenstein to support that recommendation: Brown v. Braddick, 595 F.2d 961 (5th Cir. 1979); N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585 (6th Cir. 1987); American Town Center v. Hall 83 Associates, 912 F.2d 585 (6th Cir. 1990); and Sekaquaptewa v. MacDonald, 544 F.2d 544 (9th Cir. 1976).[5] (See Resp. at 14, 15, 16-17.) Remarkably, Futerfas contends that "Mr. Rosner and attorneys at our firms carefully examined the decisions" but "found them to be non-controlling as the circuit [sic], and even more importantly, inapposite to the section 1782 context." (Id. at 15.) Specifically, Futerfas states: "After careful thought and consideration, myself, Mr. Rosner and our staff truly believed, and still do today, that the context of the cited decisions was not applicable to the section 1782 context where the subpoena, rather than being ancillary to a primary litigation, is the whole of the matter being decided by the court." (Id.) Put together, these statements are susceptible to only one reasonable interpretation: that Futerfas read Brown, Cincinnati Bronze, American Town Center, and Sekaquaptewa, and that he believed in good faith that the enforcement actions at issue in those cases were distinguishable because they

---

[5] Judge Orenstein, of course, cited numerous other cases and treatises that all unequivocally supported his recommendation. (See R&R at 17-18.) Futerfas does not address these sources in his response.

15

concerned appeals from "ancillary," rather than final, orders.

To the extent this is what Futerfas means, it is demonstrably false. Either Futerfas did not read or consider those cases, and hence has lied in his response, or he considered them and is knowingly misrepresenting their content. As discussed below, Brown, Cincinnati Bronze, American Town Center, and Sekaquaptewa all involved final appealable orders. That is why the respective circuit courts reached the merits of the appeals and did not dismiss them for lack of jurisdiction. Indeed, and in direct contradiction to Futerfas's statement in his response, Brown and Cincinnati Bronze involved orders relating to subpoenas that were "the whole of the matter being decided by the district court."

In Brown, the district court issued a subpoena pursuant to 35 U.S.C. § 24 to assist with discovery in an administrative proceeding pending before the United States Patent Office. See 595 F.2d at 963. The respondent appealed, and the Fifth Circuit expressly held that "[t]he district court order granting Brown's discovery request should be treated as final and appealable." Id. at 965. The court then went on to determine that the district court retained jurisdiction to enforce the order through contempt proceedings while the appeal was pending. Id. The district court's use of its power under 35 U.S.C. § 24 to issue a subpoena in assistance of another proceeding pending before an administrative tribunal is analogous this court's use of its power under 28 U.S.C. § 1782 to aid with discovery for a foreign proceeding.

Similarly, in Cincinnati Bronze, the district court issued an order enforcing an administrative subpoena, as it was authorized to do by statute. See 829 F.2d at 587, 588. The application for the order was not "ancillary to a primary proceeding" in federal court; it initiated a stand-alone proceeding, just as did the applications in Brown and in this case. The resulting

16

order was final and appealable, cf. id. at 587 ("[T]he original order enforcing the subpoena was affirmed by this court on December 1, 1986."), and the order could be enforced via contempt proceedings while it was pending on appeal, see id. at 587-89.

American Town Center and Sekaquaptewa did not even involve subpoenas, but, in any event, the appeals in question were from final orders. In American Town Center, the district court granted summary judgment against the plaintiff in a contract dispute. 912 F.2d at 104. While an appeal from the judgment was pending, the court cancelled notices of lis pendens that the plaintiff had placed on the defendant's real property, and the court appeals held that this exercise of jurisdiction was proper. Id. at 104, 110. The court doubts that Futerfas would contest the finality of an order imposing full summary judgment. In Sekaquaptewa, the district court issued an order of compliance in connection with an earlier judgment. See 544 F.2d at 398. This order was final and appealable, and the district court retained jurisdiction to initiate contempt proceedings to enforce it while it was pending on appeal. See id. at 406.

The effect of this style of briefing is to cast further doubt on Futerfas's motive to raise the divestiture argument in his objections. Far from establishing the good faith of that decision, Futerfas's response itself contains what appear to be knowing misrepresentations. It is one thing to attempt to distinguish the facts of one case from those of another—this is a well-known and important part of lawyering—it is quite another to manufacture a distinction by making up the facts of a published case.

In sum, the circumstances of this case compel the court to find that Futerfas acted with subjective bad faith when he raised the divestiture argument in his objections. First, the argument was frivolous, and was made more so by the fact that Futerfas was aware—or should

17

have been aware—of the portion R&R forcefully rejecting it.  Second, the argument was raised in the context of an overall litigation strategy that appears to have been designed "to harass, cause unnecessary delay, and needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).  Third, the argument itself relied on a reading of the R&R so tortured that the court does not believe—nor does Futerfas contend—that it was simply a good faith mistake.  And finally, Futerfas's response to the order to show cause  is woefully inadequate; Futerfas simply re-asserts what the court has already ruled to be a frivolous argument, and, in the process, makes what the court is forced to conclude are knowing misrepresentations—either about his level of preparedness or about the facts of cases cited by Judge Orenstein.

Accordingly, the court finds that Futerfas violated Rule 11(b)(2) of the Federal Rules of Civil Procedure by signing and submitting the objections even though they contained a frivolous argument made in subjective bad faith.  Pursuant to Rule 11(c)(4), Futerfas is ORDERED to pay a penalty to the court in the form of $500, payable to the Clerk of Court.  The court finds that this is penalty is reasonable in that it will provide effective deterrence to other litigants practicing before the court, and, importantly, to Futerfas himself, as his clients remain in contempt and the case has not yet been resolved.

SO ORDERED.

Dated: Brooklyn, New York  
      July 2, 2012

_____/s/_____  
NICHOLAS G. GARAUFIS  
United States District Judge