**ALAN S. FUTERFAS**

ATTORNEY AT LAW

565 FIFTH AVENUE, 7TH FLOOR

NEW YORK, NEW YORK 10017

(212) 684-8400

ELLEN B. RESNICK
MATTHEW C. MCCANN

BETTINA SCHEIN
OF COUNSEL

FACSIMILE: (212) 684-5259

asfuterfas@futerfaslaw.com

July 17, 2012

*By ECF*

The Honorable James Orenstein
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: In re: Application of Debbie Gushlak for an Order Pursuant to 28 U.S.C. § 1782, 11-mc-218 (NGG) (JO)

Dear Judge Orenstein:

  We write as counsel to Myron Gushlak. In his June 26, 2012 letter, Myron Gushlak requested that his contempt be purged. Judge Garaufis referred Mr. Gushlak's motion to Your Honor for a Report & Recommendation, and counsel for Debbie Gushlak filed an opposition to that application on July 3, 2012. This letter is respectfully submitted in response to that opposition and in anticipation of the appearance this Thursday, July 19, 2012.

  Mr. Gushlak made the request because he has provided and or taken all available steps to arrange for the production of documents which are located in the United States. In her opposition, Debbie Gushlak argues that Myron Gushlak, by not moving to limit the subpoena, has waived the ability to assert the jurisdictional reach of the statute. That argument is unavailing as one has nothing to do with the other. This has nothing to do with an objection to the subpoena – it has to do with the jurisdictional reach of section 1782.

  The cases discussed in Mr. Gushlak's June 26, 2012 letter motion stand for the proposition that section 1782 is not intended to be a world-wide discovery device to obtain documents located outside of the United States. While the issue has not been squarely determined by the Second Circuit, that Court's observations suggest that it would find that the reach of section 1782 is limited to documents located in the United States. *See In re Edelman*, 295 F.3d 171, 176-177 (2d Cir. 2002) (quoting dicta in a previous Second Circuit decision in *Application of Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997) that "'despite the statute's unrestrictive language, there is reason to think that

ALAN S. FUTERFAS

>Hon. James Orenstein
>July 17, 2012
>Page 2

Congress intended to reach only evidence located within the United States'" as constituting a "broad rule" that section 1782 "only applies to evidence located in the United States," but noting that "there may be reason to treat documentary evidence, which was at issue in [*Sarrio*], different from testimonial evidence, which is at issue in the case now before us.")

This result makes imminent sense; otherwise, for example, a United States court would be placed in the unusual position of ordering and overseeing, under a 1782 application, the production of documents located in Russia to a citizen of Germany with respect to a case which arises in Brazil. As the cases and scholarly writings make clear, the purpose of section 1782 was to afford foreign litigants in a foreign litigation an ability to use the US courts to obtain relevant documents located in the United States. Foreign litigants can use the resources and procedures of other countries' courts systems, including their own, with respect to documents located in their own or in other foreign jurisdictions. *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 404 (7th Cir. 2004); *In re Godfrey*, 526 F.Supp.2d 417, 423 (S.D.N.Y. 2007). The incongruity of Applicant's position can be seen in her latest filings which enclose her Cayman document demands in that litigation, *see* E.D.N.Y. Dkt. No. 11-mc-218 at entry dated June 14, 2012 (ECF doc. 108), attachment 2, all of which are currently before and under the jurisdiction of the Cayman court. Thus, Applicant would have the US courts supersede the Cayman court's control of document production in its own case for documents located in Cayman and worldwide. This is precisely the untoward result warned against by those courts and commentators carefully analyzing the appropriate reach of section 1782. *See In re Godfrey*, 526 F.Supp.2d at 423 ("[I]t would interfere with international courts if, for example, litigants in Spain could use § 1782 to obtain evidence located in Spain that could not be obtained through Spanish proceedings"); *see also Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F.Supp.2d 45, 50-51 ("if Section 1782 could be used to obtain discovery [of] evidence located in a foreign country it would become an instrument for interfering with the regular court procedures of the foreign country") (internal citations omitted).

Debbie Gushlak hypothesizes that Mr. Gushlak should possess certain categories of documents in the United States.. He is not a citizen of the United States, and has only travelled here for very brief periods (just days at a time) following his release on bail in 2003. He has no home, place of business or office in the United States. He maintained voluminous records in his office at his home in Grand Cayman, which records Debbie Gushlak accessed both in March 2010 (during which she made photo-copies of all available documents) and after Mr. Gushlak's sentence on November 18, 2010. She has used literally thousands of pages of that material in the divorce litigation. Debbie Gushlak has also already sought and received documents from Myron Gushlak located in Grand Cayman as part of the pending divorce action. Accordingly, there is no basis for the suggestion that Mr. Gushlak maintains records in the United States. Debbie Gushlak may

ALAN S. FUTERFAS

>Hon. James Orenstein
>July 17, 2012
>Page 3

investigate her claims of hypothesized non-production by Mr. Gushlak at the deposition of Mr. Gushlak; that is one purpose of a deposition pursuant to a subpoena *duces tecum*. Mr. Gushlak indicated his availability for deposition in correspondence dated May 25, 2012.

Next, Debbie Gushlak complains about the assertion of privileges. Shortly following the Court's April 30, 2012 Order, documents were collected and non-privileged responsive documents were produced. In the correspondence accompanying the production, counsel made clear the basis for and nature of the privileges being asserted. These assertions are clear and straightforward. The first group of materials, clearly identified in our May 25, 2012 correspondence in the Supplement, concern 2006 to 2008 documents relating to an investigation of Mr. Gushlak with respect to certain Russian entities and securities. As we clearly noted in our correspondence to Debbie Gushlak's counsel, it is not even clear that they are responsive but, in any event, we assert the act of production privilege to those documents for the reasons contained in the Supplement to our May 25, 2012 letter. As there are many documents in this group, a detailed privilege log is time consuming but will be provided.

The second group of documents concern Mr. Gushlak's emails from prison. We received the first batch of BOP emails (covering an approximate 60 day period from April to June 2012) on June 6, 2012, reviewed them and turned over responsive emails on June 15, 2012. Privileged emails between Mr. Gushlak and his counsel were not disclosed. We are waiting on additional BOP emails in response to our FOIA request to the BOP, which covers the period from November 18, 2010 to about April 2012. All privileged emails will be identified on a log.

Given the limited time which has passed, that counsel are waiting on a significant amount of emails from the BOP in order to complete production, and that the basis of the privilege assertions and the nature of the documents as to which the privileges have been asserted are clear, there is no basis for a claim of waiver. First, "failure to provide a privilege log alone does not warrant a waiver of the attorney-client privilege." *Grand River Enterprises Six Nations, LTD., v. King*, 2009 WL 63461 at *3 (S.D.N.Y. Jan. 12, 2009) *quoting Pem–America, Inc. v. Sunham Home Fashions*, 2007 WL 3226156 at *2 (S.D.N.Y. Oct. 31, 2007). Moreover, only "flagrant" violations of the discovery rules should result in a waiver of privilege. *See Julie Angelone v. Xerox Corp.*, 2012 WL 537492 at *4 (W.D.N.Y. Feb. 17, 2012) (finding that the delay was not a flagrant violation of the discovery rules and accordingly no privilege was waived) (internal citations omitted); *see also John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 845 F.2d 1172, 1174-76 (2d Cir. 1988)(flagrant violation where party failed to answer discovery demands requesting an itemization of damages claimed); *Luft v. Crown Publishers, Inc.*, 906 F.2d 862 (2d Cir. 1990)(party ignored court orders to pursue settlement discussions); *Jones v. Niagara Frontier Transp. Authority (NFTA)*, 836 F.2d

ALAN S. FUTERFAS

>Hon. James Orenstein
>July 17, 2012
>Page 4

731, 735 (2d Cir. 1987)(repeated obstructionist conduct over a prolonged period of years, continuing with the party's refusal to answer questions at his deposition).

For the reasons stated here, there is no basis for a finding of waiver.

Thank you for your consideration of this matter.

>Respectfully yours,
>
>*[signature]*
>
>Alan S. Futerfas

cc:   All counsel (via ECF)