UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE APPLICATION OF DEBBIE GUSHLAK           REPORT AND
PURSUANT TO 28 U.S.C. § 1782 FOR THE          RECOMMENDATION
TAKING OF DISCOVERY FOR USE IN A
FOREIGN PROCEEDING                            11-MC-0218 (NGG) (JO)
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

Respondents Myron Gushlak ("Myron") and Yelena Furman ("Furman") move, over the objection of petitioner Debbie Gushlak ("Debbie"), to redact certain information from the public docket of this action. Docket Entry ("DE") 72 (letter motion); DE 75 (memorandum in opposition).[1] Upon a referral from the Honorable Nicholas G. Garaufis, United States District Judge, see DE 68, I now make this report and, for the reasons set forth below, respectfully recommend that the court deny the motion in its entirety.

I.   Background

The instant action arises from petitioner Debbie Gushlak's request for assistance in obtaining discovery from her husband Myron and from Furman pertinent to a divorce proceeding in the Cayman Islands. In opposing that request, the Respondents, as well as the Gushlaks' son Ryan (who sought to intervene, see DE 74-4), initially submitted several documents solely by hand delivery to the court. After being ordered to file those documents on the electronic docket, see DE 64, the Respondents and Ryan did so, but in redacted form or under seal. See DE 72; DE 74.[2] At

---

[1] For ease of reference only, and without intending disrespect, I will refer to individuals with the surname Gushlak by their first names. Also, although the original respondents in this action included Duke Terrell, the warden of the federal prison in which Myron was incarcerated when this action began, the court has since denied Debbie's petition to obtain discovery from Warden Terrell, see DE 51, and I will therefore use "Respondents" to refer collectively only to Myron and Furman.

[2] The materials filed under seal include the following items, to which I will refer below: Ryan's brief in support of his motion to intervene and to quash, DE 74-4 at 5-23 ("Ryan Memo."); Ryan's

the same time, the Respondents sought court approval of the redactions as well as an order to redact certain information from documents that Debbie filed on the public docket. DE 72. Debbie opposes the motion. DE 75 ("Opp.").

II.     Discussion

    A.     Applicable Law

It is well established that the common law recognizes "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *Stern v. Cosby,* 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007). Such "[t]ransparency is pivotal to public perception of the judiciary's legitimacy and independence…. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (internal citation omitted); *see also United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*") ("The presumption of access is based on the need for federal courts … to have a measure of accountability and for the public to have confidence in the administration of justice.").

The public's presumptive right of access to court documents, however, is not absolute; it is instead "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599 (internal citations

---

first declaration in support of that motion, DE 74-4 at 24-26 ("Ryan Dec. I"); a declaration by attorney Alan S. Futerfas (who has represented the Respondents in this action, and who also filed the declaration as Ryan's counsel) in support of the motion, DE 74-4 at 27-28 ("Futerfas Dec."); Ryan's reply brief in support of the motion, DE 74-6 at 3-18 ("Ryan Reply"); Ryan's second declaration in support of the motion, DE 74-6 at 19-25 ("Ryan Dec. II"); and Furman's sur-reply brief in opposition to Debbie's request for the issuance of subpoenas, DE 74-7 at 3-20 ("Furman Sur-Reply").

omitted). The burden of persuading a court to exercise its discretion to seal or redact a document "rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997) (internal citations omitted).

In determining whether to exercise such discretion, the court should consider three factors. *See Lugosch*, 435 F.3d at 119-20. First, it must determine whether "the documents at issue are 'judicial documents,'" to which a presumption of access applies. *Id.* at 119 (internal citation omitted). While "'the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access,'" if "'the item … [was] relevant to the performance of the judicial function and useful in the judicial process,'" the presumption attaches. *Id.* (quoting *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir.1995) ("*Amodeo I*")); *see also United States v. Sattar*, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006) (for a document to be judicial, "[i]t is sufficient that the document was submitted to the Court for purposes of seeking or opposing an adjudication"); *cf. Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 516 (E.D.N.Y. 2011) ("unfiled documents do not qualify as judicial").

If the document at issue is a "judicial document," the second step is to determine what weight to assign the presumption of access. *Lugosch*, 435 F.3d at 119. This "'weight … must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* (quoting *Amodeo II,* 71 F.3d at 1049). "'Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" *Id.* (quoting *Amodeo II,* 71 F.3d at 1049). Legal briefing "used by parties moving for, or opposing" a dispositive motion fall on the end of the continuum subject to the

3

strongest presumption of access. *Lugosch,* 435 F.3d at 123; *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) ("the presumptive right to 'public observation' is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication'") (internal citation omitted); *Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny."). At the other end of the spectrum, documents passed between the parties during the course of discovery are beyond the presumption's reach and "stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." *Amodeo II*, 71 F.3d at 1050 (internal quotations, citations, and alterations omitted).

  Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." *Lugosch*, 435 F.3d at 120 (internal citations omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id*. (internal citations omitted). With respect to the latter of these countervailing factors, "the privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001) (quoting, *inter alia*, *Amodeo II*, 71 F.3d at 1050). Further, "the weight of the privacy interest should [also] depend on 'the degree to which the subject matter is traditionally considered private rather than public[,]' … 'the nature and degree of [the potential] injury [from disclosure,]' … [and] whether 'there is a fair opportunity for the subject to respond to any accusations contained therein.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1051).

At each step of the analysis described above, the court must examine the applicable factors "in light of the relevant facts and circumstances of the particular case," and weigh "the interests advanced by the parties in light of the public interest and the duty of the courts." *Amodeo I*, 44 F.3d at 146 (quoting *Nixon,* 435 U.S. at 599, 602).

In addition to the common law right of access, the public also enjoys a qualified presumption of access to civil judicial documents under the First Amendment. *See Lugosch*, 435 F.3d at 124; *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 91 (2d Cir. 2004). The test for overcoming this qualified constitutional right is "more stringent" than its common law counterpart. *Lugosch*, 435 F.3d at 124. Specifically, the court must consider whether the documents at issue "have historically been open to the press and general public and [also] whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 120 (internal citations omitted). Although there is substantial overlap between the First Amendment and common law rights of access, "[t]he First Amendment demands broader disclosure than the common law." *In re NBC Universal*, 426 F. Supp. 2d 49, 56 (E.D.N.Y. 2006) (citing *Lugosch*, 435 F.3d at 124). Documents subject to a qualified First Amendment right of access "may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quoting *In re New York Times Co.,* 828 F.2d 110, 116 (2d Cir.1987)). However, "[b]road and general findings ... are not sufficient to justify closure." *Id.*; *accord United States v. Tangorra*, 542 F. Supp. 2d 233, 236-37 (E.D.N.Y. 2008).

B.  Analysis

All of the documents that the Respondents seek to redact were filed in conjunction with Debbie Gushlak's motion, pursuant to 28 U.S.C. § 1782, for assistance in conducting discovery related to a foreign judicial proceeding. The documents were therefore both "submitted to the Court for purposes of seeking or opposing an adjudication" of this motion, *Sattar*, 471 F. Supp. 2d at 385, and "relevant to the performance of the judicial function and useful in the judicial process," *Lugosch*, 435 F.3d at 119. They are therefore "judicial documents," to which a presumptive right of public access attaches. Moreover, because almost all of the documents in question (all except those submitted by Ryan, which I discuss specifically below), were "used by parties moving for, or opposing" the motion for discovery assistance, and "directly affect[ed] [the] adjudication," those documents are entitled to the strongest presumption of public access. *Id.* at 123, 119. Thus, analysis of the first two steps of the *Lugosch* test largely favors public access.

The Respondents nevertheless argue against disclosure on the ground that "[a]ll of the proposed redactions are to highly sensitive information in which Myron Gushlak, Ryan Gushlak, or Yelena Furman have a privacy interest, disclosure of which will cause injury to them." DE 72 at 3. In so arguing, the Respondents – who neither cite nor acknowledge the applicability of the *Lugosch* test or any other case law relevant to the sealing or redaction of judicial documents – implicitly contend that the third step of the required analysis favors depriving the public access to documents that should otherwise be available. The Respondents group their proposed redactions according to various categories of interests that disclosure would allegedly undermine. I address each such category in turn.

First, the Respondents propose a series of redactions to what they characterize as Myron Gushlak's private financial information. DE 72 at 5-6. It is of course true that "[c]ourts have recognized that banking customers have a justifiable expectation of privacy that their names and financial records not be revealed to the public," *Strauss v. Credit Lyonnais, S.A.*, 2011 WL 4736359, at *4 (E.D.N.Y. Oct. 6, 2011) (internal citation omitted). However, not a single one of the proposed redactions is to an actual personal financial record belonging to Myron. Rather, the proposed redactions cover, among other things, the following:

- assertions regarding various stock transactions that Myron allegedly executed, *see generally* DE 2;

- an assertion contrasting Myron's claims of financial difficulties with specific facts about his allegedly luxurious lifestyle, DE 30 at 7 n.2; and

- an assertion by Furman to the effect that she was in frequent contact with a certain stockbroker who allegedly traded stock that Myron wrongfully acquired, Furman Sur-Reply at 4.

*See* DE 72 at 5-6, proposed redactions 1, 5(a) & 8(a).

Such statements cannot fairly be described as Myron's "personal financial records." More fundamentally, however such information is best described, its public disclosure does not seem likely to prejudice any legitimate privacy interest Myron may have. I therefore respectfully recommend that the court deny the request to redact materials described (inaccurately, in my view) as Myron's "personal financial information."

The Respondents next seek to redact a variety of records that they describe as containing such "private information" as references to telephone calls between Debbie and Ryan as well as Furman's travel and telephone records. DE 72 at 7-8. The Respondents argue that such redactions are necessary to guard "'personal details about private citizens[,]' disclosure of which infringes

7

'personal privacy interests.'" *Id.* (quoting *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir. 1992)).

The authority on which the Respondents rely in seeking such redactions is inapposite. More fundamentally, the information at issue does not seem to implicate privacy to an extent sufficient to satisfy the third prong of the *Lugosch* test and thereby overcome the public's common law right of access. The "private information" at issue here includes, among other things,

- the fact that Furman resides in Brooklyn, DE 2 at 16;

- phone records from Myron's cell phone, showing calls made to various individuals pertinent to Debbie's request for discovery assistance, DE 3 Ex. N;

- various assertions by Ryan regarding Debbie's behavior towards him; *see* Ryan Memo. at 3-7; and

- assertions regarding the payment of an American Express credit card bill, Ryan Reply at 3.

*See* DE 72 at 7, proposed redactions 1, 2, 5 & 10.

I conclude that none of the information proposed for redaction in this category is inherently private rather than public, and I further conclude that the Respondents have failed to demonstrate that the release of such information poses any real threat of injury to Myron, Furman, or Ryan. *See TheStreet.Com*, 273 F.3d at 232. Accordingly, I recommend that the court deny the motion to redact this second category of documents as well.

In their third category of proposed redactions, the Respondents purport to be acting to withhold from the public information relating to Ryan's mental health. *See* DE 72 at 9. That is certainly a sensitive matter about which the court should exercise its discretion to protect against needless public disclosure; however, the Respondents have included in this category several items

8

that have plainly no place in it. Among other things, the Respondents propose to redact the following:

- various statements by Ryan regarding his opinion of, and estrangement from, his mother, Ryan Dec. I ¶¶ 2-4, 6-7

- assertions that Myron financially supported his son Ryan, DE 33 at 2;

- an assertion by Debbie that includes an ambiguous description of her son Ryan's state of mind, DE 40 at 6;

- an assertion that Ryan was engaging in certain conduct with respect to his parents, DE 40 at 10-11;

- an assertion by Ryan that Debbie favored his older brother, with an example of how she did so, Ryan Reply at 6; and

- an assertion by Ryan contradicting his mother's description of his mode of travel when visiting the Cayman Islands, Ryan Dec. II ¶ 13.

*See* DE 72 at 9, proposed redactions 1(a)-(e), 3(a), 4(a), 4(h), 5(b), and 6(d). Such statements do not disclose any substantive information about Ryan's mental health, and therefore should not be withheld from the public on that basis.

There are, however, four items within this category that do seem at first blush to warrant protection against public disclosure where the others do not. *See* DE 72 at 9, proposed redactions 2(a), (c) & 12(f), *id*. at 10, proposed redaction 2(a) (citing, respectively, Ryan Memo. at 1, 11-12; DE 40 at 10; Ryan Memo. at 2-3). All four pertain to a specific incident in Ryan's life – an incident manifestly related to the state of his mental health, and of the sort that is traditionally considered private rather than public.[3] Moreover, because the incident involved Ryan, a non-party, rather than any of the parties to this action, there is still more reason for the court to exercise discretion in favor of redaction.

---

[3] To allow the Respondents an effective opportunity to object to my recommendation in this regard, I do not describe the incident in detail, notwithstanding my conclusion that the proposed redactions are unwarranted.

9

I nevertheless recommend against withholding the information from the public because it is Ryan himself who sought to put that otherwise private incident before the court. Moreover, he did so not only to persuade the court to allow him to be heard, *see* Ryan Memo. at 1, 12, but also as the predicate of a substantive argument as to why the court should deny his mother the discovery relief she sought. Specifically, Ryan argued that Debbie had an improper motivation in seeking this court's discovery assistance, and made explicit mention of the private incident to which I refer in supporting that argument. *See* Ryan Memo. at 2-3. Had Ryan kept the incident private – as he otherwise would have had every right to do – or indeed if he merely alluded to it to impress upon the court the urgency of his desire to intervene – I would recommend withholding his description of it from the public record. But because Ryan himself sought to use the incident to sway the court's adjudication of the substantive issue before it, I conclude that the public's interest in assessing the legitimacy and independence of the judiciary trumps his otherwise compelling privacy interest. Further, I note that because Ryan himself placed the incident before the court in his own words, there is no concern that it has been distorted by an adversary; to the contrary, Ryan necessarily has had "'a fair opportunity … to respond to any accusations contained'" in the description of the incident at issue. *TheStreet.Com*, 273 F.3d at 232 (quoting *Amodeo II*, 71 F.3d at 1051). Thus, considering all of the relevant facts and circumstances, and weighing "the interests advanced by the parties in light of the public interest and the duty of the courts," *Amodeo I*, 44 F.3d at 146 (quoting *Nixon,* 435 U.S. at 602), I respectfully recommend that the court deny the Respondents' request to redact or seal this third category of documents.

Finally, the Respondents ask the court to redact a category of documents that they characterize as "[d]etails regarding spurious allegations of criminal activity against Yelena

Furman and Ryan Gushlak." DE 72 at 10. This last category of includes, among other things, the following:

- an assertion about the existence and status of a criminal investigation that resulted in no charges being filed, Futerfas Dec. ¶ 3;

- an assertion about Ryan's educational status, Ryan Memo. at 2 n.2;

- an assertion regarding Furman's mode of travel to the Cayman Islands and certain actions she took at the Gushlaks' condominium there, DE 29 at 2;

- and a copy of a restraining order against Furman constraining her access to the Gushlaks' condominium in the Cayman Islands, DE 29-2.

DE 72 at 10; proposed redactions 1, 2(b), 3(a), (b).

In seeking to redact such materials, the Respondents again rely on inapposite decisions. *See Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987) (cited in DE 72 at 10); *Fedrick v. DOJ*, 984 F. Supp. 659, 664 (W.D.N.Y. 1997) (same). Both *Branch* and *Fedrick* involved challenges to federal agencies' decision to withhold certain documents requested pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 551 *et seq.*; simply put, neither is relevant to the instant motion, which implicates the public right of access to *judicial documents* upon which a court relied in resolving a substantive motion. The Respondent make no attempt to explain what application either case might have outside the FOIA context, and I conclude that the cases have no bearing on the matter now before the court. I therefore respectfully recommend that the court deny this aspect of the Respondents' motion.

As set forth above, I conclude that, taking into consideration all of the *Lugosch* factors, the common law right of public access to court documents should prevail over the Respondents' request for secrecy with respect to all of the redactions they propose. Because the test for such secrecy under the First Amendment is even "more stringent," *Lytle v. JPMorgan Chase*, 810 F.

11

Supp. 2d 616, 621 n.5 (S.D.N.Y. 2011) (quoting *Lugosch*, 435 F.3d at 124), I necessarily reach the same conclusion concerning the public's qualified constitutional right of access to these judicial materials. *See King Pharms., Inc. v. Eon Labs, Inc.*, 2010 WL 3924689, at *4 n.5 (E.D.N.Y. Sept. 28, 2010) (citations omitted) (noting that the First Amendment "demands broader disclosure than the common law" and declining to reach First Amendment right of access where common law required public disclosure).

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court deny in its entirety the Respondents' motion to redact or seal portions of the record.

IV.     Objections

Any objections to this Report and Recommendation must be filed no later than August 13, 2012. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
July 27, 2012

/s/
JAMES ORENSTEIN
U.S. Magistrate Judge