# *Elizabeth Berney, Esq.*
### 48 Carriage Road
### Great Neck, N.Y. 11024
### tel: 516 482-4070 cell: 917 687-8233
### lizberney@gmail.com

The Honorable James Orenstein          August 10, 2012
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *In re Application of Debbie Gushlak Pursuant to 28 U.S.C. § 1782 For The Taking of Discovery For Use In A Foreign Proceeding*, MC-11-218 (NGG) (JO) - Supplemental filing re: Myron Gushlak application for Reciprocal Discovery

Dear Magistrate Judge Orenstein:

I am writing, as counsel for Myron Gushlak ("Myron"), to supplement Mr. Gushlak's August 2, 2012 application for reciprocal (or freestanding) § 1782 discovery from Debbie Gushlak ("Debbie").

Recently obtained additional evidence from the Cayman divorce proceedings (including filings that Debbie's counsel made in the Cayman court last week; and prior filings provided to me by Cayman counsel) buttresses Myron's reciprocal discovery application. This includes:

1. Evidence of Debbie Gushlak's residence in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮: Enclosed as Exhibit A are signature pages obtained from Debbie Gushlak's filings for the litigation in the Cayman Court last week to lift the "caution" (lien) to enable Debbie Gushlak to sell Ritz Condo #102. In these filings, Debbie Gushlak submitted a document that she signed in "▮▮▮▮▮▮▮▮"[1] on May 18, 2012, and a document that she signed in ▮▮▮▮▮ in March 12, 2012 (both in front of witnesses) (Ex. A.) Moreover, in the filing that Mrs. Gushlak made for the Cayman Court "caution" hearing last week, there were no recent documents listing Cayman as the place of signing by, or current residence of Debbie Gushlak.

This buttresses Myron Gushlak's application for needed reciprocal discovery regarding Debbie Gushlak's various residences (in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and elsewhere), including whether these residences are hidden marital assets owned by Debbie Gushlak or her nominee, and/or whether the residences are rented utilizing hidden marital funds.

---

[1] Mrs. Gushlak crossed out Cayman and initialed this cross out. She then apparently wrote in and initialed "▮▮▮▮▮▮▮▮."

1

Moreover, the fair likelihood that Debbie Gushlak is in the U.S. means that this proceeding may turn out to be the best opportunity for obtaining Debbie's deposition for the Cayman divorce.

Interestingly, during the status conference on August 6, 2012, when Your Honor asked Ms. Sheryl Reich (counsel for Debbie Gushlak) "Where is she [Mrs. Gushlak]?", Ms. Reich evaded the question, and misleadingly stated that Debbie Gushlak is a "permanent resident" of Cayman – without revealing Debbie Gushlak's current whereabouts. *See* Transcript of August 6, 2012 status conference, pp. 44:22-45:7 (Ex. B.)

2. <u>Jeffrey Sabo's extensive use of Debbie Gushlak's credit card:</u> Debbie Gushlak's credit card statement (Ex. C), obtained from Cayman counsel, shows extensive, often high-dollar purchases by Mrs. Gushlak's boyfriend, Jeffrey Sabo (who appears to have no known income) on Mrs. Gushlak's credit card. Sabo's purchases on Mrs. Gushlak's credit card include ▮ ▮ on 11/27/2009, ▮ on 11/25/2009, and ▮ on 12/2/2009; over ▮ on 12/2/2009; ▮ at ▮ on 12/2/2009; and over ▮ at the ▮ on 12/6/2009, amongst many others. This buttresses Mr. Gushlak's application for reciprocal discovery to ascertain the extent of Debbie Gushlak's transfers to Mr. Sabo.

3. <u>Shopping sprees in New York City:</u> Debbie Gushlak's credit card statement (Ex. C) also shows that Debbie Gushlak and Jeffrey Sabo went on shopping sprees at New York City's most expensive stores. A few of their many purchases in just a three-day period include:

| New York Store | Amount | Purchaser |
| --- | --- | --- |
| ▮ | over ▮ plus another ▮ two days later | Debbie Gushlak |
| ▮ | over ▮ | Debbie Gushlak & J. Sabo |
| ▮ | over ▮ | Debbie Gushlak & J. Sabo |
| ▮ | ▮ | Debbie Gushlak |
| ▮ | ▮ | J. Sabo |

Reciprocal discovery is needed regarding Debbie Gushlak's assets and transfers to Sabo.

4. <u>Evidence that unspecified corporate transfers paid Debbie Gushlak's credit card bills:</u> Debbie Gushlak's credit card statement (Ex. C) also shows that corporate transfers of ▮ at a time were used to pay Debbie Gushlak's credit card bills. This buttresses Mr. Gushlak's application for reciprocal discovery regarding Debbie Gushlak's hidden corporate assets. These end-of-2009 bills also underscore the need to obtain Debbie Gushlak's missing credit card and other financial information from early 2010 to the present day, to learn how Debbie has dissipated and/or hidden marital assets.

5. <u>Other Debbie Gushlak-Jeffrey Sabo-JDS Enterprises transactions, etc.:</u> Debbie Gushlak's "Statement of Affairs" filed in Cayman in September 2010 (Ex. D-1) contains numerous items of interest: Debbie claims as liabilities a demand note to Sabo of ▮ and an unspecified liability to ▮ of ▮ (although "answer to directed question 6d" states ▮ .) An annexed supposed demand note dated January 2010 claims that Debbie owes Sabo even more ( ▮ ) and that he will be paid with profits from ▮ and Debbie's US dollar pledge account. In addition, an attached schedule shows that

2

Debbie and Sabo have joint bank accounts. In addition, widely different figures are listed for ▮▮▮▮, which is listed as an asset worth over ▮▮▮▮ in one schedule and a liability of ▮▮▮▮ in another schedule. Further, although Debbie stated in the foregoing document that she owns ▮▮▮, a document filed in last week's Cayman "caution" litigation (Ex. D-2) was signed by Sabo and Debbie as ▮▮▮▮ co-owners. These documents raise a host of questions, and buttress Mr. Gushlak's application for reciprocal discovery regarding Debbie Gushlak's transactions with ▮▮ and Jeffrey Sabo, including purposes for "loans," whether value was received, what marital assets were siphoned off to pay these loans, why Debbie transferred half of ▮▮ to Sabo, what transactions occurred in the joint Sabo-Debbie Gushlak bank accounts, and the whereabouts of Debbie's "US dollar pledge account."

6. ▮▮▮▮▮▮▮▮: Additional documents filed with Debbie's statement of affairs show that she was the Settlor of the ▮▮▮▮▮▮. (Ex. E) Reciprocal discovery is needed regarding Debbie's ▮▮▮▮▮▮▮.

### *Debbie Gushlak is "found" in this District for Purposes of a "freestanding" Section 1782 application:*

As discussed below, having invoked the jurisdiction of this Court, Debbie Gushlak is clearly "found" in this District for purposes of a "freestanding" Section 1782 proceeding. (Ms. Reich attempted to question this – without any case law support – at the August 6, 2012 status conference.)

The statute's broad language provides that discovery orders may be made by the district court of the "district in which a person resides *or is found.*" 28 U.S.C. § 1782 (emphasis added).

Longstanding U.S. Supreme Court precedent holds that a "plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court" is thus properly "treat[ed] as *being there* for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff." *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) (citing *Young Company v. McNeal-Edwards Co.*, 283 U.S. 398, 400 (1931) (emphasis added). In other words, once a party invokes the court's jurisdiction, he is found in the district.

Moreover, it would produce an "unjust asymmetry" to allow a party "to enjoy the full benefits of access to a state's courts [as a] plaintiff, while nonetheless retaining immunity from the courts' authority [as a] defendant in respect to claims by the very party it was suing." *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22-24 fn. 4 (1st Cir. 1991). (citing *Adam v. Saenger*, 303 U.S. 59). *See also American Home Mortg. Srvcing, Inc. v. Triad Guar. Ins. Corp.*, 714 F. Supp. 2d 648, 652 (N.D. Tex. 2010) ("Triad has elected to avail itself of the benefits of the Delaware court as a plaintiff . . . , and has therefore surrendered personal jurisdictional objections to any counterclaims that the AHM defendants wish to assert against it"); *Larson v. Galliher*, 2007 WL 81930, at *2 (D. Nev. Jan. 5, 2007) (defendant impliedly consented to court's jurisdiction in cybersquatting suit by filing his earlier slander action in the same court related to the same operative facts).

It is appropriate to apply the same justice-based, Supreme-Court-authorized jurisdictional "symmetry" rulings in the Section 1782 context. *See In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 295, fn. 4 (D.D.C. 2011) (jurisdictional analysis and § 1782 analysis of whether a district is one "in which a person resides or is found" at a minimum, overlap and "to some extent, courts have considered these inquiries to be the same.") (citations

omitted). *See also In re Edelman*, 295 F.3d 171, 179, 180 (2d Cir. 2002) ("Congress has expressed as its aim that the statute [§1782] be interpreted broadly"; "when a potential witness comes to the United States it is neither unfair nor inappropriate under the statute to undertake his discovery here.").

Accordingly, if the Court views Mr. Gushlak's reciprocal discovery application as a "freestanding" Section 1782 application, the fact that Debbie Gushlak invoked this Court's jurisdiction by bringing the instant Section 1782 proceeding suffices to find her within the district for purposes of granting Mr. Gushlak's related application.[2]

Ultimately, whether this application is reciprocal or "freestanding," the underlying concerns are the same: One-way discovery skews litigation. *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997). *See also* pp. 13-14 of Mr. Gushlak's initial application for reciprocal discovery [Dkt# 126].

In the instance case, one-way Section 1782 discovery would compound an already skewed situation. It has been particularly difficult for Mr. Gushlak to present needed information and documents in the Cayman divorce proceedings because Debbie took all of Myron Gushlak's files from the marital residence. He has had to fight a difficult divorce battle with one hand – or perhaps both hands – tied behind his back.

There is a pressing, demonstrated need to level the playing field in the parties' Cayman divorce, and a pressing need for 1782 discovery of Debbie Gushlak's hidden assets, transfers to her boyfriend and other financial entanglements. For all the reasons set forth herein and in Mr. Gushlak's initial application, it is respectfully requested that Mr. Gushlak's application for reciprocal or freestanding Section 1782 discovery should be granted.

Sincerely,

*Elizabeth Berney*

Elizabeth Berney

---

[2] At the August 6, 2012 status conference, Mrs. Gushlak's counsel raised the issue of Mr. Gushlak's contempt regarding his production. As I explained at the conference, Mr. Gushlak's production is almost complete. There is every expectation that his contempt will be purged soon. In order to "take this issue off the table" and avoid wasting the Court's time arguing about whether a likely short-lived contempt period might impede this application, an agreement was reached that Debbie Gushlak will only need to actually start producing documents in reciprocal discovery after Mr. Gushlak's contempt is purged. It was also agreed that briefing will proceed. A briefing schedule was agreed upon, after which the Magistrate will schedule further proceedings as necessary. (*See* Ex. B, Trans. of Aug. 6, 2012 status conf., at pp. 47:23-49:17.) This is the most efficient way to proceed for all concerned. Please note that I have advised Ms. Reich that I am willing to consent if she needs some additional time to respond to Mr. Gushlak's reciprocal discovery application. However, in the interest of efficiency, it is respectfully urged that the agreement to proceed with briefing, etc., should not be revisited. If Ms. Reich nonetheless attempts to revisit the contempt issue as an impediment to briefing and scheduling proceedings, and the Court is inclined to agree with her, I respectfully request that the Court should avoid striking Mr. Gushlak's reciprocal discovery application (which would waste the time of all concerned by requiring Mr. Gushlak to bring the same application all over again) and should instead hold the application in abeyance until the contempt is purged.